**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MILLIMAN, INC., MILLIMAN SOLUTIONS, LLC, and VIGILYTICS LLC, <br><br>        Plaintiffs, <br><br>        v. <br><br> GRADIENT A.I. CORP., STANFORD A. SMITH, and SAMUEL CHASE PETTUS, <br><br>        Defendants. | Civil Action No. 1:21-cv-10865-NMG |

**ANSWER AND COUNTERCLAIMS OF DEFENDANTS GRADIENT A.I. CORP.,**
**STANFORD A. SMITH, AND SAMUEL CHASE PETTUS**

Defendants Gradient A.I. Corp. ("Gradient"), Stanford A. Smith ("Mr. Smith"), and Samuel Chase Pettus ("Mr. Pettus") (collectively, "Defendants") hereby answer the Complaint ("Complaint") filed by Plaintiffs Milliman, Inc. ("Milliman"), Milliman Solutions, LLC ("Milliman Solutions"), and Vigilytics, LLC ("Vigilytics") (collectively, "Plaintiffs"). To the extent not expressly admitted herein, Defendants deny the allegations of the Complaint. For ease of reference, Defendants repeat the headings employed by Plaintiffs throughout the Complaint and opening paragraph herein, but state that because these are not assertions of law or fact, they therefore do not require a response. To the extent that the headings contained in the Complaint can be read as allegations that require a response, Defendants deny the allegations.

## NATURE OF THE ACTION

1.     Defendants deny the allegations of Paragraph 1 of the Complaint, except Defendants Gradient and Smith admit that Gradient, formerly known as Arrowhead Technology Corporation, purchased a number of assets from Milliman in 2018 that included, inter alia, the "Gradient AI business." Defendant Pettus is without information or knowledge sufficient to form

a belief as to the truth of the allegations of Paragraph 1 of the Complaint, and therefore denies those allegations.

2.      Defendants deny the allegations of Paragraph 2 of the Complaint, except they admit that Mr. Smith currently serves as Gradient's Chief Executive Officer, and Mr. Pettus currently serves as Sales Director, Health.

3.      Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 3 of the Complaint and, therefore, deny such allegations, except they admit that the Complaint asserts claims of patent infringement of U.S. Patent Nos. 9,118,641 (the "'641 patent"); 9,323,892 (the "'892 patent"); 9,665,685 (the "'685 patent"); 9,965,651 (the "'651 patent"); 10,109,375 (the "'375 patent"); and 10,886,012 (the "'012 patent") (collectively, the "Asserted Patents").

4.      Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 4 of the Complaint and, therefore, deny such allegations.

5.      Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 5 of the Complaint and, therefore, deny such allegations.

6.      Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 6 of the Complaint with respect to Milliman's actions and, therefore, deny such allegations.  Defendants deny the remaining allegations of Paragraph 6 of the Complaint.

7.      Defendants deny the allegations of Paragraph 7 of the Complaint.

## **PARTIES**

8.      Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 8 of the Complaint and, therefore, deny such allegations.

9.      Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 9 of the Complaint and, therefore, deny such allegations.

10.     Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 10 of the Complaint and, therefore, deny such allegations.

11.     Defendants deny the allegations of Paragraph 11 of the Complaint, except they admit that Gradient is incorporated under the laws of the state of Delaware, was formerly known as Arrowhead Technology Corporation, and that Gradient maintains a principal place of business at 321 Summer St, Floor 6, Boston MA 02210.

12.     Defendants deny the allegations of Paragraph 12 of the Complaint, except they admit that Mr. Smith is the founder and current Chief Executive Officer of Gradient.  Defendant Smith further admits that from 2011 until 2018, he was employed by Milliman.  Defendants Gradient and Pettus are without information or knowledge sufficient to form a belief as to Mr. Smith's residence, employment history, or status prior to his co-founding of Gradient, and therefore deny the allegations of Paragraph 12 of the Complaint relating thereto.

13.     Defendants deny the allegations of Paragraph 13 of the Complaint, except they admit that Mr. Pettus is currently Sales Director, Health, at Gradient.  Defendant Pettus further admits that he resides in Arkansas and that from 2012 until May 2017, and then from July 2017 until 2018, he was employed by Milliman.  Defendants Gradient and Smith are without information or knowledge sufficient to form a belief as to Mr. Pettus' residence, employment history, or status prior to his employment by Gradient, and therefore deny the allegations of Paragraph 13 of the Complaint relating thereto.

**JURISDICTION AND VENUE**

14.     Defendants deny the allegations of Paragraph 14 of the Complaint, except they admit that the Complaint purports to state a cause of action for patent infringement under the Patent Act, 35 U.S.C. § 271 *et seq*., trade secret misappropriation under the DTSA, 18 U.S.C. §§ 1836 *et seq*., and the MUTSA, Mass. Gen. L. c. 93, §§ 42 *et seq*., and for breach of contract.

15.     Paragraph 15 states a legal conclusion to which no response is required.  To the extent a response is required, Defendants will not contest that subject matter jurisdiction is proper in this judicial district for the purposes of this action only.  Defendants deny that they have infringed any valid claim of any of the patents asserted in the Complaint, and further deny that they have misappropriated any trade secrets or committed any breach of contract as asserted in the Complaint.

16.     Paragraph 16 states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 16 of the Complaint, except they admit that Gradient maintains its principal place of business in the Commonwealth of Massachusetts.

17.     Paragraph 17 states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 17 of the Complaint, except Defendant Smith admits that he resides in and works for Gradient in Massachusetts.

18.     Paragraph 18 of the Complaint states a legal conclusion to which no response is required.  To the extent a response is required, Defendant Pettus denies the allegations in Paragraph 18 of the Complaint.  Defendants Gradient and Smith are without information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 18, and therefore deny those allegations.

19.     Paragraph 19 states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 19 of the Complaint, except they admit that Gradient maintains its principal place of business in the Commonwealth of Massachusetts.

20.     Paragraph 20 states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 20 of the Complaint, except Defendant Smith admits that he works for Gradient in Massachusetts.

21.     Paragraph 21 of the Complaint states a legal conclusion to which no response is required.  To the extent a response is required, Defendant Pettus denies the allegations in Paragraph 21 of the Complaint.  Defendants Gradient and Smith are without information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 21, and therefore deny those allegations.

## **FACTUAL BACKGROUND**

A.     **Risk Assessment in the Health Insurance Industry**

22.     Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 22 of the Complaint, and therefore deny those allegations.

23.     Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 23 of the Complaint, and therefore deny those allegations.

24.     Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 24 of the Complaint, and therefore deny those allegations.

25.     Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 25 of the Complaint, and therefore deny those allegations.

26.     Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 26 of the Complaint, and therefore deny those allegations.

27.     Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 27 of the Complaint, and therefore deny those allegations.

28.     Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 28 of the Complaint, and therefore deny those allegations.

29.     Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 29 of the Complaint, and therefore deny those allegations, except they admit that since 1996, HIPAA has regulated the use and disclosure of protected health information (PHI).

30.     Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 30 of the Complaint, and therefore deny those allegations.

31.     Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 31 of the Complaint, and therefore deny those allegations.

32.     Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 32 of the Complaint, and therefore deny those allegations.

33.     Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 33 of the Complaint, and therefore deny those allegations.

B.     **The Asserted Patents**

34.     Defendants admit that Andrew L. Paris, III, is the named inventor listed on the face of the Asserted Patents.   The remaining allegations of Paragraph 34 seek to characterize the Asserted Patents, which are documents that speak for themselves, and therefore no response is

required.  Defendants refer to the Asserted Patents for the contents thereof.  Defendants deny any mischaracterization, incomplete, or inconsistent characterization of the Asserted Patents.

35.     Defendants admit that the '641 patent is entitled "De-Identifying Medical History Information for Medical Underwriting" and on its face recites an issue date of August 25, 2015. Defendants further admit that a copy of the '641 patent is attached to the Complaint as Exhibit 1. Defendants are without information or knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 35 of the Complaint, and therefore deny those allegations.

36.     Defendants admit that the '892 patent is entitled "Using De-Identified Healthcare Data to Evaluate Post-Healthcare Facility Encounter Treatment Outcomes" and on its face recites an issue date of April 26, 2016.  Defendants further admit that a copy of the '892 patent is attached to the Complaint as Exhibit 2.  Defendants are without information or knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 36 of the Complaint, and therefore deny those allegations.

37.     Defendants admit that the '685 patent is entitled "Using De-Identified Healthcare Data to Evaluate Post-Healthcare Facility Encounter Treatment Outcomes" and on its face recites an issue date of May 30, 2017.  Defendants further admit that a copy of the '685 patent is attached to the Complaint as Exhibit 3.  Defendants are without information or knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 37 of the Complaint, and therefore deny those allegations.

38.     Defendants admit that the '651 patent is entitled "Using De-Identified Healthcare Data to Evaluate Post-Healthcare Facility Encounter Treatment Outcomes" and on its face recites an issue date of May 8, 2018.  Defendants further admit that a copy of the '651 patent is attached to the Complaint as Exhibit 4.  Defendants are without information or knowledge sufficient to

form a belief as to the truth of the remaining allegations of Paragraph 38 of the Complaint, and therefore deny those allegations.

39.     Defendants admit that the '375 patent is entitled "De-Identifying Medical History Information for Medical Underwriting" and on its face recites an issue date of October 23, 2018. Defendants further admit that a copy of the '375 patent is attached to the Complaint as Exhibit 5. Defendants are without information or knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 39 of the Complaint, and therefore deny those allegations.

40.     Defendants admit that the '012 patent is entitled "De-Identifying Medical History Information for Medical Underwriting" and on its face recites an issue date of January 5, 2021. Defendants further admit that a copy of the '012 patent is attached to the Complaint as Exhibit 6. Defendants are without information or knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 40 of the Complaint, and therefore deny those allegations.

41.     Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 41 of the Complaint, and therefore deny those allegations, except they admit that the copies of the Asserted Patents attached to the Complaint as Exhibits 1-6 state on their face that Vigilytics LLC was the assignee of the Asserted Patents at the time of their respective issuances.

42.     The allegations in Paragraph 42 seek to characterize the Asserted Patents, which are documents that speak for themselves, and therefore no response is required.  Defendants refer to the Asserted Patents for the contents thereof.  Defendants deny any mischaracterization, incomplete, or inconsistent characterization of the Asserted Patents.

43.     The allegations of Paragraph 43 seek to characterize the Asserted Patents, which are documents that speak for themselves, and therefore no response is required.  Defendants refer

to the Asserted Patents for the contents thereof.  Defendants deny any mischaracterization, incomplete, or inconsistent characterization of the Asserted Patents.

44.     Defendants deny the allegations of Paragraph 44 of the Complaint.

45.     Defendants deny the allegations of Paragraph 45 of the Complaint, except they admit that Paragraph 45 purports to recite Claim 7 of the '641 patent.

46.     Defendants deny the allegations of Paragraph 46 of the Complaint, except they admit that Paragraph 46 purports to recite Claim 7 of the '375 patent.

47.     Defendants deny the allegations of Paragraph 47 of the Complaint, except they admit that Paragraph 47 purports to recite Claim 7 of the '012 patent.

48.     Defendants deny the allegations of Paragraph 48 of the Complaint, except they admit that Paragraph 48 purports to recite Claim 11 of the '892 patent.

49.     Defendants deny the allegations of Paragraph 49 of the Complaint, except they admit that Paragraph 49 purports to recite Claim 7 of the '685 patent.

50.     Defendants deny the allegations of Paragraph 50 of the Complaint, except they admit that Paragraph 50 purports to recite Claim 7 of the '651 patent.

51.     Defendants deny the allegations of Paragraph 51 of the Complaint.

52.     Defendants deny the allegations of Paragraph 52 of the Complaint.

53.     Defendants deny the allegations of Paragraph 53 of the Complaint.  To the extent Paragraph 53 purports to quote from the Asserted Patents, Defendants admit only that the language quoted in Paragraph 53 appears in the recited portions of the Asserted Patents.  Defendants refer to the Asserted Patents for the contents thereof.  Defendants deny any mischaracterization, incomplete, or inconsistent characterization of the Asserted Patents.

54.     Defendants deny the allegations of Paragraph 54 of the Complaint.

55.     Defendants deny the allegations of Paragraph 55 of the Complaint.

**C.     Milliman IntelliScript Curv®**

56.     Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 56 of the Complaint, and therefore deny those allegations.

57.     Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 57 of the Complaint, and therefore deny those allegations.

58.     Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 58 of the Complaint, and therefore deny those allegations.

59.     Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 59 of the Complaint, and therefore deny those allegations.

60.     Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 60 of the Complaint, and therefore deny those allegations.

61.     Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 61 of the Complaint, and therefore deny those allegations.

62.     Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 62 of the Complaint, and therefore deny those allegations.

63.     Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 63 of the Complaint, and therefore deny those allegations.

64.     Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 64 of the Complaint, and therefore deny those allegations.

**D.     Stan Smith's Employment at Milliman and Exposure to Curv**

65.     Defendants admit that prior to founding Gradient, Mr. Smith was employed by Milliman from 2011-2018.

66.     Defendants admit that prior to joining Gradient, Mr. Pettus was employed by Milliman from 2012 until May 2017, and then from July 2017 until 2018.

67.     Defendants Smith and Pettus deny the allegations of Paragraph 67 of the Complaint, except Mr. Smith admits that he and Milliman entered into an Employee Trade Secret and Client Information Agreement dated August 4, 2011, and Mr. Pettus admits that he and Milliman entered into an Employee Trade Secret and Client Information Agreement dated September 25, 2012. Defendants Smith and Pettus further admit that documents purporting to be those agreements are attached to the Complaint as Exhibit 7.  Defendant Gradient is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 67, and therefore denies those allegations.

68.     Defendants deny that Paragraph 68 of the Complaint presents a materially complete quotation, and state that the Employee Trade Secret and Client Information Agreements entered into between Mr. Smith and Milliman and Mr. Pettus and Milliman speak for themselves. Defendants refer to the Employee Trade Secret and Client Information Agreements for the contents thereof.  Defendants deny any mischaracterization, incomplete, or inconsistent characterization of the Employee Trade Secret and Client Information Agreements.

69.     Defendants deny that Paragraph 69 of the Complaint presents a materially complete quotation, and state that the Employee Trade Secret and Client Information Agreements entered into between Mr. Smith and Milliman and Mr. Pettus and Milliman speak for themselves. Defendants refer to the Employee Trade Secret and Client Information Agreements for the contents thereof.  Defendants deny any mischaracterization, incomplete, or inconsistent characterization of the Employee Trade Secret and Client Information Agreements.

70.     Defendants deny that Paragraph 70 of the Complaint presents a materially complete quotation, and state that the Employee Trade Secret and Client Information Agreements entered into between Mr. Smith and Milliman and Mr. Pettus and Milliman speak for themselves. Defendants refer to the Employee Trade Secret and Client Information Agreements for the contents thereof.  Defendants deny any mischaracterization, incomplete, or inconsistent characterization of the Employee Trade Secret and Client Information Agreements.

71.     Defendant Smith denies the allegations of Paragraph 71 of the Complaint, except he admits that from 2011 until 2018, he was employed by Milliman as Predictive Analytics Practice Leader.  Defendants Gradient and Pettus are without information or knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 71, and therefore deny those allegations.

72.     Defendant Pettus denies the allegations of Paragraph 72 of the Complaint, except he admits that from 2012 until May 2017, and then from July 2017 until 2018, he was employed by Milliman as a Business Development Manager initially and then as a member of the Predictive Analytics practice.   Defendants Gradient and Smith are without information or knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 72, and therefore deny those allegations.

73.     Defendants Smith and Pettus deny the allegations of Paragraph 73 of the Complaint, except they admit that they were generally familiar with the Curv® ("Curv") product during their employment at Milliman and that the Predictive Analytics team worked with the Curv team to service a client.  Defendant Gradient is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 73, and therefore denies those allegations.

74.     Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 74 of the Complaint or the referenced emails, which are not attached to the Complaint; Defendants thus deny such allegations.  The remaining allegations of Paragraph 74 of the Complaint seek to characterize such emails, which are not attached to the Complaint, and which, in any event, speak for themselves.  Therefore, no further response is required.  Defendants refer to the emails for the content thereof, to the extent they exist. Defendants deny any mischaracterization, incomplete, or inconsistent characterization of the emails.  To the extent a response is required, Defendants deny the allegations of Paragraph 74 of the Complaint.

**E.     Stan Smith's Departure from Milliman and Founding of Gradient**

75.     Defendants deny the allegations of Paragraph 75 of the Complaint, except Defendants Smith and Pettus admit that Mr. Smith worked on a project called "gradient A.I." (which was originally called MillimanMAX) while at Milliman.  Defendant Gradient is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 75, and therefore denies those allegations.

76.     Defendants deny the allegations of Paragraph 76 of the Complaint.

77.     Defendants deny the allegations of Paragraph 77 of the Complaint, except Defendants Gradient and Smith admit that Gradient, formerly known as Arrowhead Technology Corporation, purchased a number of assets from Milliman in 2018 that included, inter alia, the "Gradient AI business," which were in no way limited to the workers compensation insurance field.  Defendant Pettus is without information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 77 of the Complaint, and therefore denies those allegations.

78.     Defendants deny the allegations of Paragraph 78 of the Complaint, except they admit that: (a) 11 employees previously employed at Milliman, including Mr. Smith and Mr. Pettus, began working at Gradient after Gradient, formerly known as Arrowhead Technology Corporation, purchased a number of assets from Milliman in 2018; and (b) Mr. Pettus currently serves as Sales Director, Health at Gradient.

79.     Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 79 of the Complaint or the referenced emails which are not attached to the Complaint and, therefore, deny such allegations.

**F.     Gradient's Infringing "Group Risk Score"**

80.     Defendants deny the allegations of Paragraph 80 of the Complaint, except Defendants admit that Gradient currently offers a group health underwriting solution.

81.     Defendants deny the allegations of Paragraph 81 of the Complaint.  To the extent Paragraph 81 purports to quote from emails, which are not attached to the Complaint, those emails speak for themselves and, therefore, no further response is required.  Defendants refer to the emails for the content thereof, to the extent they exist.  Defendants deny any mischaracterization, incomplete, or inconsistent characterization of the emails.

82.     Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 82 of the Complaint, and therefore deny those allegations, except that Defendants admit that G&A Partners is a customer of Gradient.

83.     Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 83 of the Complaint, and therefore deny those allegations, except that Defendants admit Gradient submitted a confidential G&A Response to Request for

Proposal and that a document purporting to be the G&A Response is attached to the Complaint as Exhibit 8.

84.    Defendants deny the allegations of Paragraph 84 of the Complaint.

85.    Defendants deny the allegations of Paragraph 85 of the Complaint, except that Defendants admit Gradient submitted a confidential G&A Response and that a document purporting to be the G&A Response is attached to the Complaint as Exhibit 8.  The remaining allegations of Paragraph 85 seek to characterize the G&A Response, which is a document that speaks for itself, and, therefore, no further response is required.  Defendants refer to the G&A Response for the content thereof.  Defendants deny any mischaracterization, incomplete, or inconsistent characterization of the G&A Response.

86.    Defendants deny the allegations of Paragraph 86 of the Complaint, except that Defendants admit Gradient submitted a confidential G&A Response and that a document purporting to be the G&A Response is attached to the Complaint as Exhibit 8.  The remaining allegations of Paragraph 86 seeks to characterize the G&A Response, which is a document that speaks for itself, and, therefore, no further response is required.  Defendants refer to the G&A Response for the content thereof.  Defendants deny any mischaracterization, incomplete, or inconsistent characterization of the G&A Response.

87.    Defendants deny the allegations of Paragraph 87 of the Complaint.

88.    Defendants deny the allegations of Paragraph 88 of the Complaint.

89.    Defendants deny the allegations of Paragraph 89 of the Complaint.

90.    Defendants deny the allegations of Paragraph 90 of the Complaint.

91.    Defendants deny the allegations of Paragraph 91 of the Complaint.

92.    Defendants deny the allegations of Paragraph 92 of the Complaint.

93.     Defendants deny the allegations of Paragraph 93 of the Complaint.

94.     Defendants deny the allegations of Paragraph 94 of the Complaint.

95.     Defendants deny the allegations of Paragraph 95 of the Complaint.

96.     Defendants deny the allegations of Paragraph 96 of the Complaint.

97.     Defendants deny the allegations of Paragraph 97 of the Complaint.

98.     Defendants deny the allegations of Paragraph 98 of the Complaint.

99.     Defendants deny the allegations of Paragraph 99 of the Complaint.

100.    Defendants deny the allegations of Paragraph 100 of the Complaint.

101.    Defendants deny the allegations of Paragraph 101 of the Complaint.

102.    Defendants deny the allegations of Paragraph 102 of the Complaint.

103.    Defendants deny the allegations of Paragraph 103 of the Complaint.

104.    Defendants deny the allegations of Paragraph 104 of the Complaint.

105.    Defendants deny the allegations of Paragraph 105 of the Complaint.

106.    Defendants deny the allegations of Paragraph 106 of the Complaint.

107.    Defendants deny the allegations of Paragraph 107 of the Complaint.

108.    Defendants deny the allegations of Paragraph 108 of the Complaint.

109.    Defendants deny the allegations of Paragraph 109 of the Complaint.

110.    Defendants deny the allegations of Paragraph 110 of the Complaint.

111.    Defendants deny the allegations of Paragraph 111 of the Complaint.  To the extent
Paragraph 111 seeks to characterize the G&A Response, which is a document that speaks for itself,
no further response is required.  Defendants refer to the G&A Response for the content thereof.
Defendants deny any mischaracterization, incomplete, or inconsistent characterization of the G&A
Response.

112.     Defendants deny the allegations of Paragraph 112 of the Complaint.

113.     Defendants deny the allegations of Paragraph 113 of the Complaint.  To the extent Paragraph 113 of the Complaint alleges that Milliman has earned less revenue over the last year, Defendants are without information or knowledge sufficient to form a belief as to the truth of those allegations, and Defendants therefore deny those allegations.

114.     Defendants deny the allegations of Paragraph 114 of the Complaint.  To the extent Paragraph 114 of the Complaint alleges that Milliman has experienced any negative economic effects, Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 114 of the Complaint, and therefore deny those allegations.

**G.     Gradient and Mr. Smith Refuse to Engage with Milliman Regarding Milliman's Concerns**

115.     Defendants deny the allegations of Paragraph 115 of the Complaint, except they admit that Mr. Smith initially contacted Mary Clare, Senior Vice President and Chief Legal Officer of Milliman on February 4, 2021 (and then followed up with her later that day via email) regarding the knowing and willful lies that Milliman told customers about Gradient.  Ms. Clare then responded four days later.  Defendants deny any mischaracterization, incomplete or inconsistent characterization of the email.

116.     Defendants deny the allegations of Paragraph 116 of the Complaint, except they admit that email communications were exchanged between Ms. Clare of Milliman and Mr. Smith in February 2021.  To the extent Paragraph 116 seeks to characterize the email exchange between Ms. Clare and Mr. Smith, that email exchange speaks for itself, and, therefore, no further response is required.  Defendants refer to the email exchange for the content thereof.  Defendants deny any mischaracterization, incomplete, or inconsistent characterization of the email exchange.

117.    Defendants deny the allegations of Paragraph 117 of the Complaint, except they admit that Defendants deny that they have infringed any valid claim of any of the patents asserted in the Complaint, and further deny that they have misappropriated any trade secrets or committed any breach of contract as asserted in the Complaint.

118.    Defendants deny the allegations of Paragraph 118 of the Complaint.  To the extent Paragraph 118 seeks to characterize any email exchange, such email exchange speaks for itself, and, therefore, no further response is required.  Defendants refer to the email exchange for the content thereof.   Defendants deny any mischaracterization, incomplete, or inconsistent characterization of the email exchange.

119.    Defendants deny the allegations of Paragraph 119 of the Complaint.

## COUNT I – INFRINGEMENT OF THE '641 PATENT
### Against Gradient

120.    Defendants re-allege and incorporate by reference its responses to the allegations of the Complaint set forth above as if fully set forth herein.

121.    Defendants deny the allegations of Paragraph 121 of the Complaint.

122.    Defendants deny the allegations of Paragraph 122 of the Complaint.

123.    Defendants deny the allegations of Paragraph 123 of the Complaint.

124.    Defendants deny the allegations of Paragraph 124 of the Complaint.

125.    Defendants deny the allegations of Paragraph 125 of the Complaint.

126.    Defendants deny the allegations of Paragraph 126 of the Complaint.

127.    Defendants deny the allegations of Paragraph 127 of the Complaint.

128.    Defendants deny the allegations of Paragraph 128 of the Complaint.

129.    Defendants deny the allegations of Paragraph 129 of the Complaint.

130.    Defendants deny the allegations of Paragraph 130 of the Complaint.

## COUNT II – INFRINGEMENT OF THE '892 PATENT
### Against Gradient

131.    Defendants re-allege and incorporate by reference its responses to the allegations
of the Complaint set forth above as if fully set forth herein.

132.    Defendants deny the allegations of Paragraph 132 of the Complaint.

133.    Defendants deny the allegations of Paragraph 133 of the Complaint.

134.    Defendants deny the allegations of Paragraph 134 of the Complaint.

135.    Defendants deny the allegations of Paragraph 135 of the Complaint.

136.    Defendants deny the allegations of Paragraph 136 of the Complaint.

137.    Defendants deny the allegations of Paragraph 137 of the Complaint.

138.    Defendants deny the allegations of Paragraph 138 of the Complaint.

139.    Defendants deny the allegations of Paragraph 139 of the Complaint.

140.    Defendants deny the allegations of Paragraph 140 of the Complaint.

141.    Defendants deny the allegations of Paragraph 141 of the Complaint.

## COUNT III – INFRINGEMENT OF THE '685 PATENT
### Against Gradient

142.    Defendants re-allege and incorporate by reference its responses to the allegations
of the Complaint set forth above as if fully set forth herein.

143.    Defendants deny the allegations of Paragraph 143 of the Complaint.

144.    Defendants deny the allegations of Paragraph 144 of the Complaint.

145.    Defendants deny the allegations of Paragraph 145 of the Complaint.

146.    Defendants deny the allegations of Paragraph 146 of the Complaint.

147.    Defendants deny the allegations of Paragraph 147 of the Complaint.

148.    Defendants deny the allegations of Paragraph 148 of the Complaint.

149.    Defendants deny the allegations of Paragraph 149 of the Complaint.

150.    Defendants deny the allegations of Paragraph 150 of the Complaint.

151.    Defendants deny the allegations of Paragraph 151 of the Complaint.

152.    Defendants deny the allegations of Paragraph 152 of the Complaint.

## COUNT IV – INFRINGEMENT OF THE '651 PATENT
### Against Gradient

153.    Defendants re-allege and incorporate by reference its responses to the allegations of the Complaint set forth above as if fully set forth herein.

154.    Defendants deny the allegations of Paragraph 154 of the Complaint.

155.    Defendants deny the allegations of Paragraph 155 of the Complaint.

156.    Defendants deny the allegations of Paragraph 156 of the Complaint.

157.    Defendants deny the allegations of Paragraph 157 of the Complaint.

158.    Defendants deny the allegations of Paragraph 158 of the Complaint.

159.    Defendants deny the allegations of Paragraph 159 of the Complaint.

160.    Defendants deny the allegations of Paragraph 160 of the Complaint.

161.    Defendants deny the allegations of Paragraph 161 of the Complaint.

162.    Defendants deny the allegations of Paragraph 162 of the Complaint.

163.    Defendants deny the allegations of Paragraph 163 of the Complaint.

## COUNT V – INFRINGEMENT OF THE '375 PATENT
### Against Gradient

164.    Defendants re-allege and incorporate by reference its responses to the allegations of the Complaint set forth above as if fully set forth herein.

165.    Defendants deny the allegations of Paragraph 165 of the Complaint.

166.    Defendants deny the allegations of Paragraph 166 of the Complaint.

167.    Defendants deny the allegations of Paragraph 167 of the Complaint.

168.    Defendants deny the allegations of Paragraph 168 of the Complaint.

169.    Defendants deny the allegations of Paragraph 169 of the Complaint.

170.    Defendants deny the allegations of Paragraph 170 of the Complaint.

171.    Defendants deny the allegations of Paragraph 171 of the Complaint.

172.    Defendants deny the allegations of Paragraph 172 of the Complaint.

173.    Defendants deny the allegations of Paragraph 173 of the Complaint.

174.    Defendants deny the allegations of Paragraph 174 of the Complaint.

**COUNT VI – INFRINGEMENT OF THE '012 PATENT**
**Against Gradient**

175.    Defendants re-allege and incorporate by reference its responses to the allegations of the Complaint set forth above as if fully set forth herein.

176.    Defendants deny the allegations of Paragraph 176 of the Complaint.

177.    Defendants deny the allegations of Paragraph 177 of the Complaint.

178.    Defendants deny the allegations of Paragraph 178 of the Complaint.

179.    Defendants deny the allegations of Paragraph 179 of the Complaint.

180.    Defendants deny the allegations of Paragraph 180 of the Complaint.

181.    Defendants deny the allegations of Paragraph 181 of the Complaint.

182.    Defendants deny the allegations of Paragraph 182 of the Complaint.

183.    Defendants deny the allegations of Paragraph 183 of the Complaint.

184.    Defendants deny the allegations of Paragraph 184 of the Complaint.

185.    Defendants deny the allegations of Paragraph 185 of the Complaint.

**COUNT VII – BREACH OF CONFIDENTIALITY AGREEMENT**
**Against Stanford A. Smith and Samuel Chase Pettus**

186.    Defendants re-allege and incorporate by reference its responses to the allegations of the Complaint set forth above as if fully set forth herein.

187.    Defendants Smith and Pettus deny the allegations of Paragraph 187 of the Complaint, except Mr. Smith admits that he and Milliman entered into an Employee Trade Secret and Client Information Agreement dated August 4, 2011, and Mr. Pettus admits that he and Milliman entered into an Employee Trade Secret and Client Information Agreement dated September 25, 2012.  Defendant Gradient is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 187, and therefore denies those allegations.

188.    Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 188 of the Complaint, and therefore deny those allegations.

189.    Paragraph 189 of the Complaint purports to characterize certain terms of the Employee Trade Secret and Client Information Agreements, which are documents that speak for themselves, and, therefore, no further response is required.  Defendants refer to the Employee Trade Secret and Client Information Agreements for the content thereof.  Defendants deny any mischaracterization, incomplete or inconsistent characterization of the Employee Trade Secret and Client Information Agreements.  To the extent a response is required, Defendants deny the allegations of Paragraph 189 of the Complaint.

190.    Defendants deny the allegations of Paragraph 190 of the Complaint.

191.    Defendants deny the allegations of Paragraph 191 of the Complaint.

192.    Defendants deny the allegations of Paragraph 192 of the Complaint.

193.    Defendants deny the allegations of Paragraph 193 of the Complaint.

## COUNT VIII – VIOLATION OF DEFEND TRADE SECRETS ACT
### Against Stanford A. Smith and Samuel Chase Pettus

194.    Defendants re-allege and incorporate by reference its responses to the allegations of the Complaint set forth above as if fully set forth herein.

195.    Defendants deny the allegations of Paragraph 195 of the Complaint, except they admit that the Complaint purports to state a cause of action for trade secret misappropriation under the DTSA, 18 U.S.C. §§ 1836 *et seq*.

196.    Paragraph 196 states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 196 of the Complaint.

197.    Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 197 of the Complaint, and therefore deny those allegations.

198.    Defendants deny the allegations of Paragraph 198 of the Complaint.

199.    Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 199 of the Complaint, and therefore deny those allegations.

200.    Defendants Smith and Pettus deny the allegations of Paragraph 200 of the Complaint, except Mr. Smith admits that he and Milliman entered into an Employee Trade Secret and Client Information Agreement dated August 4, 2011, and Mr. Pettus admits that he and Milliman entered into an Employee Trade Secret and Client Information Agreement dated September 25, 2012.  Defendant Gradient is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 200, and therefore denies those allegations.

201.    Defendants Smith and Pettus deny the allegations of Paragraph 201 of the Complaint, except Mr. Smith admits that he and Milliman entered into an Employee Trade Secret and Client Information Agreement dated August 4, 2011, and Mr. Pettus admits that he and Milliman entered into an Employee Trade Secret and Client Information Agreement dated

September 25, 2012.  Defendant Gradient is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 201, and therefore denies those allegations.

202.    Defendants deny the allegations of Paragraph 202 of the Complaint.

203.    Defendants deny the allegations of Paragraph 203 of the Complaint.

204.    Defendants deny the allegations of Paragraph 204 of the Complaint.

205.    Defendants deny the allegations of Paragraph 205 of the Complaint.

206.    Defendants deny the allegations of Paragraph 206 of the Complaint.

207.    Defendants deny the allegations of Paragraph 207 of the Complaint, except Mr. Smith admits he is Gradient's CEO and Mr. Pettus admits he is Gradient's Sales Director, Health.

208.    Defendants deny the allegations of Paragraph 208 of the Complaint.

209.    Defendants deny the allegations of Paragraph 209 of the Complaint.

210.    Defendants deny the allegations of Paragraph 210 of the Complaint.

## COUNT IX – VIOLATION OF DEFEND TRADE SECRETS ACT
### Against Gradient

211.    Defendants re-allege and incorporate by reference its responses to the allegations of the Complaint set forth above as if fully set forth herein.

212.    Defendants deny the allegations of Paragraph 212 of the Complaint, except they admit that the Complaint purports to state a cause of action for trade secret misappropriation under the DTSA, 18 U.S.C. §§ 1836 *et seq*.

213.    Paragraph 213 states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 213 of the Complaint.

214.    Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 214 of the Complaint, and therefore deny those allegations.

215.    Defendants deny the allegations of Paragraph 215 of the Complaint.

216.    Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 216 of the Complaint, and therefore deny those allegations.

217.    Defendants Smith and Pettus deny the allegations of Paragraph 217 of the Complaint, except Mr. Smith admits that he and Milliman entered into an Employee Trade Secret and Client Information Agreement dated August 4, 2011, and Mr. Pettus admits that he and Milliman entered into an Employee Trade Secret and Client Information Agreement dated September 25, 2012.  Defendant Gradient is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 217, and therefore denies those allegations.

218.    Defendants deny the allegations of Paragraph 218 of the Complaint.

219.    Defendants deny the allegations of Paragraph 219 of the Complaint.

220.    Defendants deny the allegations of Paragraph 220 of the Complaint.

221.    Defendants deny the allegations of Paragraph 221 of the Complaint.

222.    Defendants deny the allegations of Paragraph 222 of the Complaint.

223.    Defendants deny the allegations of Paragraph 223 of the Complaint.

224.    Defendants deny the allegations of Paragraph 224 of the Complaint.

225.    Defendants deny the allegations of Paragraph 225 of the Complaint.

226.    Defendants deny the allegations of Paragraph 226 of the Complaint.

## COUNT X – VIOLATION OF MASSACHUSETTS UNIFORM TRADE SECRET ACT
### Against Stanford A. Smith and Samuel Chase Pettus

227.    Defendants re-allege and incorporate by reference its responses to the allegations of the Complaint set forth above as if fully set forth herein.

228.    Defendants deny the allegations of Paragraph 228 of the Complaint, except they admit that the Complaint purports to state a cause of action for trade secret misappropriation under the MUTSA, Mass. Gen. L. c. 93, §§ 42 *et seq*.

229.    Paragraph 229 states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 229 of the Complaint.

230.    Defendants deny the allegations of Paragraph 230 of the Complaint.

231.    Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 231 of the Complaint, and therefore deny those allegations.

232.    Defendants Smith and Pettus deny the allegations of Paragraph 232 of the Complaint, except Mr. Smith admits that he and Milliman entered into an Employee Trade Secret and Client Information Agreement dated August 4, 2011, and Mr. Pettus admits that he and Milliman entered into an Employee Trade Secret and Client Information Agreement dated September 25, 2012.  Defendant Gradient is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 232, and therefore denies those allegations.

233.    Defendants Smith and Pettus deny the allegations of Paragraph 233 of the Complaint, except Mr. Smith admits that he and Milliman entered into an Employee Trade Secret and Client Information Agreement dated August 4, 2011, and Mr. Pettus admits that he and Milliman entered into an Employee Trade Secret and Client Information Agreement dated September 25, 2012.  Defendant Gradient is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 233, and therefore denies those allegations.

234.    Defendants deny the allegations of Paragraph 234 of the Complaint.

235.    Defendants deny the allegations of Paragraph 235 of the Complaint.

236.    Defendants deny the allegations of Paragraph 236 of the Complaint.

237.    Defendants deny the allegations of Paragraph 237 of the Complaint.

238.    Defendants deny the allegations of Paragraph 238 of the Complaint.

239.    Defendants deny the allegations of Paragraph 239 of the Complaint.

240.    Defendants deny the allegations of Paragraph 240 of the Complaint.

241.    Defendants deny the allegations of Paragraph 241 of the Complaint.

242.    Defendants deny the allegations of Paragraph 242 of the Complaint.

## COUNT XI – VIOLATION OF MASSACHUSETTS UNIFORM TRADE SECRET ACT
### Against Gradient

243.    Defendants re-allege and incorporate by reference its responses to the allegations of the Complaint set forth above as if fully set forth herein.

244.    Defendants deny the allegations of Paragraph 244 of the Complaint, except they admit that the Complaint purports to state a cause of action for trade secret misappropriation under the MUTSA, Mass. Gen. L. c. 93, §§ 42 *et seq*.

245.    Paragraph 245 states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 245 of the Complaint.

246.    Defendants deny the allegations of Paragraph 246 of the Complaint.

247.    Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 247 of the Complaint, and therefore deny those allegations.

248.    Defendants Smith and Pettus deny the allegations of Paragraph 248 of the Complaint, except Mr. Smith admits that he and Milliman entered into an Employee Trade Secret and Client Information Agreement dated August 4, 2011, and Mr. Pettus admits that he and Milliman entered into an Employee Trade Secret and Client Information Agreement dated

September 25, 2012.  Defendant Gradient is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 248, and therefore denies those allegations.

249.     Defendants deny the allegations of Paragraph 249 of the Complaint.

250.     Defendants deny the allegations of Paragraph 250 of the Complaint.

251.     Defendants deny the allegations of Paragraph 251 of the Complaint.

252.     Defendants deny the allegations of Paragraph 252 of the Complaint.

253.     Defendants deny the allegations of Paragraph 253 of the Complaint.

254.     Defendants deny the allegations of Paragraph 254 of the Complaint.

255.     Defendants deny the allegations of Paragraph 255 of the Complaint.

256.     Defendants deny the allegations of Paragraph 256 of the Complaint.

257.     Defendants deny the allegations of Paragraph 257 of the Complaint.

**COUNT XI – UNFAIR AND DECEPTIVE ACTS AND PRACTICES IN VIOLATION OF MASS. GEN. L. c. 93A**
**Against All Defendants**

258.     Defendants re-allege and incorporate by reference its responses to the allegations of the Complaint set forth above as if fully set forth herein.

259.     Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 259 of the Complaint, and therefore deny those allegations.

260.     Paragraph 260 states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 260 of the Complaint, except Defendant Smith admits that he resides in and works for Gradient in Massachusetts.

261.     Paragraph 261 of the Complaint states a legal conclusion to which no response is required.  To the extent a response is required, Defendant Pettus denies the allegations in Paragraph

261 of the Complaint.  Defendants Gradient and Smith are without information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 261, and therefore deny those allegations.

262.   Paragraph 262 states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 262 of the Complaint, except they admit that Gradient maintains its principal place of business in the Commonwealth of Massachusetts.

263.   Defendants deny the allegations of Paragraph 263 of the Complaint.

264.   Defendants deny the allegations of Paragraph 264 of the Complaint.

265.   Defendants deny the allegations of Paragraph 265 of the Complaint.

266.   Defendants deny the allegations of Paragraph 266 of the Complaint.

267.   Defendants deny the allegations of Paragraph 267 of the Complaint.

268.   Defendants deny the allegations of Paragraph 268 of the Complaint.

269.   Defendants deny the allegations of Paragraph 269 of the Complaint.

270.   Defendants deny the allegations of Paragraph 270 of the Complaint.

271.   Defendants deny the allegations of Paragraph 271 of the Complaint.

## PRAYER FOR RELIEF

Paragraphs (A) through (Q) of the Prayer for Relief section of the Complaint set forth the relief requested by Plaintiffs, to which no further response is required.  To the extent that a response is required, Defendants deny that Plaintiffs are entitled to any of the requested relief.

## AFFIRMATIVE DEFENSES

Without assuming any burden that it would not otherwise have under applicable law, Defendants assert the following affirmative/additional defenses.  By designating these matters as

"defenses," Defendants do not suggest either that Plaintiffs do not bear the burden of proof as to such matters or that such matters are not elements that Plaintiffs must establish in order to make out a prima facie case against Defendants.

<u>**First Affirmative Defense**</u>

The Complaint fails to state a claim upon which relief can be granted.

<u>**Second Affirmative Defense**</u>

Defendant Gradient is not infringing and has not infringed, either literally or under the doctrine of equivalents, any valid or enforceable claim of the Asserted Patents.  Defendant Gradient is not and has not been actively inducing anyone to infringe, either literally or under the doctrine of equivalents, any valid or enforceable claim of the Asserted Patents.  Defendant Gradient is not and has not willfully infringed any valid or enforceable claim of the Asserted Patents.

<u>**Third Affirmative Defense**</u>

The claims of the Asserted Patents are invalid for failure to comply with one or more conditions and requirements for patentability set forth in Title 35 of the United States Code including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112, and/or the claims are otherwise unenforceable.

<u>**Fourth Affirmative Defense**</u>

Plaintiffs are not entitled to injunctive relief or enhanced damages because they failed to plead the required elements for such relief, and because Plaintiff has an adequate remedy at law for any alleged injury.  Defendants' actions in defending this action do not give rise to a finding of an exceptional case under 35 U.S.C. § 285.

## Fifth Affirmative Defense

Plaintiffs' claims are barred in whole or in part, by 35 U.S.C. § 288.

## Sixth Affirmative Defense

Plaintiffs' claims for damages are limited by 35 U.S.C. § 286 and 287(a).

## Seventh Affirmative Defense

Plaintiffs' claims are barred by the doctrines of waiver, estoppel, laches and/or acquiescence.

## Eighth Affirmative Defense

Plaintiffs' claims are barred by payment, accord, and satisfaction.

## Ninth Affirmative Defense

Plaintiffs may not recover on their claims, in whole or in part, because Plaintiffs failed to mitigate any damage claims they may have against Defendants.

## Tenth Affirmative Defense

Plaintiffs' claims are barred under the doctrine of unclean hands.

## Eleventh Affirmative Defense

Plaintiffs' claims are barred by the doctrine of prosecution history estoppel.  During prosecution of the Asserted Patents, Plaintiffs or their patent agent or attorney made amendments, took positions, or made concessions, statements, or representations that estop Plaintiffs from asserting the Asserted Patents against any product made, used, sold, or offered for sale by Gradient.

## Twelfth Affirmative Defense

Plaintiffs' claims are barred by, and barred by Plaintiffs' failure to perform their own contractual duties under, the Asset Purchase Agreement, dated June 29, 2018, including Sections 1.1, 1.6, 2.2, 8.4, and 8.9.

## <u>RESERVATION OF RIGHTS</u>

Defendants reserve the right to assert additional defenses that may become known through further investigation and discovery.  Defendants also reserve the right to amend these defenses.

**DEFENDANTS GRADIENT A.I. CORP., STANFORD A. SMITH, AND SAMUEL
CHASE PETTUS' COUNTERCLAIMS AGAINST MILLIMAN, INC., MILLIMAN
SOLUTIONS, LLC, and VIGILYTICS, LLC**

Defendants' counterclaims aim to expose Plaintiff Milliman – and hold it liable – for playing dirty pool.  Milliman sold the Gradient AI business to Defendant Smith specifically because it did not want him pursuing it under the Milliman brand.  In order to maximize the price paid, Milliman informed Defendant Smith that it would remove all existing non-competition restrictions.  Milliman apparently believed the upstart, independent company would never be able to compete outside the Milliman umbrella.  To Milliman's frustration, however, defendant Gradient has proven a formidable competitor.  Rather than responding to this lawful competition by listening to customer feedback and innovating its technology, however, Milliman took the lazy route and sought to undermine Gradient's business and tarnish the reputations of two of its principals by spreading objectively false claims.  This dispute did not begin with the Complaint; it began when *Defendant Smith* complained directly to Milliman about these false rumors.  In response, Milliman initiated this suit in an attempt to intimidate Defendants, eliminate a lawful competitor, and deny customers a superior choice in the market for healthcare insurance solutions.  Far from being intimidated, however, Defendants intend to protect their business, preserve their reputations, and make Plaintiffs pay for the damage they have caused.

There is considerable background between the parties.  Plaintiff Milliman, Inc. ("Milliman") is a large, global actuarial consulting firm that provides services to insurance companies and others.  From 2011 to 2018, Mr. Smith ran a "Practice," or profit center, within Milliman that developed a product called "Gradient AI."  "Gradient AI" helped insurance companies and other insurance-related entities to better predict (and thus manage and underwrite) the likelihood of large workers' compensation claims.

While the product was a commercial success in 2018, Milliman told Mr. Smith (and confirmed to the rest of Milliman in a subsequent explanatory email about the decision and the transaction) that it did not want to continue to sell "Gradient AI" to its clients, because the sale of such a product would cannibalize the sale of Milliman's consulting services. Milliman's Board of Directors proposed that Mr. Smith purchase "Gradient AI" and spin it out as an independent company. To enhance the value that Mr. Smith would pay, Bill Pedersen, Milliman's Senior Vice President and Chief Operating Officer, offered that Milliman would remove any non-compete obligations from Mr. Smith and the other Milliman employees of his new company, including Defendant Samuel Chase Pettus, and in return Mr. Smith would pay millions of dollars for the "Gradient AI" platform. Milliman thus sold to Mr. Smith's new company all rights to the "Gradient AI software, data, and technology…and the assets used in connection with the Gradient AI business[.]" *See* Ex. A (Asset Purchase Agreement) ("APA"), at § 1.1. Mr. Smith's new company – then known as Arrowhead Technology Corporation, now known as Gradient – paid the full price. *Id*. at § 1.3. As part of the transaction, Milliman facilitated other Milliman employees, including Mr. Pettus, joining Gradient. *Id*. at Schedule 2.2. Mr. Pederson's offer was reflected in the APA, which did not restrict the industries in which Mr. Smith's new company could compete, and expressly waived and released Mr. Smith and the other employees "of any and all non-competition and non-solicitation obligations," including nearly all of the restrictions set forth in the Employee Trade Secret and Client Information Agreement between Mr. Smith and Milliman, dated August 4, 2011. *Id* at § 2.2.

Milliman and Gradient continued to coordinate efforts over the next two years, and tried to work together for the benefit of mutual clients, or in pursuit of mutual benefit, on several occasions. During those two years, Mr. Smith, Mr. Pettus, and the rest of the Gradient team used the assets purchased from Milliman and augmented and enhanced them with time and the resources provided

by investors to develop new and innovative products.  Thanks to this effort and focus on innovation by Mr. Smith, Mr. Pettus, and the Gradient team, Gradient's product suite grew to include a range of new AI-related offerings that did not exist when Mr. Smith and his team worked at Milliman. Driven by customer demand, by 2019 these included other products to address the workers' compensation insurance market and products to address other property and casualty lines of insurance (e.g., general liability and commercial auto insurance).

By 2020, again driven by customer demand, Gradient branched out to produce products targeted at assisting the group healthcare insurance underwriting market.  These include Gradient's SAIL™ product, which uses artificial intelligence to help customers, including professional employment organizations and insurers, to better predict future healthcare insurance claims (and thus price group healthcare insurance policies).

Upon information and belief, Milliman observed that Gradient's SAIL™ was gaining traction in the healthcare insurance analysis market, and thus threatened Milliman's profits. Indeed, by 2021, Mr. Smith, Mr. Pettus, and the other former Milliman employees at Gradient were now competing directly with their former employer—and Gradient was winning.

Milliman thus went on the offensive.  But, crucially, Milliman's offensive did not involve the familiar, rough-and-tumble activities that the law permits between commercial competitors. Instead of cutting its price, improving its "Curv" product, or marketing to clients its honest sense of why Curv was better than SAIL™, Milliman peddled knowing and willful lies.  Specifically, one or more known equity principals at Milliman told (or had another Milliman employee(s) tell) some of Gradient's existing partners and prospective customers that Gradient stole from Milliman all the intellectual property underlying SAIL™, that Milliman had filed a lawsuit against Gradient, and that Milliman had won a cease-and-desist order prohibiting Gradient from selling SAIL™.

Milliman knew that at least the last two statements were false.  Milliman had not sued Gradient at that time, nor had Milliman sought or received a cease-and-desist order.  Upon information and belief, Milliman had two goals when it defamed Gradient, disparaged SAIL™, and tortiously interfered with Gradient's prospective and current business relationships.  First, Milliman wanted to undercut Gradient's ability to sell SAIL™ by tarnishing Gradient's business reputation, encouraging prospective and existing customers to stop dealing with Gradient, and by sowing doubt that Gradient would be allowed to sell or deliver SAIL™ in the future.  Second, the equity principals at Milliman – who knew Mr. Smith and Mr. Pettus when they worked at Milliman – were angry and spiteful that their former colleagues were now selling a competing product, and the market acceptance of that competing product made their jobs at Milliman more difficult.  As a result, they wanted to harm Gradient's business prospects and Mr. Smith's and Mr. Pettus's reputations.

Milliman's lies had some of their intended effect.  Milliman's dishonesty has cost Gradient at least millions of dollars in lost or delayed business opportunities/contracts, including with major industry players like Aon – the second largest insurance broker in the world – and others.

Milliman's unlawful campaign did not stop there.  Milliman brought the instant Complaint on May 25, 2021, accusing Gradient, Mr. Smith, and Mr. Pettus of patent infringement, trade secret misappropriation, and other alleged harms.  But on the face of Milliman's Complaint itself, the assets and technologies at issue in those infringement and misappropriation claims are within the same broad category of assets that Gradient purchased from Milliman in 2018.  Milliman's lawsuit is thus a breach of the 2018 APA, since Milliman now in effect argues that it never sold the "Gradient AI" assets for which it received millions of dollars from Gradient in 2018.  Milliman has therefore breached the APA and the covenant of good faith and fair dealing.

Between its campaign of willful lies and its breach of the APA, Milliman has stepped far over the legal limit of what companies are allowed to do when trying to undercut a new competitor. Defendants' counterclaims – for tortious interference, defamation, commercial disparagement, violation of Mass. Gen. L. c. 93A, breach of contract, and breach of the implied covenant of good faith and fair dealing – aim to hold Milliman (and its subsidiary, Milliman Solutions, LLC) responsible for failing to play by the rules. Indeed, it is both telling and ironic that Milliman's Senior Vice President and Chief Legal Officer, Mary Clare, stated in an email to Mr. Smith on February 22, 2021 that "[w]e respect and encourage competition, so long as it is lawful." Ex. B (Smith-Clare Email Exchange), at 1.

## PARTIES

1.   On information and belief, Milliman, Inc. is a Delaware corporation with a principal place of business in Seattle, Washington.

2.   On information and belief, Milliman Solutions, LLC is a Delaware limited liability company with a principal place of business in Brookfield, Wisconsin.

3.   On information and belief, Vigilytics, LLC is a New York limited liability company with a principal place of business in Victor, New York.

4.   Gradient is a Delaware corporation, was formerly known as Arrowhead Technology Corporation, and maintains a principal place of business at 321 Summer St, Floor 6, Boston MA 02210.

5.   Mr. Smith is the founder and current Chief Executive Officer of Gradient and resides in New Hampshire. From 2011 until 2018, he was employed by Milliman.

6.   Mr. Pettus is currently Sales Director, Health, at Gradient and he resides in Arkansas. From 2012 until May 2017, and then from July 2017 until 2018, he was employed by Milliman.

**JURISDICTION AND VENUE**

7.     This Court has subject matter jurisdiction over the counterclaims under 28 U.S.C. § 1367(a) because they are so related to the plaintiffs' claims that they form part of the same case or controversy under Article III of the United States Constitution.

8.     Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district, including Plaintiffs' filing of the Complaint.

**RELEVANT FACTUAL BACKGROUND**

9.     Milliman is an actuarial and consulting firm that sells, among other products, risk modeling and predictive analytics to health insurance companies.

10.     Mr. Smith worked for Milliman from 2011 to 2018 as the principal of a "profit center" within Milliman.  His focus at Milliman was on developing a platform called "Gradient AI."  That platform used artificial intelligence solutions to more accurately price the risk of workers' compensation insurance claims.

11.     Mr. Smith recognized that the Gradient AI platform would have tremendous value if it were extended to group healthcare underwriting.  So, in 2017, Mr. Smith began following Milliman's internal registration process to develop Gradient AI for use in healthcare underwriting.

12.     The registration process culminated in a meeting between Mr. Smith and Milliman's CEO, Milliman's Health practice leadership, and other senior Milliman executives. The Health practice raised concerns that the Gradient AI product, if extended to healthcare underwriting, would cannibalize Milliman's lucrative actuarial consulting business.[1]  In an effort

---

[1] Milliman is a partnership, and its principals' compensation is driven by the financial performance of their respective practices.

to address those concerns, Mr. Smith offered to allow the Health practice to invest in Gradient AI so that it would share in the resulting profits. But the Health practice refused, and succeeded in blocking Mr. Smith from registering Gradient AI for use in health insurance.

13.     Presumably because it recognized that Milliman had violated its own protocols by blocking Mr. Smith from registering Gradient AI and pursuing a large market opportunity, Milliman's Board asked Mr. Smith whether he would "voluntarily" abstain from pursuing the Health market. When Mr. Smith declined, as was his right as the principal of a Milliman profit center, the Board offered to allow Mr. Smith to buy the Gradient AI business so that he could pursue all opportunities — including health insurance — on his own.

14.     Milliman therefore offered to sell to Mr. Smith a broad category of Gradient AI-related assets so Mr. Smith could pursue the Gradient AI business through a new company that Mr. Smith would be required to establish. That company, originally named Arrowhead Technology Corporation ("Arrowhead"), is now known as Gradient A.I. Corp. ("Gradient").

15.     Mr. Smith negotiated the deal with Milliman's Senior Vice President and Chief Operating Officer, Bill Pederson. A critical facet of the deal was that Mr. Smith and his new company would not be under any non-compete obligation after spinning out from Milliman. In exchange for that clearance, Mr. Smith's new company would pay Milliman more money for the Gradient AI assets.

16.     That is, Milliman negotiated a higher price precisely because it knew that Mr. Smith would have the right to compete with Milliman in the health insurance space — the very opportunity that Milliman had refused to allow Mr. Smith to pursue while employed by Milliman.

17.     Arrowhead (now known as Gradient) and Milliman reached agreement on June 29, 2018 and executed an Asset Purchase Agreement (APA).  A true and correct copy of the APA is attached as Exhibit A.

18.     The sale of assets pursuant to the APA closed on July 1, 2018 (the "Closing").  *See* Ex. A, § 1.5.

19.     The APA provided in part that Gradient purchased from Milliman "all . . . legal right, title and interest in and to the Gradient AI software, data, and technology . . . and the assets used in connection with the Gradient AI business . . ."  *Id*. at § 1.1.

20.     Gradient performed all of its obligations under the APA, including paying Milliman millions of dollars for the Gradient AI assets.  *Id*. at § 1.3.

21.     The APA did not restrict Gradient's ability to use or develop the purchased assets to compete in any industry.

22.     Indeed, under the APA, Milliman expressly agreed to "waive[] and release[] Stanford Smith and the Transferred Employees, of any and all non-competition and non-solicitation obligations," including nearly all of the restrictions set forth in the Employee Trade Secret and Client Information Agreement between Mr. Smith and Milliman, dated August 4, 2011, except a "restriction on solicitation of Milliman employees."   Ex. A, §2.2.

23.     In order to protect both parties' interests, the APA contained an express waiver provision stating that "[t]he terms, covenants, representations, warranties and conditions of this Agreement may be changed, amended, modified, waived, discharged or terminated only by a

written instrument executed by the Parties hereto or the Party waiving compliance, as applicable."
Ex. A, §8.4.[2]

24.     Gradient and Milliman never executed a written instrument to modify either parties'
obligations under the APA.  *Id*.

25.     Finally, to ensure that the parties only transferred the intended, purchased assets,
the parties agreed that Milliman's IT personnel would have root access to Gradient's system for
six months after the sale so that Milliman could look for, and delete, any data that Milliman did
not want Gradient to have, including health data.  *Id*. at Ex. B ("Transition Obligations").  Milliman
in fact exercised that right, and deleted data relating to group health underwriting.

26.     After the Closing, Mr. Smith and Mr. Pettus and others at Gradient took the assets
it purchased from Milliman and invested countless hours and millions of dollars into research and
development to develop new products and technologies specifically for the insurance industry.

27.     Thanks to all that investment and hard work, Gradient developed into a market
leader in artificial intelligence-driven SaaS solutions for the insurance industry and risk
management professionals.   As a result, Gradient has been able to secure equity financing, which
has allowed Gradient to further expand its product offerings, accelerate its customer acquisition
plans, and expand its team of experienced leaders in the data analytics, risk management, and
enterprise software platform fields.

28.     Gradient now sells a range of underwriting solutions, including products that help
insurance companies and others to assess and quantify prospective risk, to automate or expedite

---

[2] The APA also contains an arbitration clause providing that "[a]ll disputes arising out of, or in
connection with this Agreement shall be finally settled by arbitration . . ."  *Id*. § 7.2.

underwriting decisions, and to drive enhanced profitability.  Gradient also offers a variety of claims and business process solutions.

29.     Beginning in mid-to-late 2020, Gradient began selling SAIL™, a group healthcare underwriting solution for new (as opposed to renewal) policies.  SAIL™ uses artificial intelligence to estimate future healthcare costs, which allows Gradient's customers – typically professional employer organizations or insurers – to price premiums for company group insurance plans more accurately.

30.     By employing a broader set of data types and access to a much larger set of health data sources, Gradient allows insurers and other customers to more accurately price their healthcare cost risks.  This, along with a novel pricing strategy, has allowed SAIL™ to quickly become a commercial success.

31.     SAIL™ is not, however, the only product in the healthcare group underwriting market.  Milliman sells a competing product (Curv), as do other companies like Prognos Health and Verikai.

32.     Upon information and belief, Milliman began to see SAIL™ as a competitive threat to Curv in the group health underwriting market, thanks to the quality of SAIL™'s artificial intelligence and its novel and attractive pricing structure.

33.     In early 2021, Gradient became aware from multiple sources – including (but not limited to) Aon, the world's second largest insurance broker, and another large business prospect – that one or more Milliman equity principals told them (or directed other Milliman employees to tell them) that Gradient stole the SAIL™ product from Milliman, and that Milliman had filed a lawsuit against Gradient, and that a cease-and-desist order had been issued in Milliman's favor to prevent Gradient from selling SAIL™.

34.     The Milliman equity principal(s) knew that at least the last two statements were false.  Milliman had not filed a lawsuit against Gradient at that time, nor had Milliman requested nor received a cease-and-desist order.  Milliman's statements were, therefore, knowing and willful lies.

35.     The companies to which the Milliman equity principal(s) directed these statements (including at least Aon and another large business prospect) were either current partners and/or prospective customers of Gradient and all of them have significant industry influence.

36.     Milliman knew that these organizations were influential industry players, and that Gradient had prospective and existing business relations with those organizations.

37.     Milliman's statements to Gradient's current business partners and prospective customers aimed to damage Gradient's reputation with these influential industry players, and to interfere with Gradient's sales effort by sowing doubt that Gradient may not be able to sell or deliver SAIL™ in the future.

38.     Milliman's statements have in fact cast a shadow over Gradient's business and have caused Gradient a loss of at least millions of dollars due to lost or delayed contracts and business partnerships with multiple customers, including (but not limited to) Aon and another large prospect.

39.     In early February 2021, _Gradient_ (via Mr. Smith) approached _Milliman_ about Milliman's campaign of lies.  In a series of emails and telephone calls, the two sides discussed the allegations and other issues (including issues raised by Milliman that would later appear in its Complaint months later).

40.     On May 25, 2021, Milliman filed the instant Complaint against Gradient including allegations against it of patent infringement under the Patent Act, 35 U.S.C. § 271 _et seq_., trade

secret misappropriation under the DTSA, 18 U.S.C. §§ 1836 *et seq*., and the MUTSA, Mass. Gen. L. c. 93, §§ 42 *et seq*. and unfair and deceptive acts and practices in violation of Mass. Gen. L. c. 93A, connected to Gradient's group health underwriting solution.

41.     Although the Complaint does not clearly define the allegedly misappropriated trade secrets, the Complaint's allegations of patent infringement and misappropriated trade secrets concern at least the same broad category of Gradient AI-related assets that Gradient purchased from Milliman via the APA.  Ex. A, § 1.1.

42.     Milliman's campaign of interference, defamation, and harassment have cast a shadow over Gradient's business and have cost Gradient at least millions of dollars worth of lost business opportunities, fees, and other losses.

**COUNT I – DEFAMATION/DEFAMATION *PER SE***
**Against Milliman, Inc. and Milliman Solutions, LLC**

43.     Gradient incorporates each of the foregoing paragraphs as if fully set forth herein.

44.     In early 2021, Milliman, the known Milliman equity principal(s), or another Milliman employee(s) at their direction, told at least Aon and another large business prospect that Gradient stole Milliman's intellectual property to build Gradient's SAIL™ platform, and that Milliman had filed a lawsuit against Gradient and sought and received a cease-and-desist order to prevent Gradient from selling SAIL™.

45.     The known equity principal(s)' statements (and/or those they directed other Milliman employees to tell) about Gradient's relationship to Milliman were aimed to benefit Milliman competitively, given that SAIL™ posed a threat to Milliman's health/welfare benefits practice and IntelliScript Curv platform.

46.     Such defamatory statements are thus attributable to Milliman.

47.     Milliman knew its aforementioned statements about Gradient were false.  At the time Milliman made these statements, Milliman had not filed a lawsuit seeking a cease-and-desist order against Gradient.

48.     Milliman intended for its statements to prejudice (and those statements in fact prejudiced) Gradient's business and reputation in the industry because those statements deterred existing partners and potential customers from purchasing Gradient's SAIL™ product out of concern that a court would bar Gradient from selling the SAIL™ product.

49.     As a result of Milliman's false statements, Plaintiffs suffered reputational damage and economic loss in the form of lost customers/business worth at least millions of dollars, as well as other damages to be determined at trial.

<strong><u>COUNT II – COMMERCIAL DISPARAGEMENT</u></strong><br><strong>Against Milliman, Inc. and Milliman Solutions, LLC</strong>

50.     Gradient incorporates each of the foregoing paragraphs as if fully set forth herein.

51.     In early 2021, Milliman, via the equity principal(s) or another Milliman employee(s) at their direction, told at least Aon and another large business prospect that Gradient's SAIL™ platform was developed using Milliman's stolen intellectual property, and that Milliman had filed a lawsuit against Gradient and sought and received a cease-and-desist order to prevent Gradient from selling SAIL™.

52.     The known equity principal(s)' statements (and/or those they directed other Milliman employees to tell) about Gradient's relationship to Milliman were aimed to benefit Milliman competitively, given that SAIL™ posed a threat to Milliman's health/welfare benefits practice and IntelliScript Curv platform.

53.     Such disparaging statements are thus attributable to Milliman.

54.     Milliman knew its aforementioned statements about Gradient were false.  At the time Milliman made these statements, Milliman had not filed a lawsuit seeking a cease-and-desist order against Gradient.

55.     Milliman intended its statements to (and those statements did in fact) prejudice Gradient's business and reputation in the industry because those statements deterred existing partners and potential customers from purchasing Gradient's SAIL™ product out of concern that a court would bar Gradient from selling SAIL™.  Milliman's statements also indicated that SAIL™ was built upon stolen intellectual property.  In this way, Milliman intended for its lies to cause, or at least could foresee that its lies would cause, pecuniary harm to Gradient.

56.     Milliman's statements prejudiced Gradient's business and deterred others from dealing with it.

57.     As a result of Milliman's false statements, Plaintiffs suffered pecuniary losses worth at least millions of dollars in the form of delayed/lost delayed contracts involving Aon, a large business prospect, and others, as well as other damages to be determined at trial.

## COUNT III – TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS
### Against Milliman, Inc. and Milliman Solutions, LLC

58.     Gradient incorporates each of the foregoing paragraphs as if fully set forth herein.

59.     Gradient     had     advantageous     prospective     and     existing     business relationships/partnerships   with   insurance   brokers/consultants   and   professional   employer organizations, including (but not limited to) Aon and another large business prospect.  Gradient had existing business partnerships and prospective contractual relationships with these and other organizations for the sale of the SAIL™ platform.

60.     Upon information and belief, Milliman knew that Gradient had prospective business relationships with these organizations.  Aon told Milliman that Aon was comparing the quality/pricing of SAIL™ and Curv to determine which product to promote in the future.  Another large business prospect (and other organizations) also told Milliman that it was considering a license from Gradient.

61.     Milliman told Aon and another large business prospect that Gradient had stolen Milliman's intellectual property to create the SAIL™ platform, and that Milliman had filed a lawsuit against Gradient and had received a cease-and-desist order preventing Gradient from selling the SAIL™ platform.

62.     None of this was true.  Milliman knew at the time that it had not filed a lawsuit against Gradient and that a court had not issued a cease-and-desist order.

63.     Upon information and belief, Milliman peddled these lies based on both: (a) the desire to prevent Gradient from selling its group health underwriting solution by damaging Gradient's industry reputation and casting doubt on whether Gradient would be able to sell its platform, and, it would appear, (b) Milliman's ill will and spite toward Gradient given Mr. Smith's and Mr. Pettus' status as former Milliman employees.

64.     As a result of Milliman's statements, Gradient has suffered damages because it has lost at least millions of dollars in business opportunities for AI solutions with a number of existing partners and/or potential customers (including Aon and another large business prospect), as well as other compensatory and consequential damages to be determined at trial.

### COUNT IV – UNFAIR AND DECEPTIVE ACTS AND PRACTICES IN VIOLATION OF MASS. GEN. L. c. 93A
### Against Milliman, Inc. and Milliman Solutions, LLC

65.     Gradient incorporates each of the foregoing paragraphs as if fully set forth herein.

66.     At all relevant times, Milliman has been engaged in trade or commerce within the meaning of Mass. Gen. L. c 93A, §§ 2 and 11.

67.     At all relevant times, Gradient has been engaged in trade or commerce within the meaning of Mass. Gen. L. c 93A, §§ 2 and 11.

68.     Milliman engaged in unfair and deceptive trade practices and unfair competition when it breached the APA by filing the instant Complaint seeking to deny Gradient the ability to use the same assets from within the same broad category of assets that Gradient purchased from Milliman via the APA.

69.     Upon information and belief, Milliman's improper purpose when breaching the APA was to try to obtain all the benefits of the contract (including the millions of dollars that Gradient paid) yet simultaneously drive Gradient and its competing SAIL™ product out of the healthcare insurance market by refusing to perform its obligation to sell the purchased assets to Gradient and thus allow Gradient to use those assets.

70.     Milliman's misconduct in negotiating the APA with a Massachusetts-based party (Gradient) and breaching the APA to the detriment of that same Massachusetts-based party (Gradient) means Milliman's unfair and deceptive practices took place primarily and substantially in the Commonwealth of Massachusetts.

71.     Milliman's misconduct was knowing and willful.

72.     Milliman also engaged in unfair and deceptive trade practices and unfair competition when it misappropriated Gradient's confidential response to G&A Partners' request for proposal ("RFP"), which Milliman knew (because, upon information and belief, Milliman responded to the same RFP) both: (a) contained Gradient's confidential information concerning

its proprietary technical services and pricing strategy; and (b) was confidential per the terms of G&A Partners' RFP.

73.     G&A Partners' RFP explicitly stated in its "Rules Governing Proposals" that "[t]he content of all proposals will be kept confidential throughout the selection process and afterward. Copies of any proposal will not be shared with other respondents."

74.     Gradient only submitted its response to G&A Partners' RFP via a confidential link on a site run by its business partner, Cure Technologies.

75.     Cure Technologies never made the RFP response available in any other form.

76.     Upon information and belief, Milliman conspired with either G&A Partners or another party to access Gradient's confidential RFP response.

77.     Upon information and belief, Milliman's improper purpose when accessing Gradient's confidential RFP response was to steal and use Gradient's confidential technical, service, and pricing information.  Indeed, upon information and belief, Milliman has incorporated some details of Gradient's confidential RFP response into Milliman's Curv platform/offerings in an effort to copy features of Gradient's superior and innovative products.

78.     Gradient developed and submitted its RFP response in and from Massachusetts, which means a large portion of the activity surrounding Milliman's unfair and deceptive practices took place primarily and substantially in Massachusetts.

79.     Milliman's misconduct was knowing and willful.

80.     Milliman's misconduct constitutes unfair and deceptive trade practices and unfair competition in violation of Sections 2 and 11 of Chapter 93A of the General Laws of the Commonwealth of Massachusetts.

81.     As a direct and proximate result of Milliman's unfair and deceptive trade practices and unfair competition, Gradient has been and continues to be injured and has sustained significant damages, in an amount to be proven at trial, including at least the millions of dollars of consideration that Gradient provided under the APA, the loss of business resulting from Milliman's unlawful use of Gradient's confidential information, as well as the loss of existing/prospective business relationships and contracts due to Milliman's lawsuit.

82.     Gradient is entitled to treble damages and attorneys' fees due to Milliman's unfair and deceptive trade practices and unfair competition pursuant to Mass. Gen. L. c. 93A.

## <u>COUNT V – BREACH OF CONTRACT, APA § 1.1</u>
### Against Milliman, Inc. and Milliman Solutions, LLC

83.     Gradient incorporates each of the foregoing paragraphs as if fully set forth herein.

84.     Gradient and Milliman entered into the APA, effective June 29, 2018.

85.     In Section 1.1 of the APA, Gradient and Milliman agreed in relevant part that "[u]pon the terms and subject to the conditions set forth in this Agreement, at the Closing (defined below), Seller shall immediately sell, transfer, convey, assign and deliver to the Purchaser all of Seller's legal right, title and interest in and to the Gradient AI software, data, and technology (collectively, the "Software") and the assets used in connection with the Gradient AI business, as such Software and assets are described and defined in Exhibit A (the "Assets")." Ex. A, § 1.1.

86.     The "Assets" that Milliman sold to Gradient include assets within the broad category of assets that the Complaint now alleges that Defendants misappropriated.

87.     Gradient fully performed its obligations under the APA, including by paying the millions of dollars required by APA Section 1.3.  Ex. A, §1.3.

88.     By bringing the instant Complaint based on allegations that Gradient misappropriated assets within the broad category of assets that Gradient purchased from Milliman

via the APA, Milliman is failing to perform under Section 1.1 of the APA.  In other words, Milliman has breached the APA because Milliman now refuses perform its obligation to sell those assets to Gradient.

89.     As a direct result of Milliman's breach, Gradient has suffered damages in an amount to be established at trial, including, without limitation, prejudgment interest from the date of the breach, May 25, 2021.

## COUNT VI – BREACH OF CONTRACT, APA § 8.4
### Against Milliman, Inc. and Milliman Solutions, LLC

90.     Gradient incorporates each of the foregoing paragraphs as if fully set forth herein.

91.     Gradient and Milliman entered into the APA, effective June 29, 2018.

92.     In Section 8.4 of the APA, Gradient and Milliman agreed in relevant part that "[t]he terms, covenants, representations, warranties and conditions of this Agreement may be changed, amended, modified, waived, discharged or terminated only by a written instrument executed by the Parties hereto or the Party waiving compliance, as applicable. The failure of any Party at any time or times to require performance of any provision of this Agreement shall in no manner affect the right of such Party at a later date to enforce the same. No waiver by any Party of any condition or the breach of any provision, term, covenant, representation or warranty contained in this Agreement, whether by conduct or otherwise, in any one or more instance shall be deemed to be or construed as a further or continuing waiver of any such condition or of the breach of any other provision, term, covenant, representation or warranty of this Agreement." Ex. A, § 8.4.

93.     Gradient fully performed its obligations under the APA, including by paying the millions of dollars required by APA Section 1.3.  *See id*. at § 1.3.

94.     By bringing the instant Complaint based on allegations that Gradient misappropriated assets within the broad category of assets that Gradient purchased from Milliman

via the APA, Milliman is failing to perform under Section 8.4 of the APA.  In other words, Milliman is now refusing to perform its obligation to sell the Gradient AI assets under Section 1.1 of the APA, and Milliman did not seek a waiver of its obligations via Section 8.4.

95.     Milliman has therefore breached Section 8.4 of the APA.

96.     As a direct result of Milliman's breach, Gradient has suffered damages in an amount to be established at trial, including, without limitation, prejudgment interest from the date of the breach, May 25, 2021.

<u>**COUNT VII – BREACH OF CONTRACT, APA § 2.2**</u>
**Against Milliman, Inc. and Milliman Solutions, LLC**

97.     Gradient incorporates each of the foregoing paragraphs as if fully set forth herein.

98.     Gradient and Milliman entered into the APA, effective June 29, 2018.

99.     In Section 2.2 of the APA, Gradient and Milliman agreed in relevant part that Milliman "waives and releases Stanford Smith and the Transferred Employees [including Samuel Chase Pettus], of any and all non-competition and non-solicitation obligations in favor of Seller and its affiliates," except a "restriction on solicitation of Milliman employees set forth in the Employee Noncompete Agreement between Seller and Stanford Smith, dated August 4, 2011 . . ." Ex. A, § 2.2; Schedule 2.2 (listing Mr. Pettus as one of the "Transferred Employees").

100.     Gradient fully performed its obligations under the APA, including by paying the millions of dollars required by APA Section 1.3.  *See id*. at § 1.3.

101.     By bringing the instant Complaint based on allegations that Gradient, Mr. Smith, and Mr. Pettus are unlawfully competing with Milliman in the health insurance industry, Milliman is failing to perform under Section 2.2 of the APA.  In other words, Milliman is now refusing to perform its obligation to waive all non-compete claims against Gradient (and specifically Messrs. Smith and Pettus) per APA Section 2.2.

102.   Milliman has therefore breached Section 2.2 of the APA.

103.   As a direct result of Milliman's breach, Gradient has suffered damages in an amount to be established at trial, including, without limitation, prejudgment interest from the date of the breach, May 25, 2021.

### COUNT VIII – BREACH OF CONTRACT, APA § 1.6
**Against Milliman, Inc. and Milliman Solutions, LLC**

104.   Gradient incorporates each of the foregoing paragraphs as if fully set forth herein.

105.   Gradient and Milliman entered into the APA, effective June 29, 2018.

106.   In Section 1.6 of the APA, Gradient and Milliman agreed in relevant part that Milliman "shall cooperate fully with [Gradient] in perfecting or otherwise securing all intellectual property rights in the Assets to [Gradient].  [Milliman] shall execute, and shall direct its employees and agents to execute, any documentation as Purchaser may reasonably request from time to time in order to establish, secure, maintain, or protect [Gradient]'s ownership of the Assets, including all intellectual property rights in the Assets."  Ex. A, § 1.6.

107.   Gradient fully performed its obligations under the APA, including by paying the millions of dollars required by APA Section 1.3.  *See id*. at § 1.3.

108.   By bringing the instant Complaint based on allegations that Gradient is infringing the Asserted Patents, Milliman is failing to perform under Section 1.6 of the APA.  In other words, by alleging that Gradient infringes the Asserted Patents by using assets within the broad category of assets that Gradient purchased from Milliman via the APA, Milliman is effectively admitting that it failed to "cooperate fully with [Gradient] in perfecting or otherwise securing all intellectual property rights in the Assets" that Gradient purchased from Milliman.  *Id*.

109.   Milliman has therefore breached Section 1.6 of the APA.

110.     As a direct result of Milliman's breach, Gradient has suffered damages in an amount to be established at trial, including, without limitation, prejudgment interest from the date of the breach, May 25, 2021.

<u>**COUNT IX – BREACH OF THE IMPLIED COVENANT OF**</u>
<u>**GOOD FAITH AND FAIR DEALING**</u>
**Against Milliman, Inc. and Milliman Solutions, LLC**

111.     Gradient incorporates each of the foregoing paragraphs as if fully set forth herein.

112.     Gradient and Milliman entered into the APA, effective June 29, 2018.

113.     Pursuant to Section 8.8 of the APA, it is governed by the laws of the State of New York.

114.     In every agreement governed by New York law, there is an implied covenant that the parties will act in good faith and fairly with another.  Contracting parties are prohibited from behaving in a manner inconsistent with the parties' common purpose and justified expectations.

115.     Gradient fully performed its obligations under the APA, including by paying the millions of dollars required by APA Section 1.3.  *See id*. at § 1.3.

116.     In exchange for Gradient's consideration, Milliman agreed to "sell, transfer, convey, assign and deliver to the Purchaser all of Seller's legal right, title and interest in and to the Gradient AI software, data, and technology (collectively, the "Software") and the assets used in connection with the Gradient AI business, as such Software and assets are described and defined in Exhibit A (the "Assets")."  *Id.* at § 1.1.

117.     In exchange for the same consideration, Milliman also agreed to "cooperate fully with [Gradient] in perfecting or otherwise securing all intellectual property rights in the Assets to [Gradient].  [Milliman] shall execute, and shall direct its employees and agents to execute, any documentation as [Gradient] may reasonably request from time to time in order to establish,

- 54 -

secure, maintain, or protect [Gradient]'s ownership of the Assets, including all intellectual property rights in the Assets."  Ex. A, § 1.6.

118.    Milliman further agreed to "waive[] and release[] Stanford Smith and the Transferred Employees [including Samuel Chase Pettus], of any and all non-competition and non-solicitation obligations in favor of Seller and its affiliates," except a "restriction on solicitation of Milliman employees set forth in the Employee Noncompete Agreement between Seller and Stanford Smith, dated August 4, 2011 . . ."  Ex. A, § 2.2; Schedule 2.2.

119.    On May 25, 2021, Milliman breached its duty of good faith and fair dealing by filing the instant lawsuit against Gradient alleging that Gradient had no legal right to use the same assets that Gradient purchased from Milliman via the APA.  By doing so, Milliman has denied Gradient the right to use assets within the broad category of assets that Gradient purchased from Milliman.

120.    When executing the APA, Gradient reasonably understood that Milliman would not sue Gradient to try to prevent Gradient from using the same assets within the broad category of assets that Gradient bought from Milliman under the APA.

121.    Milliman also breached its duty of good faith and fair dealing by alleging that Gradient engaged in patent infringement by using the same assets from within the broad category of assets that Gradient purchased from Milliman via the APA.  By doing so, Milliman has illegitimately withheld from Gradient the benefit of Milliman's agreement in the APA to "cooperate fully with [Gradient] in perfecting or otherwise securing all intellectual property rights in the Assets to [Gradient]."  Ex. A, § 1.6.

122.    When executing the APA, Gradient reasonably understood that Milliman would not sue Gradient for patent infringement, given the parties' agreement in Section 1.6 of the APA that

Milliman "shall cooperate fully with [Gradient] in perfecting or otherwise securing all intellectual property rights in the Assets to [Gradient]." *Id.*

123.    Milliman also breached its duty of good faith and fair dealing by alleging that Gradient, Mr. Smith, and Mr. Pettus are unlawfully competing with Milliman in the health insurance industry.  By doing so, Milliman has illegitimately withheld from Gradient the benefit of Milliman's agreement in the APA to "waive[] and release[ Gradient] of any and all non-competition" claims.  *Id.* at § 2.2.

124.    When executing the APA, Gradient reasonably understood that Milliman would not sue Gradient to try to prevent Gradient from competing with Milliman in the health insurance industry.

125.    Milliman understood that its obligations under the APA included allowing Gradient to use the assets it purchased for its future business endeavors, cooperating with Gradient to perfect intellectual property rights in those assets, and allowing Gradient to compete with Milliman in the health insurance industry.

126.    Upon information and belief, Milliman's about-face is motivated by its desire to undercut a rising competitor in the group health risk underwriting industry.

127.    Milliman's lawsuit therefore constitutes a breach of the implied covenant of good faith and fair dealing implied in every contract.

128.    Gradient's damages flow directly from and are the natural and probable consequences of Milliman's breach of the implied covenant of good faith and fair dealing.

129.    Milliman's breach of the implied covenant of good faith and fair dealing has caused, and continues to cause, injury to Gradient, in an amount to be proven at trial.

## COUNT X – DECLARATION THAT GRADIENT DOES NOT INFRINGE THE '641 PATENT
### Against Milliman, Inc., Milliman Solutions, LLC, and Vigilytics, LLC

130.    Gradient incorporates each of the foregoing paragraphs as if fully set forth herein.

131.    An actual controversy exists between Gradient and Milliman, Inc., Milliman Solutions, LLC, and Vigilytics, LLC regarding whether Gradient is infringing or has infringed the '641 patent.

132.    Gradient has not infringed and is not infringing, either directly or indirectly, either literally or under the doctrine of equivalents, any valid and enforceable claim of the '641 patent.

133.    Accordingly, Gradient is entitled to a declaratory judgment that it does not infringe and has not infringed the '641 patent, willfully, directly, indirectly, contributorily, or by inducement.

## COUNT XI – DECLARATION OF INVALIDITY OF THE '641 PATENT
### Against Milliman, Inc., Milliman Solutions, LLC, and Vigilytics, LLC

134.    Gradient incorporates each of the foregoing paragraphs as if fully set forth herein.

135.    An actual controversy exists between Gradient and Milliman, Inc., Milliman Solutions, LLC, and Vigilytics, LLC regarding the validity of the '641 patent.

136.    The claims of the '641 patent are invalid because they fail to meet one or more requirements set forth in Title 35 of the United States Code, including, among other sections, §§ 101, 102, 103, and 112.

137.    Accordingly, Gradient is entitled to a declaratory judgment that the '641 patent is invalid.

## COUNT XII – DECLARATION THAT GRADIENT DOES NOT INFRINGE THE '892 PATENT
### Against Milliman, Inc., Milliman Solutions, LLC, and Vigilytics, LLC

138.    Gradient incorporates each of the foregoing paragraphs as if fully set forth herein.

139.     An actual controversy exists between Gradient and Milliman, Inc., Milliman Solutions, LLC, and Vigilytics, LLC regarding whether Gradient is infringing or has infringed the '892 patent.

140.     Gradient has not infringed and is not infringing, either directly or indirectly, either literally or under the doctrine of equivalents, any valid and enforceable claim of the '892 patent.

141.     Accordingly, Gradient is entitled to a declaratory judgment that it does not infringe and has not infringed the '892 patent, willfully, directly, indirectly, contributorily, or by inducement.

### COUNT XIII – DECLARATION OF INVALIDITY OF THE '892 PATENT
### Against Milliman, Inc., Milliman Solutions, LLC, and Vigilytics, LLC

142.     Gradient incorporates each of the foregoing paragraphs as if fully set forth herein.

143.     An actual controversy exists between Gradient and Milliman, Inc., Milliman Solutions, LLC, and Vigilytics, LLC regarding the validity of the '892 patent.

144.     The claims of the '892 patent are invalid because they fail to meet one or more requirements set forth in Title 35 of the United States Code, including, among other sections, §§ 101, 102, 103, and 112.

145.     Accordingly, Gradient is entitled to a declaratory judgment that the '892 patent is invalid.

### COUNT XIV – DECLARATION THAT GRADIENT DOES NOT INFRINGE THE '685 PATENT
### Against Milliman, Inc., Milliman Solutions, LLC, and Vigilytics, LLC

146.     Gradient incorporates each of the foregoing paragraphs as if fully set forth herein.

147.     An actual controversy exists between Gradient and Milliman, Inc., Milliman Solutions, LLC, and Vigilytics, LLC regarding whether Gradient is infringing or has infringed the '685 patent.

148.     Gradient has not infringed and is not infringing, either directly or indirectly, either literally or under the doctrine of equivalents, any valid and enforceable claim of the '685 patent.

149.     Accordingly, Gradient is entitled to a declaratory judgment that it does not infringe and has not infringed the '685 patent, willfully, directly, indirectly, contributorily, or by inducement.

**COUNT XV – DECLARATION OF INVALIDITY OF THE '685 PATENT**
**Against Milliman, Inc., Milliman Solutions, LLC, and Vigilytics, LLC**

150.     Gradient incorporates each of the foregoing paragraphs as if fully set forth herein.

151.     An actual controversy exists between Gradient and Milliman, Inc., Milliman Solutions, LLC, and Vigilytics, LLC regarding the validity of the '685 patent.

152.     The claims of the '685 patent are invalid because they fail to meet one or more requirements set forth in Title 35 of the United States Code, including, among other sections, §§ 101, 102, 103, and 112.

153.     Accordingly, Gradient is entitled to a declaratory judgment that the '685 patent is invalid.

**COUNT XVI – DECLARATION THAT GRADIENT DOES NOT INFRINGE THE '651 PATENT**
**Against Milliman, Inc., Milliman Solutions, LLC, and Vigilytics, LLC**

154.     Gradient incorporates each of the foregoing paragraphs as if fully set forth herein.

155.     An actual controversy exists between Gradient and Milliman, Inc., Milliman Solutions, LLC, and Vigilytics, LLC regarding whether Gradient is infringing or has infringed the '651 patent.

156.     Gradient has not infringed and is not infringing, either directly or indirectly, either literally or under the doctrine of equivalents, any valid and enforceable claim of the '651 patent.

157.     Accordingly, Gradient is entitled to a declaratory judgment that it does not infringe and has not infringed the '651 patent, willfully, directly, indirectly, contributorily, or by inducement.

### COUNT XVII – DECLARATION OF INVALIDITY OF THE '651 PATENT
**Against Milliman, Inc., Milliman Solutions, LLC, and Vigilytics, LLC**

158.     Gradient incorporates each of the foregoing paragraphs as if fully set forth herein.

159.     An actual controversy exists between Gradient and Milliman, Inc., Milliman Solutions, LLC, and Vigilytics, LLC regarding the validity of the '651 patent.

160.     The claims of the '651 patent are invalid because they fail to meet one or more requirements set forth in Title 35 of the United States Code, including, among other sections, §§ 101, 102, 103, and 112.

161.     Accordingly, Gradient is entitled to a declaratory judgment that the '651 patent is invalid.

### COUNT XVIII – DECLARATION THAT GRADIENT DOES NOT INFRINGE THE '375 PATENT
**Against Milliman, Inc., Milliman Solutions, LLC, and Vigilytics, LLC**

162.     Gradient incorporates each of the foregoing paragraphs as if fully set forth herein.

163.     An actual controversy exists between Gradient and Milliman, Inc., Milliman Solutions, LLC, and Vigilytics, LLC regarding whether Gradient is infringing or has infringed the '375 patent.

164.     Gradient has not infringed and is not infringing, either directly or indirectly, either literally or under the doctrine of equivalents, any valid and enforceable claim of the '375 patent.

165.     Accordingly, Gradient is entitled to a declaratory judgment that it does not infringe and has not infringed the '375 patent, willfully, directly, indirectly, contributorily, or by inducement.

**COUNT XIX – DECLARATION OF INVALIDITY OF THE '375 PATENT**
**Against Milliman, Inc., Milliman Solutions, LLC, and Vigilytics, LLC**

166.    Gradient incorporates each of the foregoing paragraphs as if fully set forth herein.

167.    An actual controversy exists between Gradient and Milliman, Inc., Milliman Solutions, LLC, and Vigilytics, LLC regarding the validity of the '375 patent.

168.    The claims of the '375 patent are invalid because they fail to meet one or more requirements set forth in Title 35 of the United States Code, including, among other sections, §§ 101, 102, 103, and 112.

169.    Accordingly, Gradient is entitled to a declaratory judgment that the '375 patent is invalid.

**COUNT XX – DECLARATION THAT GRADIENT DOES NOT INFRINGE THE '012 PATENT**
**Against Milliman, Inc., Milliman Solutions, LLC, and Vigilytics, LLC**

170.    Gradient incorporates each of the foregoing paragraphs as if fully set forth herein.

171.    An actual controversy exists between Gradient and Milliman, Inc., Milliman Solutions, LLC, and Vigilytics, LLC regarding whether Gradient is infringing or has infringed the '012 patent.

172.    Gradient has not infringed and is not infringing, either directly or indirectly, either literally or under the doctrine of equivalents, any valid and enforceable claim of the '012 patent.

173.    Accordingly, Gradient is entitled to a declaratory judgment that it does not infringe and has not infringed the '012 patent, willfully, directly, indirectly, contributorily, or by inducement.

**COUNT XXI – DECLARATION OF INVALIDITY OF THE '012 PATENT**
**Against Milliman, Inc., Milliman Solutions, LLC, and Vigilytics, LLC**

174.    Gradient incorporates each of the foregoing paragraphs as if fully set forth herein.

175.    An actual controversy exists between Gradient and Milliman, Inc., Milliman Solutions, LLC, and Vigilytics, LLC regarding the validity of the '012 patent.

176.    The claims of the '012 patent are invalid because they fail to meet one or more requirements set forth in Title 35 of the United States Code, including, among other sections, §§ 101, 102, 103, and 112.

177.    Accordingly, Gradient is entitled to a declaratory judgment that the '012 patent is invalid.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Gradient respectfully requests that the Court hereby enter judgment against Milliman and provide relief as follows:

A.    Enter judgment for Defendants and dismiss all of Plaintiffs' claims with prejudice;

B.    Actual, compensatory and consequential damages for Milliman's breaches of the APA and of the implied covenant of good faith and fair dealing, including, but not limited to, return of the purchase price paid to Milliman;

C.    A judgment that Milliman's unfair and deceptive acts and practices in violation of Mass. Gen. L. c. 93A has been willful and malicious;

D.    An award against Milliman of damages sufficient to compensate Gradient for its unfair and deceptive acts and practices in violation of Mass. Gen. L. c. 93A;

E.    An award against Milliman of treble damages for its unfair and deceptive acts and practices in violation of Mass. Gen. L. c. 93A;

F.    An award against Milliman of Gradient's reasonable attorneys' fees incurred in this action as provided by Mass. Gen. L. c. 93A §§ 2, 11;

G.    An award against Milliman of damages for reputational harm to Gradient;

H.    Declaratory judgment that Gradient has not infringed and is not infringing the '641 patent, the '892 patent, '685 patent, '651 patent, '375 patent, and the '012 patent;

I.    Declaratory judgment that the claims of the '641 patent, the '892 patent, '685 patent, '651 patent, '375 patent, and the '012 patent are invalid;

J.    Declaratory judgment that Gradient's defenses and counterclaims in this action present an exceptional case entitling it to reasonable attorneys' fees pursuant to 35 U.S.C. § 285, and awarding such fees to Gradient;

K.    An award against Milliman for general and special damages according to proof at trial based on Gradient's losses, including at least the millions of dollars that Milliman's unlawful conduct has cost Gradient;

L.    An award against Milliman of Gradient's costs and pre- and post-judgment interest;

M.    An award against Milliman of Gradient's reasonable costs and fees; and

N.    Such other relief that this Court deems just and proper.

## **JURY DEMAND**

Gradient demands a trial by jury on all issues triable by a jury.

Respectfully submitted,

GRADIENT A.I. CORP., STANFORD A.
SMITH, and SAMUEL CHASE PETTUS

By their attorneys,

*/s/ Paul D. Popeo*
Paul D. Popeo (BBO No. 567727)
Michael H. Bunis (BBO No. 566839)
Sophie F. Wang (BBO No. 679642)
Kevin C. Quigley (BBO No. 685015)
John C. Calhoun (BBO No. 694479)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA  02110
Tel.: (617) 248-5000
Fax: (617) 248-4000
*ppopeo@choate.com*
*mbunis@choate.com*
*swang@choate.com*
*kquigley@choate.com*
*jcalhoun@choate.com*

Dated:  March 25, 2022