# EXHIBIT B



**From:** Mary Clare <mary.clare@milliman.com>
**Date:** Monday, February 22, 2021 at 1:04 PM
**To:** Stan Smith <stan.smith@gradientAI.com>
**Cc:** Jeffrey Barclay <Barclay@fr.com>, Noah Graubart <graubart@fr.com>
**Subject:** RE: Response to your email of February 8

Dear Stan,

Thank you for your email. I am pleased you agreed to a call to discuss our issues. In advance of, and in preparation for, our call, I write to respond to points raised in your email with the hope that doing so will make our upcoming call productive.

First, your email does not address the main issues raised in my February 8 email, particularly whether Gradient AI's group risk score product infringes the Vigilytics patents. If there is any hope of resolving our differences, Gradient AI will need to address this issue substantively. We need to understand in detail your position vis-à-vis the Vigilytics patents.

Although you question Milliman's right to enforce the Vigilytics patents, Milliman's exclusive license for the Vigilytics patents gives Milliman a right to enforce the patents. Vigilytics is well aware of and shares our concerns about your new group risk score product. To confirm those facts, I am copying Vigilytics' outside counsel at Fish & Richardson on this email.

As to Milliman's trade secrets, your email similarly raises peripheral issues, without squarely addressing the main issue. Milliman's website does not detail valuable information about Curv®, such as those listed in my February 8 email, namely sale methodologies and methods of importing accounts, calibrating group scores, and conducting proof of concept studies. You and others at Gradient AI had access to that information during your tenure at Milliman, and shortly after

the spin-off you introduced the competing product. Indeed, your email admits that Curv® and your group risk score "operate in basically the same manner," which goes to the heart of our concern that you are violating Milliman's IP (including the Vigilytics patents).

We respect and encourage competition, so long as it is lawful. To that end, the point raised in your email about whether there are "documents" legally prohibiting Gradient AI from marketing competing products misses the point. You are prohibited from marketing a product that infringes the Vigilytics patents and/or that utilizes Milliman trade secrets, regardless of whether there is an express agreement prohibiting you from violating such IP. And, indeed, you acknowledged as much when you signed an Employee Termination Certificate.

The remaining points in your email pale in comparison to the above, but I will address them in advance of our call so that you know Milliman's position:

- Your ad hominem attacks against Ron Cornwell are unwarranted. We are not aware of any false and injurious statements by Ron about Gradient AI's group risk score, and, in any event, we have now raised with you in writing the IP issues that purportedly were the subject of the alleged statements about which you complain.

- As of today, the RFP is still publicly available on the Cure Technologies website at https://curetechnologies.us/wp-content/uploads/2020/08/GA-Partners-Underwriting-Services-RFP-1.pdf. It does not include a confidentiality notice and, in any event, is not confidential because it is on a public website.

- You say that Gradient AI's SAIL product is "patent-protected," but the USPTO assignment database does not show any patent assigned to Gradient AI. Can you provide the patent number for the SAIL product?

In light of this information, our upcoming call should be more productive. I propose that we have the call on Tuesday, March 2nd at 2:00 PM Eastern. I will forward to talking to you.

Mary

**Mary C. Clare**
Senior Vice President & Chief Legal Officer
She/Her pronouns

**Milliman**
1301 Fifth Avenue, Suite 3800
Seattle, WA 98101 USA

+1 206 504 5736 Office
+1 206 235 2129 Mobile

**milliman.com**

---

**From:** Stan Smith
**Sent:** Tuesday, February 16, 2021 7:41 AM
**To:** Mary Clare
**Subject:** Response to your email of February 8

Dear Mary,

Thank you for your email below, following our conversation, in which I raised the issues in my February 4 email to you, also copied below. While I appreciate the concerns raised in your email and will address

them here, nothing contradicts the points that I made when we spoke – namely, that Ron and Intelliscript are spreading false and defamatory information with the intent to harm Gradient's reputation and sales prospects. For reasons I am sure you can appreciate, this must stop or Gradient will have no choice to defend itself vigorously through legal action and practical means. Mary, I hope that you and I can prevent that from happening.

In response to your email, I can say these things definitively: First, neither I nor Chase nor anyone else at Gradient has improperly used any Milliman confidential information since leaving Milliman. Second, we are not aware of any document that legally prohibits us from building and selling products that compete with Milliman; if you believe such document(s) exist, please provide them.

Gradient's SAIL product was developed independently during a period of over two years after Gradient was spun out of Milliman, and its key elements are patent-protected. The fact that Chase and I were exposed while at Milliman to *what* Intelliscript's Curv product does is not relevant; the Curv product is extensively detailed both on the Milliman website and in several publicly-available presentations given to various entities and organizations. Indeed, both the SAIL and Curv products are only two of several competing products in the health insurance underwriting space that appear from what's publicly available to operate in basically the same manner. What *is* relevant is that we did not know anything about *how* the Curv product was operated until you provided information about Vigilytics in your email. Please provide evidence of the terms of the "exclusive" license granted to Milliman, including whether it includes the right to enforce patent rights.

Contrary to your email, Gradient's RFP response was never on Cure Technology's website; it was provided in response to G&A's RFP, which stated that "The content of all proposals will be kept confidential throughout the selection process and afterward. Copies of any proposal will not be shared with other respondents." Thus, whether Milliman received it from G&A in violation of G&A's own RFP terms, or from another source, Milliman knew or should have known that Milliman was not entitled to receive it. You are obviously welcome to confirm that with G&A, or we can.

Mary, this feels like just another of Ron's fishing expeditions, but one with significant negative consequences. The exploratory work we are doing with several Milliman partners will clearly be impacted. And beyond Milliman, we will be forced to consider how to correct the rumors that are being spread about us to our investors, and through them, to their LPs, many of which are large insurance carriers and, presumably, Milliman clients. You suggested a follow up call between the two of us, and I agree that is the best next step. But I urge you to press Ron and any others who are feeding you information to back up what they say before we speak.

Thanks.

Stan

**Stan Smith**
**Founder and Chief Executive Officer**

**gradientai.com**
**+1 508-878-8997**

**From:** Mary Clare <mary.clare@milliman.com>
**Date:** February 8, 2021 at 5:29:50 PM EST
**To:** Stan Smith <stan.smith@gradientai.com>
**Subject: Infringement by Gradient AI**

Dear Stan,

I am writing regarding our conversation on February 4 and Gradient AI's recent introduction of a "Group Risk Score" (described below) which is similar in important respects to Milliman Intelliscript's Curv® service. As you know from your many years with us, Milliman Intelliscript's Curv® service is a market leading, predictive modeling service that makes quoting group insurance more accurate by transforming group census data into a powerful risk score, while using de-identified data so that no HIPAA authorization is required. As you also know, Milliman takes seriously the protection of its intellectual property.

As I referenced generally during our conversation, we have observed at Cure Technology's website the attached Response to Request for Proposal prepared by Cure Technology and Gradient AI. It shows that Cure and Gradient AI are marketing a "Group Risk Score" service. That service appears to compete with Curv®. Page 13 of the Response to Request for Proposal shows that the "Group Risk Score" services described there "uses de-identified prescription, clinical, lab and/or medical claim histories to provide a predictive risk score for the member group." It provides:

From your tenure at Milliman, you likely know that Milliman Intelliscript worked with Vigilytics, LLC to perform the de-identification process for the Curv® service and that Vigilytics owns several U.S. patents on the de-identification process, including:

- Pat. 9,118,641
- Pat. 9,323,892
- Pat. 9,665,685
- Pat. 9,965,651
- Pat. 10,109,375
- Pat. 10,886,012

Vigilytics also has additional pending continuation applications on the de-identification process. Milliman is the exclusive licensee of these patents in several fields, including health insurance and life insurance underwriting. These patents relate generally to de-identifying medical history information. It is our view that the determination of a Group Risk Score as described in the Response to the Request for Proposal infringes these patents. We invite you to demonstrate otherwise.

We also are concerned that you and other of our former Milliman colleagues now at Gradient AI are improperly using Milliman Intelliscript's trade secrets or confidential information related to its Curv® service, including sale methodologies and methods of importing accounts, calibrating group scores, and conducting proof of concept studies, among other things. These and other valuable trade secrets of Milliman Intelliscript allow its Curv® service to be the market leader. Given (i) the extensive exposure that Gradient AI employees had to this information while at Milliman, (ii) Gradient AI's introduction of its "Group Risk Score" so soon after Gradient AI was spun out, and (iii)

the similarities between Milliman Intelliscript's Curv® service and the Gradient AI process, we are concerned that Gradient AI improperly used Milliman Intelliscript's trade secrets or confidential information to accelerate its product development.

Milliman Intelliscript expects that you and Gradient AI will respect our intellectual property, as promised when each of you signed an Employee Termination Certificate acknowledging receipt of our Employee Trade Secret and Client Information Agreement and past and future compliance with that agreement. We are quite troubled by the above, especially in light of the fact that you and others at Gradient AI are our former colleagues. Our conversation and your follow-up email on February 4 exacerbate our concern. It is plain from your comments that clients and/or potential clients recognize the similarities between your "Group Risk Score" service and Curv® and are concerned enough to question whether Gradient AI truly has the right to offer its "Group Risk Score" service. We have not yet taken legal action to address our concerns, but appropriately will make clear to anyone raising the subject that Curv® is a patented solution and that we have raised our concerns with you.

We request a written response to this email by **February 22, 2021** and suggest that we meet thereafter (which can be by video given the pandemic) to attempt to resolve our concerns without further action. In the meantime, however, Milliman Intelliscript reserves all rights to pursue any and all remedies available to it should you fail to demonstrate that your business practices relative to Milliman Intelliscript's IP are lawful.

Regards,

Mary

**Mary C. Clare**
Senior Vice President & Chief Legal Officer
She/Her pronouns

**Milliman**

1301 Fifth Avenue, Suite 3800
Seattle, WA 98101 USA

+1 206 504 5736 Office
+1 206 235 2129 Mobile

**milliman.com**

*******************************************************************************

This communication is intended solely for the addressee and is confidential. If you are not the intended recipient, any disclosure, copying, distribution or any action taken or omitted to be taken in reliance on it, is prohibited and may be unlawful. Unless indicated to the contrary: it does not constitute professional advice or opinions upon which reliance may be made by the addressee or any other party, and it should be considered to be a work in progress.
*******************************************************************************

**From:** Stan Smith <stan.smith@gradientAI.com>
**Sent:** Thursday, February 4, 2021 2:00 PM
**To:** Mary Clare <mary.clare@milliman.com>
**Subject:** Follow up

Mary,

Thanks for your time on the phone this morning. While I appreciate your commitment to investigate internally what I described, I wanted to put my concerns in writing so there is no ambiguity. As you and I just discussed, Gradient has recently heard from multiple sources – including one of the largest insurance brokers and one of the largest professional employment organizations – that they have been told by Ron Cornwell that Milliman has filed suit against Gradient, seeking a "cease and desist" order.

These statements have had what we can only assume was the intended effect – to damage Gradient's reputation with influential industry players and interfere with Gradient's sales efforts with specific sales prospects, by planting a seed of doubt that Gradient will be able to deliver on its commitments. These statements, if untrue when made, constitute slander *per se*, giving rise to a cause of action against Milliman. Further, if, as it appears, Ron knew or should have known that they were false when he made them, Milliman and Ron, personally, also may be liable for unfair and deceptive trade practices under Massachusetts Gen. L. Ch. 93A and other similar statutes.

Mary, I look forward to hearing back from you shortly, and trust that you will take the necessary steps in the meantime to ensure that this does not continue.

Thank you.

Sincerely,

Stan

<image003.png>

****************************************************************************************
This communication is intended solely for the addressee and is confidential. If you are not the intended recipient, any disclosure, copying, distribution or any action taken or omitted to be taken in reliance on it, is prohibited and may be unlawful. Unless indicated to the contrary: it does not constitute professional advice or opinions upon which reliance may be made by the addressee or any other party, and it should be considered to be a work in progress.
****************************************************************************************