UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MILLIMAN, INC., MILLIMAN SOLUTIONS, LLC, and VIGILYTICS LLC,<br><br>            Plaintiffs,<br><br>            v.<br><br>GRADIENT A.I. CORP., STANFORD A. SMITH, and SAMUEL CHASE PETTUS,<br><br>            Defendants. | Civil Action No. 1:21-cv-10865-NMG |

**GRADIENT'S OPPOSITION TO MILLIMAN'S RENEWED MOTION TO COMPEL**

## INTRODUCTION

Last month, the Court entered a protective order barring Milliman from discovery until it supplemented its trade secret disclosure "consistent with Mass. Gen. Laws ch. 93, § 42D." Dkt. 70 ("Order") at 5-6. Milliman supplemented its disclosure, but it still has not complied with Section 42D. Beneath a cloud of technical-sounding language, the Second Supplemental Disclosure preserves the same fundamental defects as the original: broad categories, unspecified formulas, and open-ended qualifiers—each designed (and some expressly) to allow Milliman to identify its asserted trade secrets *after* discovery.

Discovery, it turns out, should be unnecessary. Though Milliman fails to identify any asserted secret with sufficient particularity under the statute, Milliman's latest disclosure confirms that it has no viable trade secret misappropriation claims, period. Everything that Milliman says may contain its (still-unspecified) trade secrets, *Milliman sold to Gradient*. On that basis—comparing the Second Supplemental Disclosure to the terms of the parties' June 2018 Asset Purchase Agreement—Gradient will move for summary judgment dismissing Counts VII-XII of the Complaint. Gradient intends to file that dispositive motion by September 8, 2022.

There is thus no need, nor any good reason, for the Court to entertain—much less endorse—Milliman's renewed motion to compel. Ten months remain before the close of fact discovery. Within weeks, Plaintiffs' case should be reduced to what they call their "principal claims sound[ing] in patent infringement." Dkt. 62 at 7. Pre-discovery patent contentions and claim construction are already underway and will carry into early next year. The relevant prejudice here would result not from any delay to Milliman, but from allowing Milliman to compound the scope and costs of discovery (and of discovery disputes sure to come), and to sift through its commercial rival's most sensitive files in search of trade secret claims it does not have.

## ARGUMENT

**I. THE COURT SHOULD DENY OR DEFER MILLIMAN'S MOTION TO COMPEL UNTIL IT DECIDES GRADIENT'S MOTION FOR SUMMARY JUDGMENT.**

"A pending dispositive motion constitutes good cause for a stay of discovery." *Malanowski v. Wells Fargo Bank N.A.*, 2022 U.S. Dist. LEXIS 124586, at *4 (D. Mass. July 14, 2022) (denying plaintiff's motion to compel; collecting cases). The Court should deny, or else defer, Milliman's motion to compel and preserve the status quo while it addresses Gradient's dispositive motion on Milliman's six trade secret claims.[1]

If the Court dismisses Milliman's trade secret claims, this will become chiefly a patent infringement case. Patent discovery will be cleanly bounded by the asserted patents, the parties' infringement and validity positions, and the Court's claim construction rulings—all of which are still being developed through the L.R. 16.6 framework built into the Scheduling Order. *See* Dkt. 52 (setting *Markman* hearing for Jan. 12, 2023). In short, this may soon be a very different—and much more manageable—case.

Because the Court can resolve Gradient's summary judgment motion in the coming weeks, it makes little sense for the Court to spend that time also parsing through Milliman's latest attempt to comply with a trade secret statute under which it may not have a claim. And it makes no sense to compel Gradient to undertake the enormously expensive task of reviewing and producing

---

[1] Counts VII-XII each depend on allegations that Gradient misused Milliman's trade secrets or confidential information, and each is subject to Gradient's forthcoming motion.

Contrary to Milliman's suggestion, the grounds for summary judgment were unavailable to Gradient at the pleadings stage. In its Complaint, Milliman broadly described some of its asserted trade secrets in a single, open-ended paragraph. Dkt. 1 ¶ 60. It then repurposed that paragraph as its initial "Section 42D Identification" and insisted that it had thus defined its claims with sufficient particularity—which the Court rejected. Order at 3-4; *see also id.* at n.1 (noting "less onerous obligation at the pleadings stage"). Now, after two attempts at supplemental disclosure, it is clear that Milliman cannot identify *any* supposed trade secret—however ill-defined—that it did not sell outright to Gradient and then leave in Gradient's possession for almost three years before suing Gradient. In any event, Gradient is unaware of any principle that would discourage fair consideration of summary judgment just because the moving party did not also seek dismissal on the pleadings.

sprawling trade secret discovery that may prove irrelevant—but then no less unfairly in the hands of Gradient's direct competitor. Nor should the Court have to referee inevitable follow-on disputes about the 70-plus discovery requests subject to Milliman's motion amid temporary uncertainty about the guiding claims and defenses.[2] All of this should very soon be moot, and all of it can wait until the Court decides Gradient's motion for summary judgment.

Against those common-sense efficiencies, Milliman offers only complaints about delay. But Milliman never explains *how* it might be prejudiced by waiting for the Court to first address a motion potentially dispositive of half the case.[3] Again, fact discovery does not close until June 30, 2023.[4] If Milliman's trade secret claims survive summary judgment this fall, it will have ample time to explore those claims alongside its patent claims, the latter of which should still be awaiting construction. Gradient's considerable burden in responding to discovery thus "outweighs the risks associated with any delay." *Malanowski*, 2022 U.S. Dist. LEXIS 124586, at *6; *see also, e.g.*, *Ji v. Bose Corp.*, 2008 U.S. Dist. LEXIS 138010 (D. Mass. Jan. 31, 2008) (Gorton, J.) (denying plaintiff's motion to compel production of "voluminous and sensitive materials" pending decision on defendant's (later-granted) motion for partial summary judgment on relevant claim). As for the notion that Milliman hopes to "access [unspecified] evidence that might bear" on Gradient's forthcoming motion (Memo. at 9)—that is an argument Milliman can try in opposing summary judgment, not a reason to compel burdensome discovery that may soon be mooted by summary judgment.

---

[2] By Milliman's own tally, just twelve of the RFPs at issue relate to its patent claims. Memo. at 9.

[3] Milliman did not object to staying discovery while the Court addressed Gradient's dispositive motion directed to the six patent claims making up the other half of Plaintiffs' case.

[4] When it denied Milliman's last motion to compel, the Court invited the parties to file a joint motion asking to modify the schedule "[i]f this Order makes the present scheduling dates unworkable." Order at 6. Milliman has not since questioned the continued suitability of any Scheduling Order deadline, including the now-elapsing L.R. 16.6 patent disclosure deadlines.

## II. MILLIMAN STILL FAILS TO SATISFY SECTION 42D.

If the Court chooses to engage with the merits of Milliman's renewed motion, it should find no reason to lift the protective order entered in July. Milliman has not complied with the Court's order to identify its trade secrets with particularity. Order at 6. The Second Supplemental Disclosure is longer and superficially more technical, to be sure, but at bottom remains a collection of "general and incomplete descriptions . . . [that] are deficient under the statute." *Id.* at 4.[5]

The first three of Milliman's 16 asserted trade secrets are ███████████████ ███████████████████████████ Dkt. 72-4 at 2. Besides a few changes to the description of ███████, these are (as the Court observed of the same items in Milliman's first identification) "almost an exact copy" of what Milliman publicly disclosed in paragraph 60 of its Complaint. Order at 4.[6] The only material difference is that Milliman now omits the prefatory language it used in the Complaint and in its first identification: Milliman's trade secrets "are *reflected in*" ███████████████████████████████. But Milliman had it right the first time, and so did the Court—these are not trade secrets, but places where supposed trade secrets might be found.

---

[5] In the first supplemental disclosure that Milliman served by the Court-ordered deadline, Milliman tried to *broaden* the categorical definitions copied from its Complaint—for example, by claiming "confidential business information" as a standalone trade secret—and otherwise revised its identification to be more, not less, deficient. *See* Memo. Exs. A, B (Dkt. 72-1, 72-2).

[6] *Compare, e.g.*, TS 2:



*with* Dkt. 1 ¶ 60:

> … sales presentations (given to prospective Curv clients only after they sign a non-disclosure agreement) that explain how Curv operates, walk customers through a bidding simulation, and provide data from that simulation and other proof of concept studies ("Sales Presentations").

*But see, e.g.*, *Loop AI Labs Inc. v. Gatti*, 195 F. Supp. 195 F. Supp. 3d 1107, 1112 (N.D. Cal. 2016) (fact that plaintiff "publicly filed its trade secret disclosure belies the proposition that it contains information specific enough to be considered 'confidential' trade secrets").

Milliman's other 13 asserted trade secrets nearly all describe aspects of Milliman's ▮▮▮▮▮▮▮, and most involve ▮▮▮▮▮▮▮▮▮▮▮▮▮ TS 4 (listing five examples of such ▮▮, afterward referenced throughout). Those ▮▮▮▮, in turn, are derivatives of the ▮▮▮▮▮▮▮. That ▮▮ is said to be a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ TS 13(h); *see also* TS 6, citing Mill_0000110 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮). But, so far as Gradient can tell, neither the Second Supplemental Identification nor the cited document explains what that ▮▮▮▮▮▮ is, or how one may ▮▮▮▮ a ▮▮▮▮▮▮—a ▮▮▮▮—from that ▮▮. Is it a formula? If so, what is the formula? Milliman's continuing failure to disclose what it claims to be its secret sauce—in an insurance analytics industry built on calibration studies and risk scores—is a core defect of its identification. *See, e.g.*, *Trust Safe Pay, LLC v. Dynamic Diet, LLC*, 2017 U.S. Dist. LEXIS 145724, at *19 (D. Mass. Sept. 8, 2017) (Kelley, J.) (claimed "algorithm" trade secret inadequately identified because plaintiff did not explain what the algorithm was, or "distinguish what is protectable from that which is not"); *Quintara Biosciences Inc. v. Ruifeng Biztech Inc.*, 2021 U.S. Dist. LEXIS 48399, at *6 ("asserted secrets within specialized fields will require a more exacting level of particularity . . . to distinguish the alleged trade secrets from matters already known to persons skilled in that field") (quotations omitted).

The Court already noted another global problem with Milliman's approach to trade secret identification: open-ended qualifiers like "includ[ing] . . . obviously [leave much] to the imagination in determining precisely what trade secrets are at issue here." Order at 4. Said differently, Milliman's disclosure is not just "general," but also "incomplete"—Milliman purports to reserve for itself the right to complete its identification after discovery. *See id.* Indeed, Milliman freely admits that strategy. Dkt. 72-4 at 1 ("Plaintiffs reserve the right to amend and supplement this identification"); Dkt. 72 at 4 n.2. Milliman's use of "including," "among other things," and

similar qualifiers in nearly every asserted trade secret thus renders any specifics a nullity. Take the very first phrase in TS 1, for example: "███████████████████████████████" What is the point of the later trade secrets directed to particulars of the ███████████, if Milliman can someday argue—after examining Gradient's own proprietary calibration studies—that some other ████████ information was the "trade secret" Milliman claimed all along?

Milliman's tactics would defeat the purpose of pre-discovery trade secret identification requirements like Section 42D, which apply with special force here because Milliman seeks access to Gradient's most competitively sensitive files. *See* Dkt. 69, Jul. 8, 2022 Tr. at 11 ("THE COURT: [T]he law, even if the statute doesn't—isn't found to apply, requires that you set out the trade secret with particularity for a reason, which is, ***it is not to be a moving target during the litigation***.").[7]

In denying Milliman's last motion to compel, the Court held that "plaintiffs have failed to demonstrate that their non-trade-secrets claims do not 'relat[e] to' their alleged trade secrets for purposes of § 42D," and so entered the protective order barring discovery "as to *all claims*." Order at 5 (emphasis added). Milliman concedes that point on its renewed motion, so the same result holds. At least until Milliman complies with its obligation to identify its claimed trade secrets— or the Court dismisses those claims—Milliman cannot compel discovery from Gradient.

---

[7] "Experience has shown that it is easy to allege theft of trade secrets with vagueness, then take discovery into the defendants' files, and then cleverly specify whatever happens to be there as having been trade secrets stolen from plaintiff." *Jobscience, Inc. v. CVPartners, Inc.*, 2014 U.S. Dist. LEXIS 26371, at *14 (N.D. Cal. Feb. 28, 2014); *see also, e.g.*, *Perlan Therapeutics v. Superior Court*, 178 Cal. App. 4th 1333, 1344 (2009) (plaintiff is "not entitled to include broad, 'catch-all' language as a tactic to preserve an unrestricted, unilateral right to subsequently amend its trade secret statement"); *Iconics, Inc. v. Massaro*, 266 F. Supp. 3d 449, 456 (D. Mass. 2017) (without complete identification, a plaintiff may "alter its list of trade secret claims as the case proceeds, leaving defendants spending months disproving one set of allegations only to face a new, replacement set as the close of discovery nears"); *Quintara*, 2021 U.S. Dist. LEXIS 48399, at *3 (pre-discovery identification designed to "prevent plaintiffs from indulging in shifting sands"); *Alnylam Pharms., Inc. v. Dicerna Pharms., Inc.*, 2016 Mass. Super. LEXIS 140, at *4 (Apr. 6, 2016) (disclosure must "come *before* a plaintiff is allowed to obtain discovery of a defendant's confidential information regarding the development of the defendant's own technology so as to prevent a plaintiff, especially a competitor[,] from rummaging through a defendant's scientific files"); *Cambridge Internet Sols. V. Avicon Grp.*, 1999 Mass. Super. LEXIS 387 (Sept. 21, 1999) (pre-discovery identification "necessary to ensure that plaintiffs are not using an unmeritorious lawsuit to discover a competitor's trade secrets").

# CONCLUSION

Milliman, having strained to graft trade secret claims onto its patent infringement lawsuit—presumably to multiply the burdens of litigation on its much smaller competitor—now faces the consequences of that strategic choice.

The Court should deny (or else defer) Milliman's renewed motion to compel until it decides Gradient's motion for summary judgment on Milliman's trade secret claims. If, in the meantime, the Court chooses to provisionally address Milliman's trade secret identification, it should reject that entire disclosure for failure to comply with Section 42D or, at minimum, strike all portions that the Court finds deficient under the statute.[8]

---

[8] Milliman's requested relief is unworkable in any event. Milliman asks the Court not only to overrule Gradient's Section 42D objection, but *all* other objections—including relevance—to the dozens of RFPs and interrogatories subject to its motion. Dkt. 71 (Renewed Motion) at 2. Indeed, Milliman demands the immediate production of "*all* information regarding the design, development, implementation, use and licensing of the Accused Products and their source code"—that is, essentially every document ever generated by Gradient. Dkt. 72 at 9-10. Milliman offers no support for the extraordinary breadth of that relief except by purporting to incorporate its earlier, unsuccessful motion to compel papers. Dkt. 71 at 2.

As Gradient explained in May, such sweeping relief is both inappropriate and premature. Dkt. 60 at 12-14. For instance, Milliman asks the Court to order Gradient to give Milliman all of Gradient's source code—Gradient's very most confidential and competitively valuable information. But the relevance of *any* Gradient source code—much less all of it—is far from established in this case. Milliman does not claim that its source code is a misappropriated trade secret, and its patents turn on rudimentary flowcharts, not the inner workings of any software. As with the rest of Milliman's renewed motion to compel, this presents questions for another day—after the Court decides Gradient's motion for summary judgment.

Respectfully submitted,

GRADIENT A.I. CORP., STANFORD A. SMITH, and SAMUEL CHASE PETTUS

By their attorneys,

*/s/ Paul D. Popeo*
Paul D. Popeo (BBO No. 567727)
Michael H. Bunis (BBO No. 566839)
Sophie F. Wang (BBO No. 679642)
Kevin C. Quigley (BBO No. 685015)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA  02110
Tel.: (617) 248-5000
Fax: (617) 248-4000
*ppopeo@choate.com*
*mbunis@choate.com*
*swang@choate.com*
*kquigley@choate.com*

Dated:  August 26, 2022