**[FILED UNDER SEAL]**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MILLIMAN, INC., MILLIMAN SOLUTIONS, LLC, and VIGILYTICS LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 1:21-cv-10865-NMG |
| vs. | ) ) | |
| GRADIENT A.I. CORP., STANFORD A. SMITH, and SAMUEL CHASE PETTUS, | ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO COMPEL
COMPLIANCE WITH THE COURT'S AUTOMATIC PATENT DISCLOSURES**

**[FILED UNDER SEAL]**

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL BACKGROUND ............................................................................... 2

III.    ARGUMENT ...................................................................................................... 9

        A.      Legal Standard ....................................................................................... 9

        B.      Gradient Must Produce Technical Documents Sufficient To Show
                "Composition, Operation, Construction, and Performance of the Accused
                Components" ......................................................................................... 11

                i.      Defendants' Minimal Production Is Not Sufficient To Show the
                        "Composition, Operation, Construction, and Performance of the
                        Accused Components" .............................................................. 12

                ii.     Defendants Cannot Hide Behind Claims of Divided Infringement .......... 14

        C.      This Production Must Include Unredacted Copies of Contracts With All
                Entities Operating Elements Of The Accused Products ........................................ 15

        D.      Gradient Must Produce Source Code Because It Is Relevant .............................. 16

        E.      Gradient's Deficient Production Substantially Prejudices Plaintiffs ................... 17

IV.     CONCLUSION .................................................................................................. 18

[FILED UNDER SEAL]

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Baron Servs., Inc. v. Media Weather Innovations LLC*,
    717 F.3d 907 (Fed. Cir. 2013).................................................................................10

*CAO Lighting, Inc. v. Feit Elec. Co., Inc.*,
    No. CV 20-4926-AB (SPX), 2021 WL 3376649 (C.D. Cal. June 2, 2021),
    *objections overruled*, No. 2:20-CV-04926-AB-SP, 2021 WL 3376648 (C.D.
    Cal. July 23, 2021)...............................................................................................14

*Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*,
    631 F.3d 1279 (Fed. Cir. 2011)...........................................................................14

*Edward D. Ioli Tr. v. Avigilon Corp.*,
    No. 2:10-CV-605-JRG, 2012 WL 5830711 (E.D. Tex. Nov. 16, 2012)........................ *passim*

*Implicit Networks, Inc. v. Microsoft Corp.*,
    No. C 09-1478 SI, 2009 WL 4251146 (N.D. Cal. Nov. 23, 2009).........................................10

*Kologik Capital, LLC v. In Force Technology, LLC et. al.*,
    No. 1:18-cv-11168, Dkt. 244 (D. Mass. May 11, 2022)..........................................................10

*MVS Studio Inc. v. Bingo Bean, LLC*,
    No. CV 10-07675 JHN SSX, 2011 WL 10538669 (C.D. Cal. June 24, 2011).......................10

*PetEdge, Inc. v. Fortress Secure Sols., LLC*,
    No. CV 15-11988-FDS, 2016 WL 4148221 (D. Mass. Aug. 4, 2016).....................................9

*Plastipak Packaging, Inc. v. Ice River Springs Water Co. Inc.*,
    Case No. 1:19-CV-11193, Dkt. 82 (D. Mass. Jan. 27, 2020)....................................................9

*Positive Techs., Inc. v. Sony Elecs. Inc.*,
    No. 11-CV-02226 SI (NC), Dkt. 345 (N.D. Cal. June 19, 2012) ...........................................10

*Updatecom, Inc. v. FirstBank Puerto Rico, Inc.*,
    2012 WL 12996276 (D.P.R. Sept. 27, 2012), *on reconsideration*, 2013 WL
    12235084 (D.P.R. June 21, 2013)...........................................................................16

**Statutes**

35 U.S.C. § 271.......................................................................................................14

**Other Authorities**

Federal Rule of Civil Procedure 26(b)(1) ......................................................................15

**[FILED UNDER SEAL]**

Local Rule 16.6 ................................................................................................ *passim*

Local Rule 16.6(d)(1) .............................................................................................. 3

Local Rule 16.6(d)(2) .............................................................................................. 9

Local Rule 16.6(d)(3) .............................................................................................. 3

Local Rule 16.6(d)(4) ..................................................................................... *passim*

Local Rule 16.6(d)(4)(a) .................................................................................. 11, 12

Local Rule 16.6(d)(4)(c) .................................................................................. 16, 17

Local Rule 16.6(e) ................................................................................................. 17

[FILED UNDER SEAL]

## I.    INTRODUCTION

Plaintiffs file this Motion because Defendants have doubled down on their refusal to provide discovery in this action.  As detailed in Plaintiffs' prior motion to compel, Dkts. 71–72, Defendants have refused to respond substantively to Plaintiffs' discovery requests, first due to alleged deficiencies in Plaintiffs' trade secret disclosure, but now because they "intend" to file a motion for partial summary judgment on Plaintiffs' trade secret claims.  *See* Dkt. 78.  Despite the fact that these issues are limited to the trade secret claims, Defendants have also refused to respond to discovery requests that bear upon Plaintiffs' patent infringement claims.  Now, Defendants continue their pattern and practice of stonewalling discovery; they refuse to provide the Technical Documents and Source Code that the local rules obligate them to produce.[1]

This Court's local patent rules and Scheduling Order, Dkt. 52, require defendants to provide basic disclosures of materials to assist the efficient prosecution of a patent case.  *See* Local Rule 16.6.  This includes the production of Technical Documents "sufficient to show the composition, operation, construction, and performance of the accused components, elements, or functionality identified in the patentee's infringement claim charts," and the production of source code if relevant.  Local Rule 16.6(d)(4).  Defendants have refused to comply with this rule.  Instead of producing the type of documents created in the ordinary course of business that would reliably show what the rule requires, they have produced only a tiny handful documents which, based on metadata, appear to have been created or modified well after this litigation was commenced, or are heavily redacted to the point of incomprehensibility and together fail to describe basic elements of the composition, operation, construction, and performance of the Accused Products (defined below).  Defendants have not produced the sufficiently detailed architecture documents, such as

---

[1] The terms "Technical Documents" and "Source Code" herein refer to and embody the same definitions as those terms are used in Local Rule 16.6(d)(4).

[FILED UNDER SEAL]

the documents used to design, build and construct the Accused Instrumentalities, any vendor or customer materials describing with any specificity or reliability how the components of the Accused Products operate, or any source code evidencing the actual operations performed. Despite the parties' meeting and conferring on this topic, Defendants take the position that their minimal, recently created or modified, and heavily redacted document production is sufficient. Therefore, Plaintiffs file the instant motion.

## II.      FACTUAL BACKGROUND

Plaintiff Milliman offers a health insurance underwriting platform, Curv, which allows for more accurate group health insurance underwriting by using de-identified health data, proprietary processes and technology, and the Asserted Patents, which Milliman licenses from co-Plaintiff, Vigilytics. *See* Dkt. 1 at ¶ 5. Plaintiffs allege that Defendants' competing group health insurance underwriting solution (including but not limited to the SAIL Predictive Underwriting solution) and associated software used to implement the solution ("Accused Products") infringe on the six Asserted Patents. *See* Dkt. 1 at ¶¶ 6, 7, 80–109. These infringed patents relate to systems for accessing individual protected health information using tokenization to allow the transmission of medical information without implicating patient privacy or violating relevant privacy laws. *See* Ex. A, Declaration of Plaintiffs' Technical Expert Dr. Aviel Rubin ("Rubin Decl."); *see also* Dkt. 1-1 (U.S. Patent No. 9,118,641, hereinafter "'641 Patent") at Abstract ("producing information that characterizes a group of individuals from a set of private data representing characteristics of the individuals" where "the identity of the individuals is unattainable from the produced information").

After this Court denied Defendants' Partial Motion to Dismiss, the parties commenced discovery and disclosure requirements. The parties are currently enmeshed in a discovery dispute under Federal Rules of Civil Procedure 26 and 37, as Defendants refuse to provide Plaintiffs

substantive discovery responses on the grounds that Plaintiffs' trade secret disclosures allegedly did not comply with Mass. Gen. Laws ch. 93 § 42D.  *See* Dkts. 70–72, 78–79.  After Plaintiffs supplemented their disclosures, Defendants pivoted to an argument that discovery should be stayed because they intend to file a motion for partial summary judgment on Plaintiffs' trade secret claims, *see* Dkt. 78, although that plainly means that the case will continue as to the patent infringement claims regardless of the outcome of that motion, when and if it is filed.

Although Defendants have steadfastly refused to provide substantive responses to Plaintiffs' discovery requests propounded under Federal Rules of Civil Procedure 33 and 34, Local Rule 16.6 and the Scheduling Order entered in this case, Dkt. 52, mandate certain specific disclosures for patent cases.  On July 21, 2022, Plaintiffs satisfied their obligations under the Local Rule by disclosing relevant patent-related materials, including their infringement claim chart for the Asserted Patents, pursuant to Local Rule 16.6(d)(1).  The parties conferred regarding these disclosures, pursuant to Local Rule 16.6(d)(3).  Defendants were subsequently obligated, under Local Rule 16.6(d)(4), to make a preliminary production of, among other things, "Technical Documents" "sufficient to show the composition, operation, construction, and performance of the accused components, elements, or functionality identified in the patentee's infringement claim charts" and "Source Code" "if relevant"—in addition to invalidity and non-infringement claim charts, and evidence for any invalidity claims.  Local Rule 16.6(d)(4); *see also* Dkt. 52 (Scheduling Order).

On August 25, 2022, Defendants produced just six documents, all of which were recently created or heavily redacted, which they claimed satisfied the Local Rule requirements.  For the reasons outlined below, these materials are not sufficient.  Plaintiffs' technical expert, Dr. Aviel Rubin, a Johns Hopkins University Professor and expert in computer networks and security, has

**[FILED UNDER SEAL]**

reviewed Defendants' production and has also opined that "[t]his handful of documents is not sufficient to show the composition, operation, construction, and performance of the Accused Instrumentalities or its challenged elements."  Ex. A, Rubin Decl. at ¶ 3.3.

None of Defendants' Rule 16.6(d)(4) production (attached hereto as Exhibits B–G), individually or collectively come close to satisfying the Rule's requirements. ███████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████  Defendants redacted these two documents not on the basis of attorney-client privilege or work-product doctrine, but rather due to purported confidentiality concerns related to the third-party entity, even though the parties have agreed to, and the Court has entered, a protective order to address such concerns.  These six documents are not sufficient to show the composition, operation, construction, and performance of the Accused Products or their constituent components.  And no document contains Source Code.

Specifically, Defendants' production lacks key information sufficient to show the composition, operation, construction, and performance of the components, elements, or functionality of the Accused Products identified in the patentee's infringement claim charts.  As a

[FILED UNDER SEAL]

representative example, claim 7 of the '641 Patent recites a system that comprises an encryption server for "producing a token for each individual included in a group" of multiple individuals that are "identified in a request for healthcare information that characterizes the group . . . ."  The "identity of the individuals in the group is unattainable from the tokens" and each token "associated with a corresponding token in a set of de-identified healthcare data" where "each token in the set of de-identified healthcare data [is] associated with healthcare data for a corresponding individual . . . ."  The system of claim 7 also recites "a data server for producing the requested healthcare information that characterizes the group by identifying the tokens in the set of de-identified healthcare data and the associated de-identified healthcare data that correspond to the produced tokens," where "the produced tokens and the tokens in the set of de-identified data are similarly encrypted, and the produced healthcare information is absent personally identifiable information and has been produced without the individuals in the group having authorized production of such healthcare information that characterizes the group . . . ."  Dkt. 1-1, 11:9-35.

In their noninfringement contentions, Defendants contend, among other things, that Gradient does not "operate an 'encryption server,' . . . [and] also does not direct or control operation of such an encryption server"; "produc[e] a token for each individual included in a group' . . . with 'an encryption server'"; "operate 'an encryption server . . . for producing a token for each individual included in a group . . .' with 'each token being associated with a corresponding token in a set of de-identified healthcare'";  "receive 'a request for healthcare information that characterizes the group. . .'"; and "operate 'an encryption server . . . for producing a token for each individual included in a group . . . ."  Ex. H, at Ex. 1, Defendants' Noninfringement Chart for '641 Patent.  With respect to the claimed "data server," Gradient contends that it does not: "operate a data server that specifically 'identif[ies] the tokens in the set of de-identified healthcare data and

**[FILED UNDER SEAL]**

the associated de-identified healthcare data that correspond to the produced tokens.' . . . [and] also does not direct or control operation of such a data server"; or "produc[e] the requested healthcare information' . . . [and] also does not direct or control such producing . . ." *Id*.

Gradient, however, conspicuously does not contend that the Accused Products do not "use" an "encryption server" and "data server" as claimed; Gradient merely contends that it does not "operate" or "direct or control operation" of them. ███████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████   █████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████.

Local Rule 16.6 requires, and Plaintiffs need to be able to review, the actual Technical Documents used to design, develop, construct and operate the Accused Products and that reliably and accurately show how the Accused Products operate. ██████████████████████

████████████████████████████████████████████████

██████████████████████████████

 █   ██████████████████████

 █   ██████████████████████████████████

 █   █████████████████████

**[FILED UNDER SEAL]**

- ██████████████████████
- ███████████████████████████████████████
- ████
- ████████████████████████████
- ████████████████████████████████████████

██████████████. All of this information is relevant to claim 7 of the '641 Patent and other asserted claims of the Asserted Patents.

Likewise, with respect to the "data server" of claim 7, Gradient has not produced, and Plaintiffs need, Technical Documents created in the ordinary course of business for the Accused Products sufficient to reliably show:

- ███████████████████████████████████
  ██
- ████████████████
- ███████████████████████████████████
  ████████████████████
- ███████████████████████████████████
  ██████████████████████████████████
  ██████████████
- ███████████████████████████████████
  █████████████
- ███████████████████████████████████
  ███████████████████████████████████
  ██████████████████

**[FILED UNDER SEAL]**

██████████████████  Again, all of this information is plainly relevant to claim 7 of the '641 Patent and other asserted claims of the Asserted Patents.

Claim 7 also recites that the system "provid[es] the produced healthcare information to report the characteristics of the group composed of multiple individuals absent authorization at any time from the individuals in the group of individuals to provide the requested healthcare information." Dkt. 1-1 at 11:31–35.  Gradient contends that it does not "'provid[e] the produced healthcare information,' . . . [and] also does not direct or control such providing."  Ex. H, at Ex. 1, Defendants' Noninfringement Chart for '641 Patent. ████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████.

Defendants' threadbare disclosures leave crucial gaps in the description of the Accused Products and prejudice Plaintiffs' ability to fully assess Defendants' infringement.  *See* Ex. A, Rubin Decl.; *infra* §§§ III.  Further, as a software company, Defendants certainly possess documents that were created and used in the ordinary course of business to design, develop, construct and operate the Accused Products, including source code files.  *See* Ex. A, Rubin Decl. Defendants should be compelled to produce these Technical Documents and Source Code.

Plaintiffs raised this concern to Defendants in multiple emails and a long meet-and-confer conversation.  Ultimately, Defendants assert that their current, apparently litigation-inspired, heavily redacted, six-document production is sufficient, and have refused to produce the actual

[FILED UNDER SEAL]

Technical Documents or Source Code used to design, develop, construct and operate the Accused Products . Therefore, Plaintiffs file the instant motion to compel Defendants to comply with their disclosure obligations under Local Rule 16.6.

## III.   ARGUMENT

### A.   Legal Standard

Local Rule 16.6 sets forth procedures for patent cases in this district to make litigation of patent issues more efficient. *See PetEdge, Inc. v. Fortress Secure Sols., LLC*, No. CV 15-11988-FDS, 2016 WL 4148221, at *1 (D. Mass. Aug. 4, 2016) ("the principal purpose of that process [Local Rule 16.6] is to compel the parties to narrow the relevant issues, for a more efficient discovery practice"); *see also Edward D. Ioli Tr. v. Avigilon Corp.*, No. 2:10-CV-605-JRG, 2012 WL 5830711, at *4 (E.D. Tex. Nov. 16, 2012) (describing similar local rules, noting the "rules exist to further the goal of full, timely discovery and provide all parties with adequate notice and information with which to litigate their cases") (internal citation omitted). Among other things, this Rule requires the Accused Infringer to make a preliminary production of technical documents, source codes, and samples of the Accused Products, within 21 days of the parties' Local Rule 16.6(d)(2) conference concerning preliminary patent disclosures. Local Rule 16.6(d)(4). This production must include, among other things: (A) "Technical Documents . . . sufficient to show the composition, operation, construction, and performance of the accused components, elements, or functionality identified in the patentee's infringement claim charts . . . Such documents may include, for example, source code, specifications, schematics, flow charts, artwork, and formulas"; (C) "Source code, if relevant, subject to any protective order or procedures on which the parties may agree." *Id.*

This Court can order an Accused Infringer to comply with its obligations under Local Rule 16.6(d)(4) and produce materials required to be disclosed under that rule. *See Plastipak*

**[FILED UNDER SEAL]**

*Packaging, Inc. v. Ice River Springs Water Co. Inc.*, Case No. 1:19-CV-11193, Dkt. 82 (D. Mass. Jan. 27, 2020). Other courts considering similar local patent disclosure rules also have ordered defendants' production of documents sufficient to show composition, operation, construction and performance of the accused elements, and of source code. *See, e.g.*, *Avigilon Corp.*, N2012 WL 5830711, at *4 (ordering production of documents, noting local patent disclosure rule "imposes an affirmative obligation on the accused infringer to produce source code and all other relevant materials reasonably needed for the Plaintiff to understand for itself how the technology at issue operates and functions"); *Implicit Networks, Inc. v. Microsoft Corp.*, No. C 09-1478 SI, 2009 WL 4251146, at *1 (N.D. Cal. Nov. 23, 2009) (ordering production of "documents concerning the allegedly infringing aspects of their device"); *Positive Techs., Inc. v. Sony Elecs. Inc.*, No. 11-CV-02226 SI (NC), Dkt. 345 at *2–6 (N.D. Cal. June 19, 2012) (ordering production of numerous documents "sufficient to show the operation of any aspects or elements of an Accused Instrumentality," including source code).

"Plaintiffs are entitled to access information that is relevant to proving or disproving their allegations. . . . [which] generally includes the disclosure of 'raw data (source code, schematics, formulas, etc.) sufficient to show the operation of the accused aspects of the products in order to allow the patentee to make it's [sic] own determinations as to infringement.'" *MVS Studio Inc. v. Bingo Bean, LLC*, No. CV 10-07675 JHN SSX, 2011 WL 10538669, at *2 (C.D. Cal. June 24, 2011) (quoting *I–Flow Corp. v. Apex Med. Techs., Inc.*, 250 F.R.D. 508, 511 (S.D. Cal. 2008)). As a result, courts regularly grant motions to compel source code in patent cases where the code is relevant to assessing infringement claims. *See, e.g.*, *id.*; *Kologik Capital, LLC v. In Force Technology, LLC et. al.*, No. 1:18-cv-11168, Dkt. 244 (D. Mass. May 11, 2022) (ordering production of source code); *Baron Servs., Inc. v. Media Weather Innovations LLC*, 717 F.3d 907,

**[FILED UNDER SEAL]**

913–14 (Fed. Cir. 2013) (ordering production where "source code would have enabled Baron to determine if [defendant's] noninfringement position was correct"); *Avigilon Corp.* at *4.

For instance, in *Edward D. Ioli Tr. v. Avigilon Corp.*, the court ordered defendant to supplement its sparse production of technical documents under a similar local rule. *Avigilon Corp.*, 2012 WL 5830711 at *4. Defendant's production included only two documents describing the functionality of the accused software, which did not provide sufficient descriptions of the operation of any aspects or elements of the accused software. *Id.* at *2. The court rejected defendants' narrow reading of the rule (which defendant claimed placed the onus on plaintiffs to explain why source code was needed): "While [defendant] argues that Plaintiffs have not detailed deficiencies in [defendant's] production thus far, it is [defendant] that has the burden to explain how its document production thus far satisfies [the local rule]." *Id.* at *3. The court explained: "the patent local rules 'are not like other forms of discovery which require a formal request by the opposing party. Rather, ***it is the responsibility of the party itself to make disclosures that satisfy the Rules***." *Id.* (citing *Cryptography Research, Inc. v. Visa Int'l Serv. Ass'n*, 2005 WL 1787421 at *3 (N.D. Cal. July 27, 2005)) (emphasis added). The court rejected defendant's "bare minimum production" for "shirk[ing] this responsibility" and held that "its attempt to use a grammatically technical reading of [the local rule] as a shield to avoid production of its source code offends the discovery principles driving this District's patent rules. [The local rule] ***requires [defendant] to produce more than the bare minimum of what*** it ***believes is sufficient***." *Id.* (emphasis added).

### B. Gradient Must Produce Technical Documents Sufficient To Show "Composition, Operation, Construction, and Performance of the Accused Components"

Local Rule 16.6(d)(4)(a) compels the production of Technical Documents "sufficient to show the composition, operation, construction, and performance of the accused components,

[FILED UNDER SEAL]

elements, or functionality identified in the patentee's infringement claim charts." Defendants have not done this.

### i. Defendants' Minimal Production Is Not Sufficient To Show the "Composition, Operation, Construction, and Performance of the Accused Components"

Gradient's minimal production has not satisfied the requirements of Local Rule 16.6(d)(4)(a). It provides little detail into the "composition, operation, construction, and performance of the accused components." ██████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████

But Gradient's production sheds no light into how these elements are composed, constructed, performed, or operate, thereby rendering it impossible for Plaintiffs to complete their infringement analysis. As noted *supra* § II, Gradient's minimal and summary-level production of what appear to be litigation-generated documents sheds no reliable light into basic aspects of how Gradient's system in fact operates. For instance: ████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████. *See also* Ex. A, Rubin Decl. These documents are not Technical Documents—that is, documents that were actually created in the ordinary course of business for and serving a technical, functional purpose, such as actual architecture documents used to design, develop, implement and operate the Accused Products ███████████████████████████████—and they are certainly not

sufficient to show the composition, operation, construction, and performance of the Accused Products.  They are, at most, a "bare minimum production shirk[ing Gradient's] responsibility." *See Avigilon*, 2012 WL 5830711, at *3.

Surely, Gradient has other materials in its possession, including Technical Documents, sufficient to show "the composition, operation, construction, and performance of the accused components, elements, or functionality identified in the patentee's infringement claim charts." Gradient could not have developed or constructed the Accused Products, and would not be able to operate its health underwriting system or provide predictive group risk scores without further documentation.  *See* Ex. A, Rubin Decl.  Moreover, Gradient does not assert that it has no further responsive documents.  It merely contends that the six high-level or heavily redacted documents it has produced is sufficient to meet its obligations.  But Gradient must "produce more than the bare minimum of what *it* believes is sufficient," it has an obligation to "make disclosures that satisfy the Rules."  *See Avigilon*, 2012 WL 5830711, at *3 (internal citation omitted).  And, in no other discovery setting under the Federal Rules could a party get away with not producing responsive documents in its possession that were created in the ordinary course of its business.

The information missing from Gradient's production is highly relevant to assessing whether the Accused Products infringe the Asserted Patents.  *See* Ex. A, Rubin Decl.  While the information Gradient has produced to date, and its RFP Response, provide a high-level indication that Gradient infringes the Asserted Patents, they do not provide sufficient specifics to enable Plaintiffs to complete their infringement analysis.  This substantially prejudices Plaintiffs' ability to prosecute its infringement case, including amending its infringement claim chart, if necessary, and identifying additional claims and claim terms that may need to be construed.  *See infra* § III.E.

[FILED UNDER SEAL]

### ii.    Defendants Cannot Hide Behind Claims of Divided Infringement

Plaintiffs allege that Gradient infringes on their patents under § 271(a) by putting the claimed system into service, *i.e.*, controlling the system as a whole and obtaining benefit from it. *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1284 (Fed. Cir. 2011) ("to 'use' a system for purposes of infringement, a party must put the invention into service, *i.e.*, control the system as a whole and obtain benefit from it.").  Plaintiffs also allege Gradient is liable as an indirect infringer under 35 U.S.C. § 271(b) or (c), by inducing or contributing to the direct infringement by a third-party, such as a customer of Gradient, that "uses" the Gradient system.

Therefore, even where Gradient states that it does not personally operate or directly control an alleged infringing element, where this infringement is part of a system that Gradient "uses," such a disclaimer is not sufficient to avoid liability for infringement.  Moreover, Gradient's implication that other entities may be responsible for performing infringing elements of their system merely highlights the need for Gradient's adequate disclosure to "show the composition, operation, construction, and performance of the accused components," so that relevant third-parties can be identified and discovery into those third parties' involvement in the alleged infringement can be commenced.  *Cf. CAO Lighting, Inc. v. Feit Elec. Co., Inc.*, No. CV 20-4926-AB (SPX), 2021 WL 3376649, at *6 (C.D. Cal. June 2, 2021), *objections overruled*, No. 2:20-CV-04926-AB-SP, 2021 WL 3376648 (C.D. Cal. July 23, 2021) (since "plaintiff will have to resort to third-party subpoenas to obtain core technical documents not in defendant's possession," "[t]he court expects defendant will cooperate with plaintiff to facilitate that process by identifying relevant [third-parties]").

Moreover, to the extent that other entities are responsible for the actual execution of one or more of these tasks, Gradient has produced no materials that clarify which elements Gradient or other entities perform, or who these other entities are (thereby enabling third-party discovery as

14

**[FILED UNDER SEAL]**

necessary). ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████

### C.   This Production Must Include Unredacted Copies of Contracts With All Entities Operating Elements Of The Accused Products

Generally, under Federal Rule of Civil Procedure 26(b)(1), parties are entitled to discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.   In this case, the parties have agreed to a stipulated protective order "[t]o protect the confidentiality of certain documents and information, including but not limited to proprietary information and trade secrets, and to facilitate the exchange of discovery material in this action."  Dkt. 48 at 1.  They "negotiated the terms . . . in good faith."  *Id*.  Where information contains "highly confidential proprietary financial or technical data or information [or] commercially sensitive competitive information," including "commercial agreements" and "licensing and licensing documentation," materials can be designed as "Confidential - Attorneys' Eyes Only."  Dkt. 48-1 at 5.

Defendants have produced two redacted ████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████  Defendants have relayed that the document's redactions are due to proprietary business confidentiality concerns, and not attorney-client, work-product, or other legal privilege.  As noted above, the identities of third-party entities that operate elements of Gradient's allegedly infringing system are necessary to "show the composition, operation, construction, and performance of the accused components, elements, or

15

[FILED UNDER SEAL]

functionality"; these identities are also essential for enabling third-party discovery to further glean the relevant information.  Moreover, the parties already have a negotiated order in place to address the purported confidentiality concerns identified by Defendants, and protect the confidentiality of commercial agreements.  Therefore, Defendants do not have a basis for maintaining redactions on these documents.

Moreover, to the extent Defendants possess other third-party agreements which are necessary to "the composition, operation, construction, and performance of the accused components, elements, or functionality identified in the patentee's infringement claim charts," Defendants must produce unredacted copies of these materials for the same reasons.

### D.    Gradient Must Produce Source Code Because It Is Relevant

The Local Rule provides that the "accused infringer shall" disclose source code "if relevant," subject to a protective order.  Local Rule 16.6(d)(4) & (d)(4)(c).  The word "shall" indicates that this disclosure is not optional, but mandatory.  The parties' protective order also governs the treatment of source code, and stringently limits source code access to only outside counsel, experts, court reporters, stenographers, videographer, the Court, the jury, Court personnel, and litigation support staff.  Dkt. 48-1 at 5, 13.  And "[s]ource code is indisputably relevant to the present controversy.  In fact, it lies at the very center of the controversy." *Cf. Updatecom, Inc. v. FirstBank Puerto Rico, Inc.*, 2012 WL 12996276 (D.P.R. Sept. 27, 2012), *on reconsideration*, 2013 WL 12235084 (D.P.R. June 21, 2013).  The code is "reasonably needed for the Plaintiff to understand for itself how the technology at issue operates and functions."  *See Avigilon Corp.*, 2012 WL 5830711, at *4.

Plaintiffs assert that Defendants' platform infringes on several patents owned by Vigilytics and exclusively licensed by Milliman.  Plaintiffs allege that Defendants' health underwriting models produce a predictive group risk score by infringing multiple claims in Plaintiffs' patents.

16

[FILED UNDER SEAL]

*See infra* §§ II, III.B.  Defendants' source code is directly relevant to assessing whether that is the case.  *See* Ex. A, Rubin Decl.  The source code would reveal the mechanics of how Defendants' system was constructed and operates, for instance: ████████████████████████████

████████████████████████████████████████████

████████████████████████████████

But Defendants have produced no source code, and during the parties' meet-and-confer communications Defendants have repeatedly refused to do so.  Because this material is relevant, Local Rule 16.6(d)(4)(c) compels its production.  And because this material is critical to assessing whether the Accused Products infringe the Asserted Patents, Plaintiffs are substantially prejudiced by Defendants' failure to comply with this requirement, as explained further *infra* § III.E.

### E.    Gradient's Deficient Production Substantially Prejudices Plaintiffs

Gradient's deficient production prejudices Plaintiffs' ability to present its case within the fast-approaching case deadlines.  Under the Scheduling Order, the parties' joint statement of number of claims and terms to be construed is due September 29; opening claim construction briefs are due October 20; claim construction expert depositions are due November 10; responsive briefs are due December 8; and the claim construction hearing is January 12, 2023.  Dkt. 52.  Without adequate disclosures, Plaintiffs will be hindered in their ability to present their case.

Defendants' full patent-related disclosures were due on August 25, per the Court's Scheduling Order.  Dkt. 52.  The Scheduling Order, much like the Local Rules, contemplated that these disclosures would be made amply in advance of the dates that claim terms and claim constructions were to be exchanged.  *See id.*; Local Rule 16.6(e).  This makes logical sense, because Plaintiffs need to understand the construction, operation and performance of the Accused Products to identify the full range of claims Defendants are infringing, in order to identify all claim terms that may need to be construed.  Defendants' insufficient production prejudices Plaintiffs'

17

[FILED UNDER SEAL]

ability to identify additional claims to assert and additional terms in those claims that might require construction.

Defendants' failure to produce the required Technical Documents and Source Code also frustrates the purpose of the Local Rule, which is to facilitate the efficient litigation of patent infringement claims by requiring parties to disclose relevant materials up-front.  Defendants are delaying Plaintiffs' ability to identify relevant claims early in the litigation.

## IV.   CONCLUSION

Accordingly, Plaintiffs respectfully request that the Court grant this Motion and order Defendants to make a disclosure consistent with Local Rule 16.6.


Dated:  September 16, 2022                    Respectfully submitted,

*/s/ Christopher Centurelli*
Christopher Centurelli (BBO #640974)
christopher.centurelli@klgates.com
John L. Gavin (BBO #705385)
john.gavin@klgates.com
K&L GATES LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111
Telephone: (617) 261-3100
Facsimile: (617) 261-3175

and

Patrick J. McElhinny (*pro hac vice*)
patrick.mcelhinny@klgates.com
Mark G. Knedeisen (*pro hac vice*)
mark.knedeisen@klgates.com
Anna Shabalov (*pro hac vice*)
anna.shabalov@klgates.com
K&L Gates LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, Pennsylvania 15222
Telephone: (412) 355-6500

**[FILED UNDER SEAL]**

Facsimile: (412) 355-6501

*Attorneys for Milliman, Inc. and Milliman Solutions, LLC*

and

Christopher Dillon (BBO #640896)
dillon@fr.com
Fish & Richardson P.C.
One Marina Park Drive
Boston, MA 02210
Telephone: (617) 542-5070

and

Noah C. Graubart (*pro hac vice*)
graubart@fr.com
Joseph R. Dorris (*pro hac vice*)
dorris@fr.com
Fish & Richardson P.C.
1180 Peachtree Street NE
21st Floor
Atlanta, GA 30309
Telephone: (404) 892-5005

*Attorneys for Vigilytics LLC*

19

**[FILED UNDER SEAL]**

## **CERTIFICATE OF SERVICE**

I hereby certify that this document, filed through the ECF system, will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Christopher Centurelli*