### United States District Court
### District of Massachusetts

|  |  |  |
|---|---|---|

```
_____
                                    )
Milliman, Inc., et al.,             )
                                    )
        Plaintiffs,                 )
                                    )
        v.                          )
                                    )       Civil Action No.
Gradient A.I. Corp., et al.,        )       21-10865-NMG
                                    )
        Defendants.                 )
_____   )
```

### MEMORANDUM & ORDER

GORTON, J.

Milliman, Inc., Milliman Solutions, LLC ("Milliman") and Vigilytics LLC ("Vigilytics") (collectively "plaintiffs") bring this suit against Gradient A.I. Corp. ("Gradient") and two of its officers, Stanford A. Smith ("Smith") and Samuel Chase Pettus ("Pettus") (collectively "defendants") alleging that they infringed certain patents and misappropriated Milliman trade secrets when they left the employ of Milliman to form Gradient.

Milliman asserts that defendants' conduct constitutes 1) patent infringement, 2) breach of confidentiality, 3) a violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836; 4) a violation of the Massachusetts Uniform Trade Secret Act ("MUTSA"), M.G.L. c. 93 §§ 42 et seq; and 5) unfair and deceptive acts and practices in violation of M.G.L. c. 93A.

Pending before the Court is defendants' motion for summary judgment on Milliman's trade secret claims.  For the reasons that follow, that motion will be denied.

## I.  <u>Background</u>

### A.  The Parties

Plaintiff Milliman, Inc. is a Delaware corporation with a principal place of business in Seattle, Washington.  Milliman provides consulting and actuarial services such as data analysis and predictive analytics.  Its leading practice areas are health and life insurance.

Plaintiff Milliman Solutions, LLC is a limited liability company organized in Delaware with a principal place of business in Brookfield, Wisconsin.  Its sole member is Milliman, Inc., the above-mentioned Delaware corporation with its principal place of business in Washington State.  It is a wholly-owned subsidiary of its member and offers software products and services for health, property, casualty and life insurance companies.

Plaintiff Vigilytics LLC is a limited liability company organized in New York with a principal place of business in Victor, New York.  Apparently its sole member and president is Andrew Paris who is a resident of New York State.  The company

is a healthcare analytics firm that owns multiple patents, including the six patents licensed to Milliman and at issue in this case.

Defendant Gradient is a Delaware corporation with a principal place of business in Boston, Massachusetts.  It is a consulting firm that offers predictive analytics to certain sectors of the insurance industry.  Defendant Smith is the founder and Chief Executive Officer of Gradient.  He was employed by Milliman from 2011 to 2018 as the head of its predictive analytics practice which was branded "Gradient" internally and so known to Milliman clients.  According to defendants, Smith supervised joint work that Gradient undertook with Milliman's healthcare practice, Intelliscript. Intelliscript offered a predictive risk management service called Curv.

Defendant Pettus is Health Sales Director at Gradient.  He was employed by Milliman from 2012 to 2018, initially as a business development manager and then as an employee in the predictive analytics practice.

B.   **Factual History**

Milliman alleges that during the time Smith and Pettus were employed by Milliman, they had access to Curv-related trade

secrets, including pricing information and copies of calibration studies and Curv services agreements.

While utilized by Milliman, the Gradient A.I. predictive analytics tool was marketed for use in workers' compensation risk management. Smith hoped to expand its use to healthcare risk management, similar to Curv. Rather than have Gradient compete internally with Curv, Milliman offered to sell the Gradient A.I. business to Smith outright. They negotiated an Asset Purchase Agreement ("APA"), and the deal closed in July, 2018.

The APA involved the sale of specific Assets, which were identified in Exhibit A of the agreement, and included

> the Gradient A.I. software, data, and technology (collectively, the "Software") and the assets used in connection with the Gradient A.I. business, as such Software and assets are described and defined in Exhibit A.

The APA expressly excluded the sale of Health Intellectual Property ("Health IP"), defined as:

> All rights, title and interest (including any and all intellectual property rights) in and to the data, information, data summaries, and know-how provided by or originating in any part from Seller's health practice.

The APA emphasizes that "purchaser shall have no license or right to use any Health Intellectual Property" and the definition of Assets explicitly excludes Health IP.

Milliman submits that Gradient misappropriated its trade secrets, i.e. its Health IP.  Plaintiff stresses that its trade secrets include confidential methods for importing and processing health insurer accounts, formulae involved in assigning group risk scores, and pricing, sales and marketing methodologies developed by Intelliscript for the Curv platform. Milliman asserts that its trade secrets were developed from:

> data, information, data summaries, and know-how
> provided by or originating in any form from
> [Milliman's] health practice.

### C.   Procedural History

In May, 2021, Milliman and Vigilytics filed a complaint alleging patent infringement and misappropriation of trade secrets.  The complaint sets forth twelve counts: 1) infringement of the six asserted patents against Gradient (Counts I-VI), 2) breach of a confidentiality agreement against Smith and Pettus (Count VII), 3) violation of the DTSA, 18 U.S.C. § 1836, against Smith and Pettus (Count VIII), 4) violation of the DTSA against Gradient (Count IX), 5) violation of MUTSA, M.G.L. c. 93 §§ 42 et seq against Smith and Pettus (Count X), 6) violation of MUTSA against Gradient (Count XI),

and 7) unfair and deceptive acts and practices in violation of
M.G.L. c. 93A against all defendants (Count XII).

Two months later, defendants moved to dismiss the patent
infringement claims.  This Court denied that motion in March,
2022.  In September, 2022, defendants moved for summary judgment
with respect to Milliman's trade secret claims.

## II.  <u>Motion for Summary Judgment</u>

### A.   **Legal Standard**

The role of summary judgment is "to pierce the pleadings
and to assess the proof in order to see whether there is a
genuine need for trial." <u>Mesnick</u> v. <u>Gen. Elec. Co.</u>, 950 F.2d
816, 822 (1st Cir. 1991) (quoting Garside v. Osco Drug, Inc.,
895 F.2d 46, 50 (1st Cir. 1990)).  The burden is on the moving
party to show, through the pleadings, discovery and affidavits,
"that there is no genuine dispute as to any material fact and
the movant is entitled to judgment as a matter of law." Fed. R.
Civ. P. 56(a).

A fact is material if it "might affect the outcome of the
suit under the governing law . . . ." <u>Anderson</u> v. <u>Liberty Lobby</u>,
Inc., 477 U.S. 242, 248 (1986).  A genuine issue of material
fact exists where the evidence with respect to the material fact

in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

If the moving party satisfies its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The Court must view the entire record in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993).  Summary judgment is warranted if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.

**B.  Trade Secret**

The Defend Trade Secrets Act ("DTSA") confers a federal cause of action on an owner of a trade secret that has been misappropriated, so long as 1) the trade secret owner has taken reasonable measures to keep such information secret and 2) the information comprises independent economic value. See 18 U.S.C. §§ 1836(b)(1) and 1839(3).  The DTSA defines "misappropriation" as

> disclosure or use of a trade secret of another without
> express or implied consent by a person who . . . at
> the time of disclosure or use, knew or had reason to

> know that the knowledge of the trade secret was . . .
> acquired under circumstances giving rise to a duty to
> maintain the secrecy of the trade secret or limit the
> use of the trade secret.

Id. at § 1839(5)(B).

Similarly, in Massachusetts, a plaintiff can establish misappropriation of trade secrets pursuant to M.G.L. c. 93, § 42 by proving that the defendant acquired them through improper means (including by theft, bribery, misrepresentation or breach of contract but not by reverse engineering) or by disclosing or using trade secrets obtained through improper means without that person's consent. M.G.L. c. 93, § 42.  The standard for misappropriation under Massachusetts law is substantially similar to that under the DTSA. Compare 18 U.S.C. § 1839(5)-(6), with M.G.L. c. 93, § 42(1)-(2).

To prevail on a claim of misappropriation of trade secrets in Massachusetts, a plaintiff must establish that 1) the information at issue constitutes a trade secret, 2) the plaintiff took reasonable measures to secure the confidentiality of the information and 3) the defendant obtained the trade secret through improper means. Optos, Inc. v. Topcon Medical Systems, Inc., 777 F. Supp. 2d 217, 238 (D. Mass. 2011).

## C.  Application

Defendants allege that Milliman forfeited any right to assert any of its 16 claimed trade secrets for two reasons: 1) under the plain language of the APA, Milliman sold the asserted trade secrets to Gradient and 2) Milliman did not take the steps reasonably required to protect the claimed trade secrets.

### 1.  Ownership

Gradient's first argument is based in its interpretation of the APA.  The asserted trade secrets were purportedly contained in the emails of former Milliman employees who became employed by Gradient as part of the transaction.  Gradient contends that when Milliman included the subject emails in the property conveyed pursuant to the APA, Milliman sold the asserted trade secrets to Gradient.  Gradient submits that, as a result of that sale, it now owns the asserted trade secrets.  Citing Focused Impressions, Inc. v. Sourcing Group, LLC, 2020 WL 1892062, at *11, 14 (D. Mass. Apr. 16, 2020), Gradient asserts that, because ownership is the "essential element" to a trade secret claim, Milliman's trade secret claim should be dismissed.

According to Gradient, because the APA obligated Milliman to transfer all "Assets" but excluded "Health Intellectual Property," the emails containing the asserted trade secrets are Assets, not Health IP.  Gradient suggests that the emails are

not trade secrets at all but rather Assets that Milliman sold to Gradient pursuant to the transaction.

Milliman vigorously disputes that interpretation and contends that 1) the APA explicitly excluded Health IP from the transaction, 2) the trade secrets are "undeniably" Health IP, and thus, 3) Milliman did not sell its trade secrets pursuant to the APA.

In support of its argument that the asserted trade secrets are Health IP, plaintiff contends that the APA is governed by New York law and its well-established principles of contract interpretation,

> a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms.

Greenfield v. Philles Records, Inc., 780 N.E.2d 166, 170 (N.Y. 2002).  In particular, contracts are to be construed with the parties' intent in mind. Kolbe v. Tibbetts, 3 N.E.3d 1151, 1156 (N.Y. 2013) ("Particular words should be considered, not as if isolated from the context, but in the light of the obligation as a whole and the intention of the parties manifested thereby.").

Both parties agree that the APA explicitly excludes Health IP from the sale or transfer of Assets.  The parties disagree, however, as to whether Milliman's asserted trade secrets are

Health IP or Assets as defined by the APA.  That dispute alone disrupts defendant's attempt to secure summary judgment.

The APA defines Health IP as

all rights, title and interest (including any and all intellectual property rights) in and to the data, information, data summaries, and know-how provided by or originating in any part from Seller's health practice.

Milliman emphasizes that its asserted trade secrets were "provided by or originat[ed] in" Milliman's Intelliscript health practice."  Defendants suggest that they were jointly developed by the Gradient A.I. business and the Curv team but Milliman disagrees, thus creating a genuine dispute of material fact.

Moreover, Milliman refutes Gradient's claim that the emails are Assets under the APA.  The APA limits the sale to specifically defined Assets that were itemized in Exhibit A of the APA.  That list included the Gradient A.I. software, certain web pages, patches, trademarks and a list of assigned contracts. Exhibit A does not refer to emails or correspondence and Milliman thus contends that emails are not Assets pursuant to the APA.  Gradient disagrees, suggesting that the requirement to transfer emails, like the requirement to transfer all Assets, makes the emails Assets.  The parties' conflict with respect to contractual interpretation and as to whether the trade secrets

were sold present genuine disputes of material fact that cannot
be resolved by summary judgment.

### 2.   Trade Secret Protections

Gradient's second argument that Milliman failed to take the
steps reasonably required to protect its claimed trade secrets
fares no better because factual questions persist as to whether
Milliman took such actions, and if so, whether they were
reasonable.

Defendants submit that transferring emails containing
asserted trade secrets to a competitor and leaving them in the
competitor's possession for three years is not a reasonable
preventative to protecting trade secrets.  Gradient describes at
least three measures that Milliman could have taken to protect
its trade secrets but did not.

Milliman rejoins that it protected the trade secrets
through 1) confidentiality agreements, 2) the APA's ongoing
requirement that Gradient identify and remove Health IP
discovered in its systems and 3) security measures such as
password protection, access restriction and security testing.
Thus, Gradient's claim that Milliman failed to take legally
sufficient steps to protect its trade secrets is also genuinely
disputed thus precluding resolution by summary judgment.

### 3.   Chapter 93A Claims

Finally, defendants allege that Milliman's Chapter 93A claim is derivative of its misappropriation of trade secrets claim and thus should also be dismissed.  Because the Court will not dismiss the trade secret claim, the Chapter 93A claim remains viable as well.

**ORDER**

For the forgoing reasons, defendant's motion for summary judgment (Docket No. 88) is **DENIED.**

**So ordered.**

<u>/s/ Nathaniel M. Gorton</u>
Nathaniel M. Gorton
United States District Judge

Dated: January 19, 2023