**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| MILLIMAN, INC., MILLIMAN SOLUTIONS, LLC, and VIGILYTICS LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 1:21-cv-10865-NMG |
| vs. | ) ) | |
| GRADIENT A.I. CORP., STANFORD A. SMITH, and SAMUEL CHASE PETTUS, | ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS'**
**MOTION FOR LEAVE TO FILE AMENDED COUNTERCLAIMS**

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................ 1

II.    FACTUAL BACKGROUND ...................................................................... 2

III.    LEGAL STANDARD................................................................................. 3

IV.    ARGUMENT ............................................................................................. 4

    A.    Defendants' Motion Is Untimely, and Does Not Demonstrate Good Cause ......... 4

    B.    Granting Leave Would Severely Prejudice Plaintiffs ............................................. 7

    C.    Amendment Is Futile Because Defendants Do Not State a Claim......................... 9

        1.    Defendants' Breach of Contract Allegations Fail to State a Claim ............ 9

        2.    Defendants' Inequitable Conduct Allegations Fail to State a Claim ........ 10

V.    CONCLUSION......................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                    **Page(s)**

*5436, LLC v. CBS Corp.*,
No. CIV.A. H-08-3097, 2009 WL 3378379 (S.D. Tex. Oct. 16, 2009) ..................................9

*Accordant Energy, LLC v. Vexor Tech. Inc.*,
No. 1:17-cv-411, 2018 WL 7412753 (N.D. Ohio Jan. 24, 2018) ...........................................12

*Beech Aircraft Corp. v. EDO Corp.*,
990 F.2d 1237 (Fed. Cir. 1993)............................................................................................11

*BlackBerry Ltd. v. Typo Prod. LLC*,
No. 14-CV-00023-WHO, 2014 WL 1867009 (N.D. Cal. May 8, 2014) ...............................20

*Bourne v. Gardner*,
270 F. Supp. 3d 385 (D. Mass. 2017) ................................................................................4, 9

*Brixham Solutions Ltd. v. Juniper Networks, Inc.*,
No. 13-cv-00616-JCS, 2014 WL 250204 (N.D. Cal. Jan. 22, 2014).....................................12

*C.R. Bard, Inc. v. M3 Sys., Inc.*,
157 F.3d 1340 (Fed. Cir. 1998)............................................................................................15

*Certainteed Gypsum, Inc. v. Pac. Coast Bldg. Prod., Inc.*,
No. 19-CV-00802-LHK, 2021 WL 1405477 (N.D. Cal. Apr. 14, 2021) ...............................17

*Crean v. Morgan Stanley Smith Barney, LLC*,
652 F. Supp. 3d 171 (D. Mass. 2023) ..................................................................................10

*DNA Genotek Inc. v. Spectrum Sols. LLC*,
No. 321CV00516RSHDDL, 2023 WL 3442085 (S.D. Cal. May 12, 2023) .....................9, 19

*Euro-Pro Operating LLC v. Dyson Inc.*,
164 F. Supp. 3d 235 (D. Mass. 2016) ....................................................................................7

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
575 F.3d 1312 (Fed. Cir. 2009)..........................................................................11, 16, 19, 20

*Fed. Ins. Co. v. MATEP, LLC*,
No. CV 05-12391-NMG, 2008 WL 11511401 (D. Mass. Dec. 1, 2008)
(Gorton, J.)............................................................................................................................8

*Fina Oil & Chem. Co. v. Ewen*,
123 F.3d 1466 (Fed. Cir. 1997)............................................................................................15

*Fromson v. Advance Offset Plate, Inc.*,
    755 F.2d 1549 (Fed. Cir. 1985)......................................................................................14

*Gulf Guar. Life Ins. Co. v. Connecticut Gen. Life Ins. Co.*,
    304 F.3d 476 (5th Cir. 2002) ........................................................................................9

*House of Clean, Inc. v. St. Paul Fire & Marine Ins. Co.*,
    775 F. Supp. 2d 296 (D. Mass. 2011) (Gorton, J.)......................................................7

*Hybritech Inc. v. Monoclonal Antibodies, Inc.*,
    802 F.2d 1367 (Fed. Cir. 1986)..............................................................................15, 16

*I-Flow Corp. v. Wolf Med. Supply, Inc.*,
    No. CV-090762-AGM-LGX, 2009 WL 10697974 (C.D. Cal. Nov. 23, 2009).......................18

*Inline Packaging, LLC v. Graphic Packaging Int'l, LLC*,
    351 F. Supp. 3d 1187 (D. Minn. 2018)...................................................................13

*Keystone Retaining Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.*,
    No. 00-496, 2001 WL 951582 (D. Minn. Aug. 22, 2001).........................................13

*KSR Int'l Co. v. Teleflex Inc.*,
    550 U.S. 398 (2007)...................................................................................................15

*Larson Mfg. Co. of S. Dakota v. Aluminart Prod. Ltd.*,
    559 F.3d 1317 (Fed. Cir. 2009)...............................................................................16

*Lexington Luminance LLC v. Osram Sylvania Inc.*,
    972 F. Supp. 2d 88 (D. Mass. 2013) .......................................................................17, 18

*Miceli v. JetBlue Airways Corp.*,
    914 F.3d 73 (1st Cir. 2019).........................................................................................3

*Morgan v. Sundance, Inc.*,
    596 U.S. 411 (2022)..................................................................................................10

*Ocado Innovation Ltd. v. AutoStore AS*,
    No. 1:21-CV-00041-JL, 2021 WL 6197076 (D.N.H. Dec. 30, 2021) ....................17

*Planet Bingo, LLC v. VKGS, LLC*,
    No. 1:12-CV-219, 2012 WL 5511843 (W.D. Mich. Nov. 14, 2012) .....................18

*Pro-Mold & Tool Co., Inc. v. Great Lakes Plastics, Inc.*,
    75 F.3d 1568 (Fed. Cir. 1996)..................................................................................13

*Rosemount, Inc. v. Beckman Instruments, Inc.*,
    727 F.2d 1540 (Fed. Cir. 1984).................................................................................15

*Secure Our City, Inc. v. ECI Sys., LLC*,
   594 F. Supp. 3d 96 (D. Mass. 2022) ...................................................................... 3, 4

*Siemens Gamesa Renewable Energy A/S v. Gen. Elec. Co.*,
   617 F. Supp. 3d 55 (D. Mass. 2022) .......................................................................15

*St. Jude Med., Cardiology Div., Inc. v. Volcano Corp.*,
   No. CV 12-441-RGA, 2014 WL 2622240 (D. Del. June 11, 2014) ..........................17

*Steir v. Girl Scouts of the USA*,
   383 F.3d 7 (1st Cir. 2004) ........................................................................................8

*Wisc. Alumni Rsch. Found. v. Intel Corp.*,
   No. 08-CV-78-BBC, 2009 WL 10681060 (W.D. Wis. Apr. 8, 2009) ....................5, 6

*Woods Hole Oceanographic Inst. v. ATS Specialized, Inc.*,
   No. CV 17-12301-NMG, 2020 WL 13605451 (D. Mass. Dec. 22, 2020) .............3, 4

**Statutes**

9 U.S.C. § 4 ....................................................................................................................9

Federal Arbitration Act ...................................................................................................9

**Other Authorities**

37 C.F.R. § 1.56(b) .......................................................................................................16

Fed. R. Civ. P. 9(b) ..........................................................................................11, 12, 18

Fed. R. Civ. P. 12(b)(6) ..................................................................................................4

Fed. R. Civ. P. 15(a) .......................................................................................................3

Fed. R. Civ. P. 16(b) .......................................................................................................3

U.S. Patent No. 6,732,113 ....................................................................................7, 16, 18

U.S. Patent No. 8,473,452 ........................................................................................16, 18

## I.    INTRODUCTION

The deadline for amending pleadings passed on April 30, 2023.  ECF 149.  Filed more than six months late, Defendants' motion seeks leave to file an amended Answer and Counterclaims, purportedly "to include an affirmative defense and counterclaim for unenforceability based on inequitable conduct that occurred during the prosecution of the Asserted Patents, and to include additional allegations uncovered through recent discovery to support its Mass. Gen. L. c. 93A claim."  ECF 156 at 4.  Defendants' Proposed Amended Answer and Counterclaims do not match that innocuous description.  ECF 154-1 ("Proposed Counterclaims").  In fact, relying almost entirely on evidence they have possessed for months and even years, Defendants propose to add or revise some 147 paragraphs and add seven new counts (for a total of twenty-eight), including entirely new breach of contract and inequitable conduct theories.  *See* Centurelli Decl., ¶¶ 8 & Ex. B.  The Court should deny Defendants' motion for at least two reasons.

*First*, Defendants' motion does not demonstrate good cause.  The motion is untimely, filed over six months late, after fact discovery has closed, and after opening expert reports were served. The principal basis for the counterclaims includes documents Defendants have possessed since at least 2018, theories Defendants previously raised (and the Court rejected) in their September 2022 summary judgment motion, and prior art references Defendants identified in, and presumably knew about before, their May 2023 Invalidity Contentions.  Defendants' claim that recent depositions (which they waited to take until late in fact discovery) revealed the support for the proposed amendments and justify Defendants' untimeliness does not withstand scrutiny.

*Second*, the proposed amendments are futile, because they fail to state a claim. Defendants' new alleged breach of contract claim seeks monetary damages for Plaintiffs' alleged failure to arbitrate this dispute (proposed Count IX), but Defendants waived their right to arbitrate by participating in this litigation for the last two and half years.  Defendants' new inequitable

conduct claims are similarly futile.  Defendants' first theory—that the named inventor, Andrew Paris, fraudulently omitted the true inventors—necessarily fails because Defendants never name those supposedly true inventors.  Defendants' other theory, that Mr. Paris withheld prior art, fails because Defendants do not allege either how that prior art could have been material, or facts suggesting Mr. Paris even knew about one of the prior art references.  Finally, as to both inequitable conduct theories, Defendants fail to allege facts from which the Court could infer deceptive intent.

## II.    FACTUAL BACKGROUND

Plaintiffs' Complaint alleged patent infringement and trade secret misappropriation.  After failing to obtain dismissal of the patent claims (ECF 43, denying Defendants' motion to dismiss, ECF 21), Defendants answered on March 25, 2022 (ECF 49).  Defendants asserted *twenty-one* counterclaims for defamation, commercial disparagement, tortious interference with business relationships, unfair and deceptive trade practices, breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory judgments that it did not infringe the Asserted Patents and that the Asserted Patents are invalid.  ECF 49 at 44–62.  The parties subsequently negotiated, and the Court entered, a Scheduling Order on April 8, 2022 (ECF 52), which set the deadline for amending pleadings as April 30, 2023.  ECF 52 at 3.

Defendants then effectively refused to engage in any meaningful discovery for more than seven months, requiring Plaintiffs to file several motions to compel (ECF 55, 71, 85).  Defendants also sought a protective order (ECF 59), a stay of discovery (ECF 78), and partial summary judgment (ECF 88).  After the Court resolved Defendants' objections, denied summary judgment, and ordered full discovery to commence, Plaintiffs moved to extend the schedule given the delay caused by Defendants.  ECF 144.  Following further discussions among the parties, Plaintiffs withdrew that motion in favor of a joint proposed schedule.  ECF 146.  The Court adopted the joint schedule, cautioning that further extensions would not be granted.  ECF 147 ("Joint motion

allowed . . . ***There will be no further extensions of time.***");[1] ECF 149.  Importantly, even though the parties moved to extend the discovery schedule thirteen days before the amended pleadings deadline, Defendants did not ask to alter that deadline.

Neither party sought to amend their pleadings within the time set by the Scheduling Order. Instead, on October 17, 2023, nearly six months after the deadline, Defendants informed Plaintiffs that they may seek leave to amend their counterclaims.  Defendants provided Plaintiffs draft amended counterclaims on October 20, 2023, to which Plaintiffs objected as untimely and futile. Centurelli Decl., ¶¶ 7.  Inexplicably, Defendants waited two more weeks before filing their motion seeking to assert their seven new counterclaims.

## III.    LEGAL STANDARD

Ordinarily, Rule 15(a)'s liberal standard—that courts "freely give leave when justice so requires"—governs the amendment to pleadings.  That standard, however, gives way to "a more stringent standard . . . when a court has entered a scheduling order under Fed. R. Civ. P. 16(b) that includes a deadline for amendments and/or supplements to the pleadings and an amendment is requested after that deadline."  *Secure Our City, Inc. v. ECI Sys., LLC*, 594 F. Supp. 3d 96, 102 (D. Mass. 2022).  Under that more stringent standard, leave may be granted only "upon a showing of 'good cause.'"  *Id.* (quoting *Miceli v. JetBlue Airways Corp.*, 914 F.3d 73, 86 (1st Cir. 2019)). "The 'good cause' standard focuses on both the conduct of the moving party and the prejudice, if any, to the nonmovant."  *Miceli*, 914 F.3d at 86.  The moving party's delay in seeking leaving to amend is "the dominant criterion," and the "longer a [party] delays, the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend."  *Woods Hole*

---

[1] All emphases added unless noted otherwise.

*Oceanographic Inst. v. ATS Specialized, Inc.*, No. CV 17-12301-NMG, 2020 WL 13605451, at *2 (D. Mass. Dec. 22, 2020) (internal citations and quotations omitted).

Leave to amend also may be denied where an amendment would be futile. *Id.* at *2. An amendment is futile if the amended claims could not survive a motion to dismiss pursuant to Rule 12(b)(6). *Bourne v. Gardner*, 270 F. Supp. 3d 385, 388 (D. Mass. 2017).

## IV.   ARGUMENT

### A.   Defendants' Motion Is Untimely, and Does Not Demonstrate Good Cause

Because Defendants seek leave to amend late, Defendants must establish good cause to excuse their delay. *Secure Our City, Inc.*, 594 F. Supp. 3d at 102. Claiming diligence, Defendants argue incorrectly that they "uncovered the facts underpinning the motion to amend recently during fact discovery and depositions occurring in the months of September and October, with the most recent relevant fact deposition taking place on October 27." ECF 154, 1–2. Defendants' Proposed Counterclaims contradict that argument.

The Proposed Counterclaims cite to seventeen documents produced by Milliman or Vigilytics,[2] the vast majority of which Defendants' possessed *before* the April 30, 2023 deadline. Centurelli Decl., ¶¶ 9 & Ex. C. Even the three cited documents that had not been produced by April 30, 2023 were produced *nearly six months ago*. *Id.* (detailing production of VIGIL_GRAD_00084074, VIGIL_GRAD_00084867, and VIGIL_GRAD_00084909 on May 31, 2023). Defendants' reliance on these long-ago produced documents contradicts their assertion that newly uncovered evidence provides good cause.

As to depositions, Defendants' motion points only to the testimony of Andrew Paris, Mike Bishop, and Glenn Joiner as allegedly necessitating the untimely filing. ECF 156 at 3. Mr. Paris's

---

[2] The Proposed Counterclaims also cite one document produced by Gradient on June 9, 2023, which Gradient has possessed since at least October 10, 2018. *See* Centurelli Decl., ¶ 9 & Ex. C.

cited deposition began on June 21, 2023, over four months before Defendants' motion.  Centurelli Decl., ¶ 3.  Although Defendants continued Mr. Paris's deposition in September, the Proposed Counterclaims cites almost exclusively to his June testimony.  ECF 154-1 at ¶¶ 74, 76-78, 84, 87, 91, 92, 94, 98, 102 (all citing June testimony); *see also id.* at ¶ 87 (citing Sept. testimony).  Defendants' heavy reliance on testimony taken in June underscores their lack of diligence.

Defendants' reliance on Mr. Bishop's deposition likewise does not excuse their delay.  ECF 156 at 3.  The Proposed Counterclaims cite to his testimony just once, to describe the contents of a single document that Defendants have possessed **since 2018**.  ECF 154-1, ¶ 17 (discussing GRADIENT00378305); Centurelli Decl., ¶ 9, Ex. C.  If Mr. Bishop's testimony was necessary to understand this document, Defendants should have deposed him more promptly.  *See Wisc. Alumni Rsch. Found. v. Intel Corp.*, No. 08-CV-78-BBC, 2009 WL 10681060, at *1–2 (W.D. Wis. Apr. 8, 2009) ("[A]ssuming . . . that it could not properly plead an inequitable conduct counterclaim until it deposed the two inventors, defendant should not have waited so long to conduct their depositions.").

Finally, Defendants' argument that "this motion is being filed . . . one week after the deposition of Glenn Joiner, whose testimony is cited in the Amended Counterclaims," ECF 156 at 3-4, is misleading at best.  Defendants served draft Proposed Counterclaims on Plaintiffs seven days **before** Mr. Joiner's deposition.  The only substantive change to the as-filed Proposed Counterclaims is a single parenthetical allegedly supporting Defendants' argument that Milliman sold its Health Intellectual Property trade secrets to Defendants.  ECF 154-1 at ¶ 6; Centurelli Decl. ¶ 7 & Ex. A (comparison of draft and as-filed Proposed Counterclaims).  Mr. Joiner's deposition could not have made Defendants aware of this theory, since Defendants have pursued it for well over a year and the Court has already rejected it twice.  *See* ECF 89 at 4 (arguing "Milliman

confirms that all of its asserted secrets reside in *the emails that Milliman transferred and sold to Gradient*. . . .") (emphasis in original); ECF 133 (denying summary judgment motion); ECF 151 (denying motion for reconsideration).   Thus, Mr. Joiner's testimony does not justify the late filing of Defendants' Proposed Counterclaims.

The Proposed Counterclaims are also based on legal theories of which they have been aware for months, if not years.   As to the alleged breach of contract by failing to arbitrate (and setting aside the fundamental legal flaws with this theory, addressed below), the facts underlying that claim have long been known.   Defendants have been aware of the existence of the APA's arbitration clause and the fact that Plaintiffs filed a lawsuit in federal court since the outset.   And Defendants have known Milliman contended Defendants breached the APA since March 28, 2023. *See* Centurelli Decl., ¶ 10 & Ex. D (Milliman Resp. to Req. for Admission that "Gradient breached section 5.2 of the Asset Purchase Agreement").   Thus, Defendants did not need not any deposition testimony to assert that Milliman breached the APA by failing to arbitrate.

The same is true of Defendants' inequitable conduct claims.   One of Defendants' theories is that the named inventor, Andrew Paris, allegedly withheld material prior art references from the patent office.   To plead such a theory, the "Defendant need only have examined the relevant prosecution history, which is a public document, to discover [whether] the inventors . . . failed to disclose those pieces of material prior art to the United States Patent and Trademark Office." *Wisconsin Alumni Rsch. Found. v. Intel Corp.*, No. 08-CV-78-BBC, 2009 WL 10681060, at *1–2 (W.D. Wis. Apr. 8, 2009) (denying leave to file amended inequitable conduct counterclaims). Here, Defendants alleged from the outset that the Asserted Patents are invalid, and they included the allegedly withheld prior art references in their May 2023 Invalidity Contentions. *See* Centurelli Decl. ¶ 11 & Ex. E (Defs.' May 31, 2023 Invalidity Contentions), e.g., at 6–7 (citing U.S. Patent

Nos. 8,473,452 and 6,732,113); ECF 154-1 at ¶ 106 and Counts XXIII-XXVIII (basing inequitable conduct allegations on these patents). Defendants had no excuse for delay. If Defendants claim they did not know until recently that Mr. Paris was ever aware of one of the prior art references, that is only because Defendants chose to wait until the ***final day*** for serving written discovery to investigate that question. *See* Centurelli Decl. ¶ 12, Ex. F (Defs.' Second Set of Interrog. No. 16).

At bottom, Defendants' motion identifies no information learned late in discovery that was necessary to assert the Proposed Counterclaims. Rather, the Proposed Counterclaims merely collect long-known information to support long-available (and even previously rejected) arguments. Defendants therefore have not demonstrated good cause. *See House of Clean, Inc. v. St. Paul Fire & Marine Ins. Co.*, 775 F. Supp. 2d 296, 299 (D. Mass. 2011) (Gorton, J.) (denying motion for leave to amend where fact discovery was complete, and the deadline for dispositive motions was upcoming); *see also Euro-Pro Operating LLC v. Dyson Inc.*, 164 F. Supp. 3d 235, 240 (D. Mass. 2016) ("Plaintiff has not demonstrated good cause for waiting until December 23, 2015 to move to amend, particularly when all fact discovery closed on November 24, 2015.").

## B.      Granting Leave Would Severely Prejudice Plaintiffs

Permitting Defendants' late claims and theories would impose significant unfair prejudice on Plaintiffs. Fact discovery has closed, and it is too late to obtain discovery or retain relevant expert witnesses. In addition, with a November 30, 2023 dispositive motion deadline, by the time the Court likely can adjudicate this motion, seeking summary judgment on Defendants' Proposed Counterclaims will be unavailable. As a result, allowing Defendants leave to amend will leave Plaintiffs without a fair ability to defend against Defendants' newly proposed counterclaims.

Defendants seek to downplay the prejudice by arguing that their "proposed amendments will require no additional discovery and have no bearing on expert discovery." ECF 154 at 2. But, whether ***Defendants*** are willing to forego discovery is neither dispositive nor is it surprising, given

that Defendants have long known the about the theories they now seek leave to assert.  Defendants'
motion ignores the obvious prejudice that *Plaintiffs* will suffer from the lack of available
discovery.  If the Court grants Defendants leave, Plaintiffs will have zero opportunity to take
discovery to (a) learn the factual bases for Defendants' counterclaims in advance of trial, (b)
marshal evidence contradicting Defendants' theories, or (c) to offer expert testimony opposing the
counterclaims, all of which constitutes unfair prejudice.  If Defendants had amended in a timely
fashion, Plaintiffs would have sought further document discovery from, and deposition of, at least
the third parties that Defendants now allege did not move forward with business with Gradient
because of this lawsuit and from the alleged (and thus far unnamed) alleged co-inventors of the
Asserted Patents.   Additionally, Plaintiffs likely would have offered expert opinions on
Defendants' new claims, including whether the allegedly omitted prior art was material or merely
cumulative of other art before the patent office.

Courts frequently deny leave to amend where, like here, it is sought after discovery has
been completed, and the opposing party would be deprived of the opportunity to take discovery
relevant to the proposed claims.  *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004)
("Particularly disfavored are motions to amend whose timing prejudices the opposing party by
requiring a re-opening of discovery . . . .").  Defendants' addition of a never-before-raised
inequitable conduct claim is particularly prejudicial at this late stage, where Plaintiffs have been
afforded no opportunity to take discovery on the theory.  *See Fed. Ins. Co. v. MATEP, LLC*, No.
CV 05-12391-NMG, 2008 WL 11511401, at *6 (D. Mass. Dec. 1, 2008) (Gorton, J.) ("Even
assuming that the new claim require[s] no additional discovery, its introduction would unfairly
affect [defendant]'s ability to prepare its defense."); *DNA Genotek Inc. v. Spectrum Sols. LLC*, No.
321CV00516RSHDDL, 2023 WL 3442085, at *9 (S.D. Cal. May 12, 2023) (explaining "timing

of [defendant]'s proposed amendments is prejudicial" where fact discovery was closed, and "[Plaintiff] is prevented from engaging in discovery" as to new inequitable conduct theory).

### C.    Amendment Is Futile Because Defendants Do Not State a Claim

Leave to amend should be denied because Defendants' proposed amendments fail to state a claim, making amendment futile.  *See Bourne*, 270 F. Supp. at 388.

#### 1.    Defendants' Breach of Contract Allegations Fail to State a Claim

Defendants' new breach of contract theory, asserting that Milliman failed to arbitrate disputes arising out of the APA, does not state a viable claim.  Defendants' claim for damages ignores a clear remedy for the failure to arbitrate: moving to compel arbitration.  9 U.S.C. § 4 ("A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition [the appropriate] United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement.").  Compelled arbitration is the only remedy available for an alleged failure to arbitrate.  *See, e.g.*, *Gulf Guar. Life Ins. Co. v. Connecticut Gen. Life Ins. Co.*, 304 F.3d 476, 487 (5th Cir. 2002) ("enforcement of an agreement to arbitrate under the FAA does not appear to include any mechanism beyond those geared toward returning the parties to arbitration, thus appearing ***not to authorize compensation by a court to parties in the form of damages*** prior to issuance of an arbitral award."); *5436, LLC v. CBS Corp.*, No. CIV.A. H-08-3097, 2009 WL 3378379, at *12 (S.D. Tex. Oct. 16, 2009) ("the court has no authority under the Federal Arbitration Act ('FAA') to award damages based on [plaintiff]'s failure to submit to arbitration.").

Even if a damages claim were available, Defendants waived any breach by engaging in extensive litigation.  Waiver exists where a party "knowingly relinquish[ing] the right to arbitrate by acting inconsistently with that right."  *Morgan v. Sundance, Inc.*, 596 U.S. 411, 419 (2022). Here, Defendants relinquished their alleged right to arbitrate by engaging in protracted litigation,

including moving to dismiss, filing an answer and counterclaims, moving for summary judgment, producing over 220,000 documents, propounding two sets of requests for production, five sets of interrogatories, one set of requests for admission, and taking at least eighteen depositions. Defendants' participation inarguably waives their right to seek arbitration. *See e.g., Crean v. Morgan Stanley Smith Barney, LLC*, 652 F. Supp. 3d 171, 183–84 (D. Mass. 2023) (finding no waiver where defendant did not engage in discovery, did not file counterclaims, did not have a trial date "close at hand," and had "limited participation" in the litigation prior to moving to compel arbitration -- *all acts not present here*).

### 2. Defendants' Inequitable Conduct Allegations Fail to State a Claim

Defendants' new inequitable conduct counterclaims also fail to state a claim, making amendment futile. Defendants rest their inequitable conduct claims on two theories: (1) that Andrew Paris, Vigilytics' President and the Asserted Patents' inventor, allegedly defrauded the patent office by failing to identify the correct inventors and (2) that Mr. Paris fraudulently withheld from the patent office two allegedly material prior art references. Defendants do not come close to satisfying the required pleading standard for either theory.

First, Defendants' counterclaims fail at least because Defendants do not and cannot identify any specific inventor that Mr. Paris allegedly omitted and because Defendants' misunderstand what it means to be an inventor. Second, Defendants' counterclaims fail because they do not allege—as required—(i) that the prior art references are material, as opposed to ***cumulative***, in view of the other prior art presented to the patent examiner, (ii) that Mr. Paris knew of their alleged materiality, or (iii) that Mr. Paris even knew of one of the references at all. Finally, as to both theories, Defendants do not allege facts that, if proven, could establish deceptive intent.

### a. Pleading standard for inequitable conduct

To state a claim for inequitable conduct, the claim must satisfy Rule 9(b)'s heightened

pleading standard by "stat[ing] with particularity the circumstances constituting [alleged] fraud . . . ." Fed. R. Civ. P. 9(b).  To do so, "[t]he pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission."  *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328 (Fed. Cir. 2009).  Those alleged facts must permit the Court to infer that the alleged perpetrator(s) acted with the required "(1) knowledge of the withheld material information or of the falsity of the material misrepresentation, and (2) specific intent to deceive the PTO."  *Id.* (citing *Hebert v. Lisle Corp.,* 99 F.3d 1109, 1116 (Fed. Cir. 1996)).

> *b.*     *Defendants' omitted inventor(s) allegations fail to state a claim*

Defendants' omitted inventor(s) theory fails to state a claim for at least two reasons.  First, Defendants do not and cannot identify any other alleged inventor, which alone dooms their claims.  Second, Defendants' theory rests on a fundamental misunderstanding of the nature of invention, mistaking development of prior art with conception of a later invention.

> i.     Defendants do not identify any allegedly omitted inventors

For inequitable conduct claims based on misrepresented inventorship, the required "who, what, when, where, and how" (*id.*) includes the names of specific allegedly omitted inventors.  The supposed contributions of other companies do not suffice, because only natural persons, not companies, can be inventors.  *Beech Aircraft Corp. v. EDO Corp.*, 990 F.2d 1237, 1248 (Fed. Cir. 1993) ("[O]nly natural persons can be 'inventors.'") (citing 35 U.S.C. §§ 115-118).

Thus, without naming any specific individuals who allegedly contributed to an invention's conception, inequitable conduct claims based on the supposed omission of additional inventors necessarily fail to state a claim under Rule 9(b).  For example, in *Brixham Solutions Ltd. v. Juniper Networks, Inc.*, the accused infringer alleged the named inventor had collaborated with others as part of a "Working Group of Internet Engineering Task Force ('IETF')" and that he "worked closely with members of the IETF groups and that members contributed to the" invention.  No.

13-cv-00616-JCS, 2014 WL 250204, *4 (N.D. Cal. Jan. 22, 2014). The counterclaim even named the specific IETF members with whom the inventor had co-authored papers on the same subject as the invention. *Id.* at *2. The Court held that none of those allegations sufficed to state an inequitable conduct claim because they did not identify any specific alleged co-inventors:

> ***In the absence of allegations identifying the specific individual or individuals who allegedly coinvented the claimed invention*** and setting forth specific facts showing how each of these individuals contributed to the conception of a particular claim or claims, ***Juniper's inequitable conduct allegation based on this theory is insufficient as a matter of law.***

*Id.* at *7; *see also Accordant Energy, LLC v. Vexor Tech. Inc.*, No. 1:17-cv-411, 2018 WL 7412753, at *5 (N.D. Ohio Jan. 24, 2018) ("[T]hese allegations are insufficient on which to base an inequitable conduct claim because defendant fails to identify an individual inventor and further fails to identify any specific contribution that inventor made . . . .").

Here, Defendants do not identify any persons they contend were true inventors, alleging instead that two companies, SDI and Milliman, were co-inventors. *See* ECF 154-1 at ¶ 104 ("***SDI*** invented a portion of the subject matter claimed in the patents."); ¶ 105 ("[T]he facts alleged herein allow the Court to infer Mr. Paris's knowledge of the materiality of ***SDI's, if not also Milliman's***, inventive contributions."); *see also id.* at ¶ 8 ("Though Milliman had proposed the process itself, and the data provider [SDI] had already commercialized the tokenization approach claimed to be critical to the invention, Paris disclosed neither ***party's*** involvement . . . .").[3]

Defendants' failure to name any omitted inventor is no oversight; Defendants lack any basis to name one. The only people at Milliman and SDI that Defendants' Proposed Counterclaims identify confirmed that Mr. Paris is the sole inventor. The only individual from SDI mentioned in

---

[3] Defendants' proposed pleading contradicts even its prior assertions, which expressly alleged Milliman invented anything. ECF 154-1 at ¶ 11 (alleging Milliman told customers "about Gradient infringing 'Milliman's' patents – patents that it didn't own and ***certainly didn't invent***").

the Proposed Counterclaims – Adam Dublin, SDI's former Chief Strategy Officer (ECF 154-1 at ¶¶ 77, 81, 85, 89, 96-101) – forcefully rejected Defendants' theory: "*[I]t was Andy [Paris]'s idea. It was his IP* and . . . I recall *the patent discussion being one that -- was one we had no interest in trying to contest in any way*." Centurelli Decl. at ¶ 13, Ex. G (Dublin Dep. 187:20-188:2). The same is true as to Milliman. Defendants repeatedly identify Dr. Mark Franzen as the Milliman representative that interfaced with Mr. Paris about his invention (ECF 154-1 at ¶¶ 82-83, 100), but, Defendants never allege that Dr. Franzen is an inventor, and Dr. Franzen confirmed otherwise:

> Q. What was the idea?
> A. Well, again, we didn't have one until we met Andy [Paris]. . . .
> Q. And did you believe that this was Vigilytics' intellectual property?
> [A]. . . . *[C]ertainly Andy brought us this idea for this method*, and that's why I referred to it as Vigilytics' method there.
> Q. Well, sitting here today, do you consider this Vigilytics method to be Vigilytics' intellectual property?
> A. Yes. . . . *I know he first came up with this method, the idea to do this whole process* . . . .

Centurelli Decl. at ¶ 14, Ex. H (Franzen Dep. 77:23-24, 94:17-95:14); *see also id.* at 137:17-18 ("[T]he idea of the process originated with Andy."); *id.* at 204:3-4 ("Again, he brought this idea and intellectual property to us.").

Thus, Defendants' allegations fail because the only potential additional inventors reject the premise. "When an alleged omitted co-inventor does not claim to be such, it can hardly be inequitable conduct not to identify that person to the PTO as an inventor." *Pro-Mold & Tool Co., Inc. v. Great Lakes Plastics, Inc.*, 75 F.3d 1568, 1576 (Fed. Cir. 1996); *Inline Packaging, LLC v. Graphic Packaging Int'l, LLC*, 351 F. Supp. 3d 1187, 1203-04 (D. Minn. 2018) (same); *Keystone Retaining Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.*, No. 00-496, 2001 WL 951582, at *9 (D. Minn. Aug. 22, 2001) (same).[4]

---

[4] Fact discovery is closed, and the Proposed Counterclaims reflect the entirety of what the Court can expect the evidence to show at trial. If Defendants contend otherwise, that merely confirms

ii.    Defendants misunderstand inventorship

Defendants' inventorship allegations are also futile because they rest on a mistaken understanding of inventorship.  Even if proven, Defendants' allegations would merely demonstrate that Mr. Paris's inventions built upon existing elements in the prior art.  That unremarkable fact does not turn all prior art contributors into inventors of these Asserted Patents.  As the Federal Circuit has explained: "'Only God works from nothing.  Men must work with old elements.'" *Fromson v. Advance Offset Plate, Inc.*, 755 F.2d 1549, 1556 n.3 (Fed. Cir. 1985) (quoting Markey, *Why Not the Statute,* 65 JPOS 331 (1983)).

Defendants allege that certain ***aspects*** of Mr. Paris's inventions had already been conceived of or implemented at SDI and/or Milliman.  For example, Defendants allege that "SDI invented ***a portion*** of the subject matter claimed in the patents."  ECF 154-1 at ¶¶ 104.  Similarly, they claim that "Mr. Paris . . . did not invent at least the de-identification of data, tokenization, or look up ***portions*** of the alleged invention [which were] was originally conceived of by Milliman . . . ."  *Id.* at ¶ 105.  Defendants also claim that SDI had already commercialized a tokenization process for de-identifying data which allegedly forms an element of Mr. Paris's inventions.  ECF 154-1 at ¶ 85.  But Defendants never allege that anyone other than Mr. Paris conceived of the specific configuration of all of the elements that comprise Mr. Paris's patented inventions.

As a result, Defendants' allegations cannot establish incorrect inventorship.  If proven, they would merely demonstrate that, in conceiving of his inventions, Mr. Paris—like all inventors—drew upon existing elements in the prior art.  "[I]nventions in most, if not all, instances rely upon building blocks long since uncovered, and claimed discoveries almost of necessity will be combinations of what, in some sense, is already known."  *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S.

---

the unfair prejudice, since Plaintiffs are precluded from learning of that evidence in discovery.

398, 419 (2007); *see also Rosemount, Inc. v. Beckman Instruments, Inc.*, 727 F.2d 1540, 1546 (Fed. Cir. 1984) ("[A] combination may be patentable whether it be composed of elements all new, partly new, or all old.").  As a result, patent applicants need not name as inventors every person who developed every aspect of the prior art on top of which the invention is built.  If they did, for example, that would mean every patent concerning an automobile would have to name as a co-inventor the first person to have conceived of the wheel.  That is not the law.

"The 'inventor,' in patent law, is the person or persons who conceived the patented invention." *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1352 (Fed. Cir. 1998); *see also Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466, 1473 (Fed. Cir. 1997) ("Conception is the touchstone to determining inventorship.").  And, to conceive of a claimed invention, one must do far more than be aware of elements in the prior art.  "Conception is the 'formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention . . . ." *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1376 (Fed. Cir. 1986) (quoting 1 *Robinson On Patents* 532 (1890)).  "One 'who . . . provides the inventor with well-known principles or explains the state of the art' does not qualify as a joint inventor." *Siemens Gamesa Renewable Energy A/S v. Gen. Elec. Co.*, 617 F. Supp. 3d 55, 63 (D. Mass. 2022) (quoting *Ethicon, Inc. v. U.S.. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998)) (ruling against inequitable conduct counterclaims).

Consequently, Defendants' allegations—even taken as true—merely suggest that others "provide[d Mr. Paris] with well-known principles or explain[ed] the state of the art." *Id.* Defendants do not allege that anyone other than Mr. Paris conceived of the "complete and operative invention[s]" claimed in the Asserted Patents. *Hybritech*, 802 F.2d at 1376.  Thus, Defendants' inequitable conduct claim for alleged failure to disclose inventors is futile.

        *c.*       *Defendants fail to state an inequitable conduct claim based on alleged failure to disclose prior art references*

Defendants' other theory, that Mr. Paris supposedly withheld material prior art references, falls even further short of stating a claim. Inequitable conduct requires that (a) the allegedly withheld information is material to patentability and (b) it was withheld with a specific intent to deceive the Patent & Trademark Office ("PTO"). *Exergen*, 575 F.3d at 1328. Here, Defendants' Proposed Counterclaims do not allege facts that could plausibly establish either requirement.

        i.       Defendants do not sufficiently allege materiality

A prior art reference is only material to patentability if it discloses information that "is **not cumulative** to information already" in front of the PTO. 37 C.F.R. § 1.56(b); *Larson Mfg. Co. of S. Dakota v. Aluminart Prod. Ltd.,* 559 F.3d 1317, 1327 (Fed. Cir. 2009) ("[A] withheld otherwise material reference is not material if it is merely cumulative to, or less relevant than, information already considered by the examiner."). Therefore, to plead materiality, a proposed inequitable conduct claim must "identify the particular claim limitations, or combination of claim limitations, that are supposedly absent from the information of record." *Exergen*, 575 F.3d at 29.

Defendants' proposed counterclaims do not satisfy this requirement. Defendants contend that Mr. Paris committed inequitable conduct because he "failed to disclose . . . U.S. Patent No. 8,473,452 (the "'452 Patent") (Ex. U) and U.S. Patent No. 6,732,113 (the "'113 Patent') (Ex V)." ECF 154-1 at ¶ 106. Defendants do not identify any specific aspect of either reference that supposedly differs materially from the prior art already in front of the PTO. *See id.* at ¶¶ 108-112. Instead, Defendants merely provide summaries of the '113 and '452 references, copied mostly verbatim from their Abstracts and written description. *Id.*

This Court and others have dismissed inequitable conduct counterclaims where, like here, the pleadings do not allege facts from which the Court can infer that the allegedly withheld prior

art references were not merely cumulative of other art before the PTO. *See Lexington Luminance LLC v. Osram Sylvania Inc.,* 972 F. Supp. 2d 88, 93 (D. Mass. 2013) ("Defendants summarily claim that Figure 6 was not cumulative of cited prior art but fail to specify why or how."); *Ocado Innovation Ltd. v. AutoStore AS*, No. 1:21-CV-00041-JL, 2021 WL 6197076, at *4 (D.N.H. Dec. 30, 2021) (dismissing counterclaims that failed to explain how allegedly withheld prior art was not cumulative); *Certainteed Gypsum, Inc. v. Pac. Coast Bldg. Prod., Inc.*, No. 19-CV-00802-LHK, 2021 WL 1405477, at *9 (N.D. Cal. Apr. 14, 2021) (same); *St. Jude Med., Cardiology Div., Inc. v. Volcano Corp.*, No. CV 12-441-RGA, 2014 WL 2622240, at *2 (D. Del. June 11, 2014) (same).

More than just failing to explain how the references are non-cumulative, Defendants' expert refutes this position. Defendants' purported expert, Dr. Bryan Bergeron, opines that the '113 and '452 patents are just two of many exemplary references that he believes disclose the same subject matter, including references specifically considered by the PTO. According to him, the prior art includes at least six references describing databases of de-identified healthcare data: "Elfering," "Settimi," "Ricciardi," and "Stevens," as well as the '113 and '452 references. Centurelli Decl. ¶15, Ex. I, Bergeron Rpt. ¶¶ 123-132.[5] After describing the first four, Dr. Bergeron opines that the '113 and '452 references "both describe ***another*** database of de-identified patient-specific healthcare/medical data . . . ." *Id.* at ¶ 130. Dr. Bergeron then summarizes "the ***high level of similarity*** between these exemplary systems of the prior art" and concludes, "[i]n sum, the prior art was filled with examples of de-identified databases." *Id.* at ¶¶ 133, 147.

Thus, since Defendant's own purported expert considers the '113 and '452 references as ***cumulative*** of prior art the PTO considered, Defendants fail to state a claim. *See Lexington*

---

[5] The patent office explicitly considered both Settimi and Stevens in granting the Asserted Patents, as seen from their citations on the face of the patents. *See* ECF 1, Exs. 1-6.

*Luminance*, 972 F. Supp. 2d at 93 ("Considering that defendants also claim that the [subject matter] was 'well-known,' they must at least explain how [the allegedly withheld prior art] conveys information that is unique and not covered by the other prior art references . . . .").

      ii.    Defendants do not allege timely knowledge of the art

The Court should deny leave to amend because Defendants fail to allege facts from which the Court could plausibly infer that Mr. Paris was even aware of the allegedly withheld prior art references before the patent office began to issue the Asserted Patents. *See id.* at 92 (explaining that Rule 9(b) requires "sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual . . . knew of the withheld material information . . . .").

As to the '452 reference, Defendants do not allege any facts from which the Court could can conclude Mr. Paris was aware of it. Defendants state only: "Upon information and belief and because the '452 Patent has the same named inventor as the '113 Patent, Mr. Paris learned of the '452 Patent during the prosecution of the Asserted Patents." ECF 154-1 at ¶ 114. This is legally insufficient. *See I-Flow Corp. v. Wolf Med. Supply, Inc.*, No. CV-090762-AGM-LGX, 2009 WL 10697974, at *4 (C.D. Cal. Nov. 23, 2009) (striking inequitable conduct claim based on a shared inventor theory like Defendants assert here, because the "allegations do not permit a reasonable inference that [an attorney] intentionally withheld material information from PTO").

As to the '113 reference, Defendants assert that Mr. Paris became aware of it on or around March 7, 2017, but that too is legally insufficient to state a claim as at least as to two of the Asserted Patents, which had already issued by that date. ECF 154-1 at ¶ 113; *see* ECF 1-1 ('641 patent); ECF 1-2 ('892 patent); *Planet Bingo, LLC v. VKGS, LLC*, No. 1:12-CV-219, 2012 WL 5511843, at *6 (W.D. Mich. Nov. 14, 2012) (denying leave as futile "because the alleged inequitable conduct took place after the issuance of the [asserted] patent"). Thus, at a minimum, Counts XXIII and XXIV of the Proposed Counterclaims, which relate to the '641 and '892 patents, fail.

iii.   Defendants do not plead awareness of the alleged materiality

The Federal Circuit has explained that knowledge of a prior patent is insufficient; one must allege that the inventor also knew that it contained material information.  *Exergen*, 575 F.3d at 1330 ("[O]ne cannot assume that an individual, who generally knew that a reference existed, also knew of the specific material *information* contained in that reference.") (emphasis in original). Here, Defendants do not allege that Mr. Paris knew that the '113 or '452 references were material, and instead state only that "upon information and belief, [Mr. Paris] knew that the '113 and '452 Patents ***could be*** material."  ECF 154-1 at ¶ 115.  That does not suffice.

Defendants' reliance on "information and belief" further confirms that their proposed amendment is futile.  *Exergen*, 575F.3d at 1330  ("Pleading on 'information and belief' is permitted… when essential information lies uniquely within another party's control.").  But, fact discovery is closed, and Defendants' motion disclaims any need for discovery.  ECF 149; ECF 154 at 2 ("Defendants' proposed amendments will require no additional discovery...").  Thus, the time has passed for Defendants to have mustered evidence.  They have not done so, rendering their proposed amendment futile.  *DNA Genotek Inc.,* No. 3:21-CV-00516-RSH-DDL, 2023 WL 3442085, at *5 (denying leave to assert inequitable conduct pled on "information and belief" after discovery had closed).

### d.   Defendants do not allege facts demonstrating deceptive intent

Finally, Defendants' proposed counterclaims do not allege facts that show Mr. Paris acted with the requisite intent to deceive.  *Exergen*, 575 F.3d at 1328-29 (explaining inequitable conduct claims must plead facts "from which a court may reasonably infer that a specific individual withheld or misrepresented [] information with a specific intent to deceive the PTO.").

Defendants only aver vaguely that "the facts alleged herein permit an inference of Mr. Paris's specific intent to deceive the USPTO by failing to disclose the '113 or '452 Patents" or the

alleged unnamed co-inventors of the Asserted Patents.  ECF 154-1 at ¶¶ 118, 271, 281, 291, 301, 311, 321.  "[C]onclusory allegation[s] of specific intent [are] insufficient."  *BlackBerry Ltd. v. Typo Prod. LLC*, No. 14-CV-00023-WHO, 2014 WL 1867009, at *3 (N.D. Cal. May 8, 2014).

Moreover, the remainder of Defendants' allegations contradict any suggestion of deceptive intent.  *Exergen*, 575 F.3d at 1329 n.5 ("A reasonable inference [of deceptive intent] is one that is plausible and that flows logically from the facts alleged, ***including any objective indications of candor and good faith***.").  Here, Defendants' allegation that Mr. Paris fraudulently concealed SDI's and Milliman's supposed inventive contributions flies in the face of Defendants' simultaneous admission that Mr. Paris was transparent with SDI and Milliman about his patent.  *See* ECF 154-1 ¶¶ 100 ("You [i.e., Adam Dublin of SDI] can tell him [i.e., Mark Franzen of Milliman] . . . I have filed for patent protection . . . ."), 101 ("Feel free to tell Mark that Vigilytics has filed a utility patent…").  If either Milliman or SDI believed Mr. Paris was not the sole inventor, either or both companies could have taken some counteractive steps, but did not do so.

Similarly, Defendants' own allegations contradict any inference that Mr. Paris deceitfully withheld the '113 and '452 references from the patent office.  As highlighted above, Defendants' own purported expert lumps those references as part of a pile of prior art describing databases for de-identified healthcare data, which he contends have a "high level of similarity" among them.  Bergeron Rpt. ¶¶ 133, 147.  These "objective indications of candor and good faith" render implausible any inference of deceptive intent.  *Exergen*, 575 F.3d at 1329 n.5.

## V.    CONCLUSION

Accordingly, Plaintiffs respectfully request that the Court deny Defendants' Motion for Leave to File Amended Counterclaims.

Dated:  November 17, 2023

Respectfully submitted,

*/s/  Christopher Centurelli*
Christopher Centurelli (BBO #640974)
christopher.centurelli@klgates.com
John L. Gavin (BBO #705385)
john.gavin@klgates.com
K&L GATES LLP
1 Congress Street, Suite 2900
Boston, MA 02114
Telephone: (617) 261-3100
Facsimile: (617) 261-3175

and

Patrick J. McElhinny (*pro hac vice*)
patrick.mcelhinny@klgates.com
Mark G. Knedeisen (*pro hac vice*)
mark.knedeisen@klgates.com
Anna Shabalov (*pro hac vice*)
anna.shabalov@klgates.com
K&L Gates LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, Pennsylvania 15222
Telephone: (412) 355-6500
Facsimile: (412) 355-6501

*Attorneys for Milliman, Inc. and Milliman Solutions, LLC*

and

Christopher Dillon (BBO #640896)
dillon@fr.com
Fish & Richardson P.C.
One Marina Park Drive
Boston, MA 02210
Telephone: (617) 542-5070

and

Noah C. Graubart (*pro hac vice*)
graubart@fr.com

Ashley A. Bolt (*pro hac vice*)
bolt@fr.com
Fish & Richardson P.C.
1180 Peachtree Street NE
21st Floor
Atlanta, GA 30309
Telephone: (404) 892-5005

*Attorneys for Vigilytics LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

<u>*/s/ Christopher Centurelli*</u>